# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Joseph G. DuMouchelle and Melinda
J. Adducci

      Debtors.

_____/

Teodor Gelov

      Plaintiff,

v.

Joseph G. DuMouchelle and Melinda
J. Adducci

      Defendants.

_____/

Chapter 7

Case No. 19-54531

Honorable Phillip J. Shefferly

Adversary Pro. No. _____

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF INDEBTEDNESS UNDER 11 U.S.C. § 523

Plaintiff Teodor Gelov ("Plaintiff"), by and through his attorneys, Jaffe, Raitt, Heuer & Weiss, P.C., brings this Complaint to Determine Nondischargeability of Indebtedness Under 11 U.S.C. § 523 (the "Complaint") against Joseph G. DuMouchelle ("Joseph") and Melinda J. Adducci ("Melinda") (Joseph and Melinda are collectively, the "Debtors") and in support thereof, states as follows:

## Preliminary Statement

1.      This Complaint seeks a determination that certain debts owed to Plaintiff by Debtors is non-dischargeable in the above-captioned bankruptcy case pursuant to section 523 of title 11 of the United States Code (the "Bankruptcy Code").

## Jurisdiction

2.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

3.       Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Background

5.      Plaintiff is an individual who conducts business in Hamilton County, Indiana.

6.      Joseph is an individual who previously conducted business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.

7.      Melinda is an individual who previously conducted business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.

8.      Joseph DuMouchelle Fine & Estate Jewellers, LLC ("DuMouchelle Jewellers") is a Michigan limited liability company which previously conducted

business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.

9.     Joseph, Melinda, and DuMouchelle Jewellers shall be collectively referred to as "Borrowers".

## General Allegations

### The Note:  Overview, Events of Default
### and Defendants' Failure to Remit the "Repayment"

10.     On or about August 3, 2018, Borrowers each executed the Note (**Exhibit 1**).

11.     The Note is governed by, construed under, and enforced pursuant to the laws of the State of Indiana, without reference to choice of laws principles.

12.     Pursuant to the Note, Borrowers promised to pay Plaintiff One Million Eight Hundred Thousand Dollars and Zero Cents ($1,800,000.00) (the "Funds"), along with a guaranteed rate of return of 20%, or Three Hundred Sixty Thousand Dollars and Zero Cents ($360,000.00) (the "Guaranteed Return").

13.     Pursuant to the terms of the Note, Borrowers were required to remit the Funds and the Guaranteed Return (collectively, the "Repayment") to Plaintiff, by February 28, 2019.

14.     Defendants further agreed to pay Plaintiff "a late payment charge of 1 percent (1.0%) of the amount of any payment not paid within twenty (20) days

after the date when due"—February 28, 2019 (the "Late Charge"). The Late Charge is equal to $21,600.00.

15.     The Note further states, in part, that if the "Note is not fully paid at maturity (including all additions and late payment charges . . .) . . . the Repayment shall earn interest, and shall be payable on demand, at the maximum rate allowed by law."

16.     To date, Borrowers have failed to remit the Repayment to Plaintiff.

17.     Under the Note, Borrowers "shall be responsible for all costs and expenses, including court costs and reasonable attorneys' fees (whether or not suit is filed, and if suit is filed, all those costs and expenses incurred in any primary and appellate proceedings), incurred by Note Holder as a result of any default by [Borrowers] under the terms of this Note and in connection with the collection of this Note."

**The Note: Restrictions on Use and Title to the "Property"**

18.     Pursuant to the Note, Borrowers agreed

. . . that the Funds shall be used solely for the purchase of those items of jewelry specifically identified in Exhibit A attached hereto and incorporated herein, as may be amended in writing and signed by both parties (the "Property"). The Funds shall be used for no other purpose and shall not be intermingled with any other monies or funds except for the express purpose of consummating a purchase of the Property. Once purchased the Property shall be in the name of one or more of the Borrowers, and no other entity shall have any ownership right in the Property until the Property is sold by Borrowers.

19.     The Property listed in Exhibit A to the Note consists of 16 items of jewelry.

**The Note: Plaintiff's Right to Information, Including an Accounting**

20.     Pursuant to the Note, Borrowers were required to "update Note Holder on the progress towards purchase of the Property, the terms and documentation of purchase of the Property, location of the Property and all details of eventual sale of the Property by Borrowers."

21.     Moreover, "Borrowers shall timely respond to information requests from Note Holder who is entitled to copies of all documents, correspondence and accounting regarding the Property."

**The Note: Plaintiff's Security Interest**

22.     Pursuant to the Note, Borrowers represented

that once the Property has been purchased no other entity shall have a security interest in the Property other than Note Holder. If available to Note Holder under applicable law and at Note Holder's sole discretion, Note Holder shall have the right to file, record, perfect or otherwise secure a security interest or lien on the Property. Borrowers shall cooperate and execute any required documentation to effect a recording of the same.

23.     Consistent with the foregoing provision, Plaintiff properly recorded UCC Financing Statements concerning the Property, which state, in part, that they cover "The items of jewelry identified on Exhibit A attached hereto, together with all proceeds, products and accounts related to the same" (**Exhibit 2**).

## Borrowers' Acquisition and Subsequent Sale of the Property

24.     On or about October 30, 2018, Plaintiff and Joseph had a telephone call regarding the alleged purchase of the Property identified in Exhibit A to the Note.

25.     During the telephone call, Joseph falsely stated that he had purchased each item of Property identified in Exhibit A to the Note.

26.     Following that telephone call, in an email dated October 31, 2018, Joseph sent to Plaintiff "the first group of photos", which were represented to be seven of the items identified in Exhibit A to the Note that had been falsely stated to have been purchased (the "October 31 Email") (**Exhibit 3**).

27.     In the October 31 Email, Joseph wrote, in part, that he "will send the balance [of the images] as they come in. I will also follow up with you early next week to go over the details of the auction."

28.     In November, 2018, Plaintiff and Joseph again spoke by telephone concerning the allegedly upcoming auction of the Property.

29.     In an email dated November 21, 2018 (the "November 21 Email"), Joseph wrote the following to Plaintiff:

Hi Ted,

It was great speaking with you this week.  Per our call I will follow up with you later next week as we get closer to the auction date.  I attached the info for the larger 77ct vivid yellow diamond and flawless pink diamond that I

mentioned. They're so rare and we're hoping to have them for the December auction too.

Take care. I will speak with you later next week.

Happy Thanksgiving.

Sincerely,

Joe

(**Exhibit 4**).

30. Two "Joseph DuMouchelle" "November 2018 PROPOSAL[S]" were attached to the November 21 Email. Debtors are in possession of the "November 2018 PROPOSAL[S]".

31. Subsequently, Joseph falsely stated to Plaintiff, including through written correspondence dated December 21, 2018, that 15 items of the Property had sold at auction in or around December 2018, with the purchase price and sale price of each specified, totaling almost $6,000,000 in sale proceeds (**Exhibit 5**).

32. On or about March 2, 2019, Joseph texted Plaintiff a falsified screen-shot of a Bank of America account wherein the sale proceeds of the auctioned Property were purportedly deposited (**Exhibit 6**).

33. Joseph further falsely advised Plaintiff that pending an accounting, remittance of the Repayment would be made to Plaintiff.

34. Debtors have failed to remit any portion of the Repayment to Plaintiff due under the Note.

## Plaintiff's Demand Upon and Notice to Debtors

35.     The Note states, in part, that Borrowers "waive notice of acceptance of this Note, notice of the occurrence of any default hereunder or under any instrument securing this Note and presentment, demand, protest, . . . and notices of any and all action at any time taken or omitted by the Note Holder in connection with this Note or any instrument securing this Note."

36.     Nevertheless, on or about March 15, 2019, Plaintiff, through counsel, provided Borrowers with notice of default under the Note, demand for immediate remittance of the Repayment, demand for the delivery of any unsold Property, and a demand for an accounting of the proceeds from the sale of the auctioned Property (the "Demand and Notice") (**Exhibit 7**).

37.     Borrowers failed to respond to the Demand and Notice, much less comply with the demands made therein.

## Misrepresentations Regarding the Property Sale Proceeds

38.     In a remarkable phone call on March 7, 2019, between Plaintiff and Debtors, Debtors reaffirmed that all of the Property had been sold and all of the proceeds had been collected, but that banking policies precluded the transfer of funds to Plaintiff.

39.     Most of this conversation was led by Melinda.

40.     In fact, no Property had ever been purchased with the proceeds of the Note and no Property had otherwise been acquired, no Property had been sold at auction and no proceeds of Property sales, in fact, had been collected.

41.     The "blame the banks" discussion was a complete fabrication of the Debtors.

## The Send Money-Confirmation

42.     Plaintiff initiated suit against Borrowers in the Oakland County Circuit Court, Case No. 2019-172619-CK, on March 19, 2019 (the "Oakland County Action").

43.     In the Oakland County Action, Plaintiff sought judgment against Borrowers under the Note, as well as possession of the Property.

44.     Also in the Oakland County Action, on March 19, 2019, Plaintiff filed a Verified Motion for Possession Pending Final Judgment ("Verified Motion") related to the Property and any proceeds realized from its sale.

45.     On April 10, 2019, counsel for Borrowers appeared before the Court for a hearing on the Verified Motion, wherein they defended on the basis that $600,000 of Property proceeds would be immediately wired to counsel for Borrowers' client trust account.

46.     Based on this representation, the Court's ruling on the Verified Motion was memorialized in its April 11, 2019 *Order Regarding: (1) Plaintiff's*

*Verified Motion for Possession Pending Final Judgment, and (2) the Court's*

*Order to Appear and Answer Verified Motion* (the "<u>Wire Transfer Order</u>")

(**Exhibit 8**) which, among other things, stated:

> Defendants shall wire all monies—approximately $600,000.00—currently on deposit in the Wells Fargo account to the Butzel Long PC Client Trust Account (the "Wire Transfer") by Friday, April 12, 2019 at 5:00 pm EDT (the "Appointed Time"). If, for any reason, the Wire Transfer is not completed by the Appointed time (sic), Defendants shall provide documentation to the Court and to Plaintiff detailing the reasons(s) why.

47.    When the $600,000 wire transfer was not made by Friday, April 12, 2019, Plaintiff filed a *Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Failing to Comply with the Court's April 11, 2019 Order* ("<u>Show Cause Motion</u>").

48.    On April 24, 2019, the Court held a hearing on, among other things, Plaintiff's Show Cause Motion.

49.    Just prior to going on the record, counsel for Borrowers presented counsel for Plaintiff and the Court with a document entitled "Send Money-Confirmation," which had been provided to Borrowers' counsel by Debtors (the "<u>Send Money-Confirmation</u>") (**Exhibit 9**).

50.    The "Send Money-Confirmation" was a fraudulent document on its face.

51. Pursuant to the Send Money-Confirmation, April 24, 2019 was the "Expected Delivery Date" for the wire. This date was inconsistent with the wire transfer confirmation date of "4/19/19," five days prior.

52. The "Checking Account" number on the face of the "Send Money-Confirmation" consisted of six Xs, the available balance was completely absent, the "Delivery Speed" was inexplicably identified as "Standard" (and not something like "Expedited," even though the Wire Transfer was due by April 12), the "Confirmation Number" was inexplicably blacked out, and there was a separate, redacted item, which was wholly unidentified.

53. Based on the fraudulent "Send Money-Confirmation", the Court entered an order dated April 25, 2019, entitled *Order Regarding: (1) Plaintiff's Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Failing to Comply With the Court's April 11 2019 Order, and (2) Plaintiff's Motion to Shorten Time for Defendants to Respond to Discovery* (the "Sanctions Order") (**Exhibit 10**).

54. In relevant part, the Sanctions Order states: "2. Pursuant to the [Wire Transfer Order], the wire transfer of $600,000.00 from the Wells Fargo account to the Butzel Long PC ('Butzel') Client Trust Account (the 'Wire Transfer') must be received by Butzel by midnight, April 24, 2019", and "3. If the Wire Transfer is not received by Butzel by midnight, April 24, 2019, Defendants shall pay

$10,000.00 a day, including weekends and holidays, into the Butzel Client Trust Account until the Wire Transfer is received by Butzel."

55.     Debtors never complied with the Sanctions Order including completing the Wire Transfer or making payment of the $10,000 per day sanction (the "$10,000 Per Day Sanction").

56.     The Wells Fargo account to which the Send Money-Confirmation related, was opened with $100.00 of cash on December 19, 2018 (**Exhibit 11).**

57.     During the month of April, 2019, the month of the alleged Send Money-Confirmation, the account ranged from a zero balance to a balance of negative one cent, with no deposits and no withdrawals during that month:

| Activity summary | |
| --- | --- |
| Beginning balance on 4/1 | $0.00 |
| Deposits/Credits | 0.01 |
| Withdrawals/Debits | - 0.01 |
| Ending balance on 4/30 | $0.00 |

Account number: REDA▮046
JOSEPH DUMOUCHELLE FINE & ESTATE JEWELLERS, LLC.
*Florida account terms and conditions apply*
For Direct Deposit use
Routing Number (RTN): 063107513
For Wire Transfers use
Routing Number (RTN): 121000248

58.     The Send Money-Confirmation was fraudulent.

59.     Borrowers' on-the-record agreement to wire the $600,000 was a fraud.

60.     Borrower's presentation of the Send Money-Confirmation to the Court was a fraud on the Court.

## Judgment and Plaintiff's Proof of Claim

61.     Plaintiff obtained a judgment against Debtors pursuant to Plaintiff's *Motion for Partial Summary Judgment* on November 6, 2019. The Judgment was for $2,862,715.54, which included the Funds of $1,800,000.00, the Guaranteed Return of $360,000.00, the Late Charge of $21,600.00, contractual interest through 9/15/19 of $409,584.53 and costs and attorneys' fees through 8/31/19 of $271,961.06 (the "Judgment Amount").

62.     Plaintiff filed a Proof of Claim, Claim Number 7-1 in Debtors' bankruptcy case on November 25, 2019, in the Judgment Amount, which amount was exclusive of interest from and after 9/15/19, costs and attorneys' fees after 8/31/19 and the $10,000 Per Day Sanction (collectively the "Non-Dischargeable Amounts").

63.     By this action, Plaintiff is seeking a judgment determining all of the Non-Dischargeable Amounts to be non-dischargeable.

### Count I – False Pretenses, False Representations and Actual Fraud

64.     Plaintiff incorporates the provisions of paragraphs 1 through 63 above as if specifically set forth herein.

65.     Debtors induced Plaintiff to enter into the Note under false pretenses.

66.     Debtors had no present or future intent, at the time of entering into the Note, of performing their obligations thereunder.

13

67.     Debtors induced Plaintiff to advance the Funds under false pretenses.

68.     Debtors had no present or future intent, at the time of entering into the Note, of making repayment of the Funds.

69.     Debtors falsely represented in the Note that the Funds would be utilized to purchase the Property.

70.     Debtors had no present or future intent, at the time of entering into the Note, of purchasing the Property.

71.     Debtors falsely represented that the Property had been purchased with the Funds, including sending purported photos of items of Property purchased.

72.     Debtors falsely represented that additional photos of items of Property purchased would be forwarded.

73.     Debtors falsely represented that the Property had been scheduled for auction.

74.     Debtors falsely represented that an auction of the Property had, in fact, been held.

75.     Debtors falsely represented that all of the Property had been sold at the auction.

76.     Debtors falsely represented that proceeds from the sale of the Property had been received.

77.     Debtors falsely represented that the remaining proceeds from the sale

of the Property were in the process of being collected from the purchasers.

78.　Debtors falsely set forth, in an email, a listing of the items sold at auction and the actual dollar amounts received for each item at auction.

79.　Debtors falsely represented that pending an accounting, remittance of the Repayment would be made to Plaintiff.

80.　Debtors falsely represented that the Repayment had been sent by wire transfer.

81.　Debtors falsely represented to Plaintiff and the Oakland County Circuit Court Judge that $600,000 of the Repayment would be wired to Borrowers' counsel's client trust account.

82.　Debtors falsely represented to Plaintiff and the Oakland County Circuit Court Judge that a wire transfer had been initiated in the amount of $600,000 to Borrowers' counsel's client trust account.

83.　Debtors fabricated a false Send Wire-Confirm which falsely represented that a $600,000 wire transfer to Borrower's counsel had been initiated.

84.　Debtors falsely represented that there was $600,000 in their bank account to support the $600,000 Send Wire-Transfer when, in fact, the account had a zero balance at the time.

85.　The foregoing actions preclude a discharge of the Repayment and other amounts due to Plaintiff, on the basis that the underlying Note was executed

and the Funds advanced were money, property, services, or an extension, renewal or refinancing of credit obtained by false pretenses, false representations, and actual fraud.

86. The foregoing actions preclude a discharge of the Non-Dischargeable Amounts, on the basis that the underlying Note was executed and the Funds advanced were money, property, services, or an extension, renewal or refinancing of credit obtained by use of a statements in writing that were materially false, respecting Debtors' financial condition, on which Plaintiff reasonably relied and that Debtors caused to be made and/or published with the intent to deceive Plaintiff and the Oakland County Circuit Court Judge.

### Count II—Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement and Larceny

87. Plaintiff incorporates the provisions of paragraphs 1 through 86 above as if specifically set forth herein.

88. Under the terms of the Note, Debtors agreed to undertake certain fiduciary duties to Plaintiff, including using the Funds solely to purchase the Property, to sell the Property, to account for and return to Plaintiff the Repayment and to otherwise abide by the duties imposed upon them as fiduciaries under the terms of the Note.

89. Debtors breached each and every one of the fiduciary duties imposed on them under the terms of the Note, including, but not limited to, in failing to use

the Funds to purchase any of the Property, in diverting the Funds for their own personal benefit and purpose, in failing to sell the Property, in failing to account for and return to Plaintiff the Repayment and to otherwise abide by the duties imposed upon them as fiduciaries under the terms of the Note.

90.     Debtors engaged in embezzlement and larceny, in taking the Funds and using them for purposes other than as specified under the terms of the Note, with a present and continuing intent to do so, in order to convert the same for their own personal benefit and purpose.

91.     The foregoing actions preclude a discharge of the Non-Dischargeable Amounts, on the basis of fraud and defalcation while acting in a fiduciary capacity, embezzlement and larceny.

### Count III—Willful and Malicious Injury to Plaintiff and to Plaintiff's Property

92.     Plaintiff incorporates the provisions of paragraphs 1 through 91 above as if specifically set forth herein.

93.     Debtors' above described acts constitute willful acts.

94.     Debtors' above described acts constitute malicious acts.

95.     Debtors' above described acts caused willful injury to Plaintiff.

96.     Debtors' above described acts caused malicious injury to Plaintiff.

97.     Debtors' above described acts constituted willful injury to Plaintiff's property.

98.     Debtors' above described acts caused malicious injury to Plaintiff's property.

99.     The foregoing actions preclude a discharge of the Non-Dischargeable Amounts, on the basis of willful and malicious injury to Plaintiff and to Plaintiff's property.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: (i) determining that the Non-Dischargeable Amounts, be deemed non-dischargeable pursuant to section 523 of the Bankruptcy Code, and (ii) grant Plaintiff all other relief that it deems appropriate.

Respectfully submitted by:

**JAFFE, RAITT, HEUER & WEISS, P.C.**

By: /s/ Jay L. Welford
Jay L. Welford (P34471)
Deborah Rubin (P58752)
Counsel to Plaintiff
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
Phone: (248) 351-3000
jwelford@jaffelaw.com
drubin@jaffelaw.com

Dated: March 16, 2020

**1**

1068348.v2

# PROMISSORY NOTE

$1,800,000.00

Hamilton County, Indiana<br>August 3, 2018

FOR VALUE RECEIVED, the undersigned, Joseph DuMouchelle, Melinda Adducci-DuMouchelle and Joseph DuMouchelle Fine & Estate Jewellers, LLC (hereinafter referred to collectively as "Borrower"), whose business address is 251 E. Merrill Street, Suite 236, Birmingham, MI 48009, promises to pay to the order of Teodor Gelov (hereinafter referred to as "Note Holder"), the sum of One Million Eight Hundred Thousand Dollars and Zero Cents ($1,800,000.00) (the "Funds") together with a guaranteed rate of return of 20%, particularly, Three Hundred Sixty Thousand Dollars and Zero Cents ($360,000.00), with payment of the entire principal and return by February 28, 2019. The sum of the Funds and the guaranteed return, Two Million One Hundred and Sixty Thousand Dollars ($2,160,000.00) shall be referred to as the "Return."

Prepayment. Borrower has the option of prepaying this Note in whole or in part at any time without any prepayment penalty. If this Note is prepaid, the guaranteed rate of return amount Three Hundred Sixty Dollars and Zero Cents ($360,000.00) shall remain the same and shall not be reduced.

Place of Making. Note Holder is a resident of Hamilton County, Indiana. Borrowers agree this promissory note is entered into in Hamilton County Indiana.

Timing of Essence. Time is of the essence with respect to the payment of this note. Borrower agrees to pay a late payment charge of 1 percent (1.0%) of the amount of any payment not paid within twenty (20) days after the date when due. If this Note is not fully paid at maturity (including all additions and late payment charges accruing under the term herein whether the stated maturity date, by acceleration, or otherwise), the Return shall earn interest, and shall be payable on demand, at the maximum rate allowed by law.

Restrictions on Use and Title. Borrowers agrees that the Funds shall be used solely for the purchase of those items of jewelry specifically identified in Exhibit A attached hereto and incorporated herein, as may be amended in writing and signed by both parties (the "Property"). The Funds shall be used for no other purpose and shall not be intermingled with any other monies or funds except for the express purpose of consummating a purchase of the Property. Once purchased the Property shall be in the name of one or more of the Borrowers, and no other entity shall have any ownership right in the Property until the Property is sold by Borrowers.

Information Rights. Borrowers shall update Note Holder on the progress towards purchase of the Property, the terms and documentation of purchase of the Property, location of the Property and all details of eventual sale of the Property by Borrowers. Borrowers shall timely respond to information requests from Note Holder who is entitled to have copies of all documents, correspondence and accounting regarding the Property.

Consent and Waiver. Borrower does hereby:

a.     agree that no course of dealing or delay or omission or forbearance on the part of the Note Holder in exercising or enforcing any of its rights or remedies shall impair or be prejudicial to any of Note Holder's rights and remedies hereunder or to the enforcement hereof and that the Note Holder may extend, modify or postpone the time and manner of payment and performance of this Note without thereby releasing, discharging or diminishing its rights and remedies against any Borrower.

1

b. waive notice of acceptance of this Note, notice of the occurrence of any default hereunder or under any instrument securing this Note and presentment, demand, protest, notice of dishonor and notice of protest and notices of any and all action at any time taken or omitted by the Note Holder in connection with this Note or any instrument securing this Note.

**Events of Default.** Failure of Borrower to pay any principal, interest or any other sums required hereunder when due or Borrower's breach of any terms under this Note shall constitute a default hereunder as of the date said sum was due.

**Security Interest.** Borrower represents that once the Property has been purchased no other entity shall have a security interest in the Property other than Note Holder. If available to Note Holder under applicable law and at Note Holder's sole discretion, Note Holder shall have the right to file, record, perfect or otherwise secure a security interest or lien on the Property. Borrowers shall cooperate and execute any required documentation to effect a recording of the same.

**Right of Acceleration.** Upon the occurrence as to Borrower of any of the following events, Note Holder, at his sole election, may declare all or any portion of the principal of and return on the Note to be immediately due and payable, and may proceed at once and without further notice to enforce this Note, in accordance with its terms: (1) failure to pay any amount due on the Note when due; (2) voluntary or involuntary application for, or appointment of a receiver for any Borrower; filing of a voluntary or involuntary petition by or against any Borrower under any bankruptcy laws or amendments thereto; and (3) default in the performance of any of the terms and conditions set forth in this Note. Borrower further agrees that failure of Note Holder to exercise this right of accelerating the debt maturity shall in no event be considered as a waiver of such right of acceleration or estop Note Holder from exercising such right.

**Return Rate.** In no event shall the amount of return due or payable under this Note exceed the maximum rate of interest allowed by applicable law, as amended from time to time. If any payment of interest or in the nature of interest would, under applicable law, cause a violation of the foregoing interest rate restriction, then the excess payment shall be credited as a payment of principal, unless Borrower notifies the Note Holder that the Borrower requests to have the excess payment returned to Borrower.

**Notices.** All notices, demands and other communications required or permitted in connection with this Note shall be writing and shall be deemed to have been given when delivered or sent by first-class, postage prepaid, certified mail, with return receipt requested and addressed as follows, or at such other address as the parties may designate to each other in writing:

Borrower:
Joseph DuMouchelle, Melinda Adducci-DuMouchelle and Joseph DuMouchelle Fine & Estate Jewellers, LLC
251 E. Merrill Street, Suite 236
Birmingham, MI 48009_____

_____

_____

Note Holder:
Teodor Gelov
2290 West 136th Street
Carmel, IN 46032

2

**Attorneys Fees.** Borrower shall be responsible for all costs and expenses, including court costs and reasonable attorneys' fees (whether or not suit is filed, and if suit is filed, all those costs and expenses incurred in any primary and appellate proceedings), incurred by Note Holder as a result of any default by Borrower under the terms of this Note and in connection with the collection of this Note..

**Governing Law and Jurisdiction.** This Note shall be governed by, and construed and enforced under the laws of the State of Indiana, without reference to choice of law principles. Borrower irrevocably consents and agrees to the jurisdiction and exclusive venue in Hamilton County, Indiana or the federal courts sitting in the Southern District of Indiana with respect to all matters related to this Note and the relationship created by it. The parties hereby expressly waives any right to a trial by jury in any such suit, action or proceeding. Note Holder is allowed to pursue an action in any jurisdiction where the Property or any Borrower is located to effectuate performance or enforcement of this Note or any in rem action.

**Headings.** The headings of the paragraphs contained in this Note are for convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meaning of the parties hereto.

**Payments.** Payments shall be made payable to Note Holder at the address set forth above or such other address or bank wire as Note Holder may provide to Borrower in writing.

BORROWER:

DocuSigned by:

*Joseph DuMouchelle*

Joseph DuMouchelle
1E08A67C695D431...

DocuSigned by:

*Melinda Adducci*

Melinda Adducci-DuMouchelle
1E08A67C695D431

DocuSigned by:

*Joseph DuMouchelle*

Joseph DuMouchelle Fine & Estate Jewellers, LLC
1E08A67C695D431...

By: Joseph DuMouchelle

Title: President

3

## EXHIBIT A

1. Cushion cut diamond earrings, 16.00ct total weight, I color, VVS2-SI1   Cost $250,000
2. Oval ruby and diamond earrings, 14.00ct total ruby weight, natural Burmese, no heat   Cost $400,000
3. Van Cleef & Arpels diamond bracelet set with 15 emerald cut diamonds across the top   Cost $300,000
4. Cartier Art Deco coral and onyx jabot brooch, Circa 1928   Cost $100,000
5. Fancy Intense yellow diamond ring, Internally Flawless, 15ct, set with diamonds at sides   Cost $300,000
6. Diamond lady's earrings, pair, each 5.01ct, D color, SI1 clarity   Cost $150,000
7. Diamond lady's earrings, pair, each 6.02 and 6.17ct, E color, SI1-2 clarity   Cost $250,000
8. Harry Winston ruby and diamond necklace, earrings and ring, approx.. 45.90ct in rubies, 29.00ct in diamonds total weight   Cost 150,000
9. Oval cut diamond lady's earrings, 16.50ct total weight, F color, VS1 clarity   Cost $600,000
10. Emerald cut diamond and sapphire ring, 5.45ct emerald cut diamond surrounded by blue sapphires and diamonds   Cost $100,000
11. Pear shape diamond ring, approx. 8.42ct pear shape diamond, H color, SI2 clarity   Cost $110,000
12. Blue sapphire ring, approx. 7.01ct Burmese sapphire, unheated, set with diamonds at sides   Cost $70,000
13. Blue sapphire ring, approx. 8.20ct Burmese sapphire, unheated, set with diamonds at sides   Cost $65,000
14. Pear shape diamond lady's ring, central 8.25ct, D color, VVS2 clarity   Cost $525,000
15. Sapphire and diamond lady's ring, central sapphire at approx. 8.68ct, Burmese, no heat   Cost $90,000
16. Mauboussin diamond lady's bracelet, set with diamonds totaling approx. 52.25ct   Cost $140,000

4

# 2

1068348.v2

190515

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

M 103 9623

Filing Number: 20190318000477-6
Filing Date and Time: 03/18/2019 02:03 PM
Total Number of Pages: 2

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Brenda R. Yates  248/351-3000

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Brenda R. Yates, c/o Jaffe Raitt Heuer & Wiess, P.C.
27777 Franklin Rd, Ste 2500
Southfield, MI 48034

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| DUMOUCHELLE | JOSEPH | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 251 E. MERRILL STREET, SUITE 236 | BIRMINGHAM | MI | 48009 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ADDUCCI-DUMOUCHELLE | MELINDA | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 251 E. MERRILL STREET, SUITE 236 | BIRMINGHAM | MI | 48009 | USA |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| GELOV | TEODOR | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2290 WEST 136TH STREET | CARMEL | IN | 46032 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

The items of jewelry identified on Exhibit A attached hereto, together with all proceeds, products and accounts related to the same.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
Michigan SoS                                DM #4417012

International Association of Commercial Administrators (IACA)
190515

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# EXHIBIT A

1. Cushion cut diamond earrings, 16.00ct total weight, I color, VVS2-SI1

2. Oval ruby and diamond earrings, 14.00ct total ruby weight, natural Burmese, no heat

3. Van Cleef & Arpels diamond bracelet set with 15 emerald cut diamonds across the top

4. Cartier Art Deco coral and onyx jabot brooch, Circa 1928

5. Fancy Intense yellow diamond ring, Internally Flawless, 15ct, set with diamonds at sides

6. Diamond lady's earrings, pair, each 5.01ct, D color, SI1 clarity

7. Diamond lady's earrings, pair, each 6.02 and 6.17ct, E color, SI1-2 clarity

8. Harry Winston ruby and diamond necklace, earrings and ring, approx.. 45.90ct in rubies, 29.00ct in diamonds total weight

9. Oval cut diamond lady's earrings, 16.50ct total weight, F color, VS1 clarity

10. Emerald cut diamond and sapphire ring, 5.45ct emerald cut diamond surrounded by blue sapphires and diamonds

11. Pear shape diamond ring, approx. 8.42ct pear shape diamond, H color, SI2 clarity

12. Blue sapphire ring, approx. 7.01ct Burmese sapphire, unheated, set with diamonds at sides

13. Blue sapphire ring, approx. 8.20ct Burmese sapphire, unheated, set with diamonds at sides

14. Pear shape diamond lady's ring, central 8.25ct, D color, VVS2 clarity

15. Sapphire and diamond lady's ring, central sapphire at approx. 8.68ct, Burmese, no heat

16. Mauboussin diamond lady's bracelet, set with diamonds totaling approx. 52.25ct

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**FILED**

2019 Mar 19 04:26 PM

****** 201908063465 ******

A. NAME & PHONE OF CONTACT AT FILER (optional)
Brenda R. Yates  248/351-3000

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Brenda R. Yates, c/o Jaffe Raitt Heuer & Weiss, P.C.
27777 Franklin Rd, Ste 2500
Southfield, MI 48034

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| DUMOUCHELLE | JOSEPH | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 251 E. MERRILL STREET, SUITE 236 | BIRMINGHAM | MI | 48009 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ADDUCCI-DUMOUCHELLE | MELINDA | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 251 E. MERRILL STREET, SUITE 236 | BIRMINGHAM | MI | 48009 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| GELOV | TEODOR | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2290 WEST 136TH STREET | CARMEL | IN | 46032 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The items of jewelry identified on Exhibit A attached hereto, together with all proceeds, products and accounts related to the same.

Florida Documentary Stamp Tax Not Required

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Florida SoS

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

## EXHIBIT A

1. Cushion cut diamond earrings, 16.00ct total weight, I color, VVS2-SI1

2. Oval ruby and diamond earrings, 14.00ct total ruby weight, natural Burmese, no heat

3. Van Cleef & Arpels diamond bracelet set with 15 emerald cut diamonds across the top

4. Cartier Art Deco coral and onyx jabot brooch, Circa 1928

5. Fancy Intense yellow diamond ring, Internally Flawless, 15ct, set with diamonds at sides

6. Diamond lady's earrings, pair, each 5.01ct, D color, SI1 clarity

7. Diamond lady's earrings, pair, each 6.02 and 6.17ct, E color, SI1-2 clarity

8. Harry Winston ruby and diamond necklace, earrings and ring, approx.. 45.90ct in rubies, 29.00ct in diamonds total weight

9. Oval cut diamond lady's earrings, 16.50ct total weight, F color, VS1 clarity

10. Emerald cut diamond and sapphire ring, 5.45ct emerald cut diamond surrounded by blue sapphires and diamonds

11. Pear shape diamond ring, approx. 8.42ct pear shape diamond, H color, SI2 clarity

12. Blue sapphire ring, approx. 7.01ct Burmese sapphire, unheated, set with diamonds at sides

13. Blue sapphire ring, approx. 8.20ct Burmese sapphire, unheated, set with diamonds at sides

14. Pear shape diamond lady's ring, central 8.25ct, D color, VVS2 clarity

15. Sapphire and diamond lady's ring, central sapphire at approx. 8.68ct, Burmese, no heat

16. Mauboussin diamond lady's bracelet, set with diamonds totaling approx. 52.25ct

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY
**FILED**
2019 Jul 17 04:33 PM
****** 201909163897 ******

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Brenda R. Yates 248/351-3000

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Brenda R. Yates, c/o Jaffe Raitt Heuer & Weiss, P.C.
27777 Franklin Road, Ste 2500
Southfield, MI 48034

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
201908063465

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: **AND** Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☑ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
Joseph DuMouchelle Fine & Estate Jewellers, L.L.C.

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7c. MAILING ADDRESS**
251 E. Merrill Street, Suite 236 | **CITY** Birmingham | **STATE** MI | **POSTAL CODE** 48009 | **COUNTRY** USA

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**

OR **9b. INDIVIDUAL'S SURNAME**
Gelov | **FIRST PERSONAL NAME** Teodor | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. **OPTIONAL FILER REFERENCE DATA:**
Florida SoS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

**3**

1068348.v2

**From:** Joseph DuMouchelle [mailto:Joe@JosephDumouchelle.com]
**Sent:** Wednesday, October 31, 2018 11:42 AM
**To:** Ted Gelov <ted.gelov@heartlandfpg.com>
**Subject:** Photos first group

Hi Ted,

It was good speaking with you yesterday.  Per our conversation attached is the first group of photos.   I will send the balance as they come in.  I will also follow up with you early next week to go over the details of the auction.  Please let me know that you have received this email.

Thanks Ted.

Sincerely,

Joe

*Joseph DuMouchelle, G.G.*
*Estate Buyer -Appraiser -- Auctioneer*
*Graduate Gemologist*
joe@josephdumouchelle.com

1

Direct (313) 300-9166; Michigan 313-884-4800
Toll free 800-475-8898; NY 212-819-1899
www.josephdumouchelle.com

*the premier buyers, sellers,*
*auctioneers & appraisers of fine & estate jewelry*

# JOSEPH DuMOUCHELLE

*Confidentiality Notice: This email may contain confidential and legally privileged information that is intended only for the individual named. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this message is strictly prohibited. If you have received this transmission in error, please reply to the sender, so that proper delivery can be arranged, and please delete/discard this transmission.*

2

















# 4

1068348.v2

**From:** Joseph DuMouchelle [mailto:Joe@JosephDumouchelle.com]
**Sent:** Wednesday, November 21, 2018 10:20 AM
**To:** Ted Gelov <ted.gelov@heartlandfpg.com>
**Subject:** Follow up

Hi Ted,

It was great speaking with you this week. Per our call I will follow up with you later next week as we get closer to the auction date. I attached the info for the larger 77ct vivid yellow diamond and flawless pink diamond that I mentioned. They're so rare and we're hoping to have them for the December auction too.

Take care. I will speak with you later next week.

Happy Thanksgiving.

Sincerely,

Joe

*Joseph DuMouchelle, G.G.*
*Estate Buyer -Appraiser – Auctioneer*
*Graduate Gemologist*
joe@josephdumouchelle.com

1

Direct (313) 300-9166; Michigan 313-884-4800
Toll free 800-475-8898; NY 212-819-1899
www.josephdumouchelle.com

the premier buyers, sellers,
auctioneers & appraisers of fine & estate jewelry

# JOSEPH DuMOUCHELLE

*Confidentiality Notice: This email may contain confidential and legally privileged information that is intended only for the individual named. If you are not the intended recipient, you are herby notified that any disclosure, copying, distribution, or reliance upon the contents of this message is strictly prohibited. If you have received this transmission in error, please reply to the sender, so that proper delivery can be arranged, and please delete/discard this transmission.*

**5**

On Dec 21, 2018, at 9:20 AM, Joseph DuMouchelle <Joe@JosephDumouchelle.com> wrote:

Hi Ted,

It was great speaking with you earlier this week. Below is the listing with results. I will call to confirm you received this.

Thanks Ted.

Sincerely,

Joe

1. Cushion cut diamond earrings, 16.00ct total weight, I color, VVS2-SI1 Cost $250,000     Result $375,000

2. Oval ruby and diamond earrings, 14.00ct total ruby weight, natural Burmese, no heat Cost $400,000     Result $600,000

3. Van Cleef & Arpels diamond bracelet set with 15 emerald cut diamonds across the top Cost $300,000     Result $406,250

4. Cartier Art Deco coral and onyx jabot brooch, Circa 1928 Cost $100,000     Result $187,500

5. Fancy Intense yellow diamond ring, Internally Flawless, 15ct, set with diamonds at sides Cost $300,000 Result $500,000

6. Diamond lady's earrings, pair, each 5.01ct, D color, SI1 clarity Cost $150,000     Result $225,000

7. Diamond lady's earrings, pair, each 6.02 and 6.17ct, E color, SI1-2 clarity Cost $250,000     Result $500,000

8. Harry Winston ruby and diamond necklace, earrings and ring, approx. 45.90ct in rubies, Cost 150,000     Result $306,250
29.00ct in diamonds total weight

9. Oval cut diamond lady's earrings, 16.50ct total weight, F color, VS1 clarity Cost $600,000     Result $875,000

10. Emerald cut diamond and sapphire ring, 5.45ct emerald cut diamond surrounded by Cost $100,000     Result $225,000
blue sapphires and diamonds

11. Pear shape diamond ring, approx. 8.42ct pear shape diamond, H color, SI2 clarity Cost $110,000     Result $268,750

12. Blue sapphire ring, approx. 7.01ct Burmese sapphire, unheated, set with diamonds at sides Cost $70,000  Result $187,500

13. Blue sapphire ring, approx. 8.20ct Burmese sapphire, unheated, set with diamonds at sides Cost $65,000  Result $162,500

14. Pear shape diamond lady's ring, central 8.25ct, D color, VVS2 clarity Cost $525,000     Result $937,500

15. Sapphire and diamond lady's ring, central sapphire at approx. 8.68ct, Burmese, no heat Cost $90,000   Result $168,750

End....................................

*Joseph DuMouchelle, G.G.*
*Estate Buyer -Appraiser – Auctioneer*
*Graduate Gemologist*
joe@josephdumouchelle.com

Direct (313) 300-9166; Michigan 313-884-4800
Toll free 800-475-8898;  NY 212-819-1899
www.josephdumouchelle.com

<image001.png>
*Confidentiality Notice:  This email may contain confidential and legally privileged information that is intended only for the individual named.  If you are not the intended recipient, you are herby notified that any disclosure, copying, distribution, or reliance upon the contents of this message is strictly prohibited.  If you have received this transmission in error, please reply to the sender, so that proper delivery can be arranged, and please delete/discard this transmission.*

**6**

1068348.v2

Flagstar and BoA.
I think that clarification
would be helpful

Thank you
Ted

Sat, Mar 2, 3:52 PM

**Bank of America** 🇺🇸                                     Online Banking

**Business Advantage Chk - ████ Account Activity**
Balance Summary ████ (available as of today 03/02/2019) View: today        Print
03/02/2019

**All Transactions**

Got it
Thank you
Talk to you Monday

Online Banking

**Bank of America**

**Business Advantage Chk -** ███ **: Account Activity**

Balance Summary: ████████ (available as of today 03/02/2019) View: today
03/02/2019

Print

**All Transactions**

# 7

1068348.v2



JAFFE RAITT HEUER & WEISS

27777 FRANKLIN ROAD, SUITE 2500 • SOUTHFIELD, MICHIGAN 48034-8214
PHONE 248.351.3000 • FAX 248.351.3082
www.jaffelaw.com

Derek D. McLeod
dmcleod@jaffelaw.com
248.727.1390

<span style="text-align:right"><u>**Via First Class Mail and Certified Mail**</u></span>

March 15, 2019

Joseph DuMouchelle
251 E. Merrill Street, Suite 236
Birmingham, MI 48009

Melinda Adducci-DuMouchelle
251 E. Merrill Street, Suite 236
Birmingham, MI 48009

Joseph DuMouchelle Fine & Estate
 Jewellers, LLC
251 E. Merrill Street, Suite 236
Birmingham, MI 48009

Re:   **Declaration of default/right of acceleration under the Promissory Note dated
August 3, 2018 (the "Note"), demand for the "Return" due and owing
thereunder, demand for delivery of any "Property" not sold, demand for
accounting, and anti-spoliation notice**

Dear Mr. DuMouchelle, Ms. Adducci-DuMouchelle, and To Whom It May Concern:

I write this letter on behalf of Mr. Teodor Gelov ("Note Holder") in connection with the above-referenced Note, a copy of which is enclosed for ease of reference. Any capitalized terms used in this letter but not defined shall have the meanings given to such terms in the Note.

Note Holder hereby declares a default and right of acceleration for non-payment under the Note. Further, and without waiving any rights under the Note, Note Holder demands that the Return—which was due not later than February 28, 2019—be remitted to him immediately. Note Holder likewise demands that Borrower deliver to him any Property not sold. Any further failure to remit the Return and deliver any unsold Property will leave Note Holder with no choice but to take any and all appropriate actions to enforce his legal and equitable rights.

Relatedly, based on written and oral communications from Mr. DuMouchelle, Note Holder understands that the Property was sold at auction, and that the proceeds therefrom were transferred to a Bank of America account ending 0585. Mr. DuMouchelle further informed Note Holder that an accounting would be performed and that the Return would be remitted thereafter.

SOUTHFIELD • DETROIT • ANN ARBOR • NAPLES

Regardless, because Borrower has failed to remit the Return, Note Holder hereby demands an accounting as specifically contemplated by the Note.

Further, you are receiving this letter because you possess documents, including electronically-stored information ("ESI") (collectively, "Documents"), relating to the Note, including but not limited to the acquisition and subsequent sale of the Property. You are under a duty to preserve all Documents and other materials which may be relevant. It is incumbent upon you to preserve all relevant Documents, regardless of the form in which they may exist.

Documents subject to this anti-spoliation notice include, without limitation, both paper and electronic documents. By way of example, Documents include letters, contracts, proposals, facsimiles, memoranda, auction information of any kind, notes, spreadsheets, Excel worksheets, graphs, animation, images, email messages and attachments, voicemails, text messages, instant messages, word processing documents, calendar entries, Internet usage files, social and professional networking pages/sites, caches and history files, regardless of whether or where stored, and including storage devices such as network databases, network drives, offline storage, laptops, CD-ROMs, DVDs, flash drives, or similar removable storage media, personal computers, handheld devices (*e.g.*, smartphones, tablets), cameras, mobile phones, USB drives, answering machines, or paging devices, and all drafts of the foregoing.

Likewise, ESI includes, without limitation, all metadata. By way of example, ESI includes such metadata relating to the means and creation of the ESI, the purpose of the ESI, the time and date of creation, the creator and author of the ESI, the placement on a network where the ESI was created, and what technical standards were used to create the ESI.

If there is any doubt, **DO NOT** delete, destroy, or discard Documents which are or may be in any way related to the Note and non-payment thereunder. Be reminded that you are required by law to take these steps. It is important that you adhere to this notice until receiving further instructions.

If you have any questions concerning the foregoing, please contact me immediately.

Sincerely,

**JAFFE RAITT HEUER & WEISS,**
Professional Corporation

Derek D. McLeod

Enclosure
cc:    Mr. Teodor Gelov (via email only)
       Mr. Jay L. Welford, Esq. (via email only)

# PROMISSORY NOTE

$1,800,000.00

Hamilton County, Indiana
August 3, 2018

FOR VALUE RECEIVED, the undersigned, Joseph DuMouchelle, Melinda Adducci-DuMouchelle and Joseph DuMouchelle Fine & Estate Jewellers, LLC (hereinafter referred to collectively as "Borrower"), whose business address is 251 E. Merrill Street, Suite 236, Birmingham, MI 48009, promises to pay to the order of Teodor Gelov (hereinafter referred to as "Note Holder"), the sum of One Million Eight Hundred Thousand Dollars and Zero Cents ($1,800,000.00) (the "Funds") together with a guaranteed rate of return of 20%, particularly, Three Hundred Sixty Thousand Dollars and Zero Cents ($360,000.00), with payment of the entire principal and return by February 28, 2019. The sum of the Funds and the guaranteed return, Two Million One Hundred and Sixty Thousand Dollars ($2,160,000.00) shall be referred to as the "Return."

Prepayment. Borrower has the option of prepaying this Note in whole or in part at any time without any prepayment penalty. If this Note is prepaid, the guaranteed rate of return amount Three Hundred Sixty Dollars and Zero Cents ($360,000.00) shall remain the same and shall not be reduced.

Place of Making. Note Holder is a resident of Hamilton County, Indiana. Borrowers agree this promissory note is entered into in Hamilton County Indiana.

Timing of Essence. Time is of the essence with respect to the payment of this note. Borrower agrees to pay a late payment charge of 1 percent (1.0%) of the amount of any payment not paid within twenty (20) days after the date when due. If this Note is not fully paid at maturity (including all additions and late payment charges accruing under the term herein whether the stated maturity date, by acceleration, or otherwise), the Return shall earn interest, and shall be payable on demand, at the maximum rate allowed by law.

Restrictions on Use and Title. Borrowers agrees that the Funds shall be used solely for the purchase of those items of jewelry specifically identified in Exhibit A attached hereto and incorporated herein, as may be amended in writing and signed by both parties (the "Property"). The Funds shall be used for no other purpose and shall not be intermingled with any other monies or funds except for the express purpose of consummating a purchase of the Property. Once purchased the Property shall be in the name of one or more of the Borrowers, and no other entity shall have any ownership right in the Property until the Property is sold by Borrowers.

Information Rights. Borrowers shall update Note Holder on the progress towards purchase of the Property, the terms and documentation of purchase of the Property, location of the Property and all details of eventual sale of the Property by Borrowers. Borrowers shall timely respond to information requests from Note Holder who is entitled to have copies of all documents, correspondence and accounting regarding the Property.

Consent and Waiver. Borrower does hereby:

a.    agree that no course of dealing or delay or omission or forbearance on the part of the Note Holder in exercising or enforcing any of its rights or remedies shall impair or be prejudicial to any of Note Holder's rights and remedies hereunder or to the enforcement hereof and that the Note Holder may extend, modify or postpone the time and manner of payment and performance of this Note without thereby releasing, discharging or diminishing its rights and remedies against any Borrower.

1

b.      waive notice of acceptance of this Note, notice of the occurrence of any default hereunder or under any instrument securing this Note and presentment, demand, protest, notice of dishonor and notice of protest and notices of any and all action at any time taken or omitted by the Note Holder in connection with this Note or any instrument securing this Note.

Events of Default. Failure of Borrower to pay any principal, interest or any other sums required hereunder when due or Borrower's breach of any terms under this Note shall constitute a default hereunder as of the date said sum was due.

Security Interest. Borrower represents that once the Property has been purchased no other entity shall have a security interest in the Property other than Note Holder. If available to Note Holder under applicable law and at Note Holder's sole discretion, Note Holder shall have the right to file, record, perfect or otherwise secure a security interest or lien on the Property. Borrowers shall cooperate and execute any required documentation to effect a recording of the same.

Right of Acceleration. Upon the occurrence as to Borrower of any of the following events, Note Holder, at his sole election, may declare all or any portion of the principal of and return on the Note to be immediately due and payable, and may proceed at once and without further notice to enforce this Note, in accordance with its terms: (1) failure to pay any amount due on the Note when due; (2) voluntary or involuntary application for, or appointment of a receiver for any Borrower; filing of a voluntary or involuntary petition by or against any Borrower under any bankruptcy laws or amendments thereto; and (3) default in the performance of any of the terms and conditions set forth in this Note. Borrower further agrees that failure of Note Holder to exercise this right of accelerating the debt maturity shall in no event be considered as a waiver of such right of acceleration or estop Note Holder from exercising such right.

Return Rate. In no event shall the amount of return due or payable under this Note exceed the maximum rate of interest allowed by applicable law, as amended from time to time. If any payment of interest or in the nature of interest would, under applicable law, cause a violation of the foregoing interest rate restriction, then the excess payment shall be credited as a payment of principal, unless Borrower notifies the Note Holder that the Borrower requests to have the excess payment returned to Borrower.

Notices. All notices, demands and other communications required or permitted in connection with this Note shall be writing and shall be deemed to have been given when delivered or sent by first-class, postage prepaid, certified mail, with return receipt requested and addressed as follows, or at such other address as the parties may designate to each other in writing:

Borrower:
Joseph DuMouchelle, Melinda Adducci-DuMouchelle and Joseph DuMouchelle Fine & Estate Jewellers, LLC
251 E. Merrill Street, Suite 236
Birmingham, MI 48009_____
_____
_____

Note Holder:
Teodor Gelov
2290 West 136th Street
Carmel, IN 46032

2

**Attorneys Fees.** Borrower shall be responsible for all costs and expenses, including court costs and reasonable attorneys' fees (whether or not suit is filed, and if suit is filed, all those costs and expenses incurred in any primary and appellate proceedings), incurred by Note Holder as a result of any default by Borrower under the terms of this Note and in connection with the collection of this Note..

**Governing Law and Jurisdiction.** This Note shall be governed by, and construed and enforced under the laws of the State of Indiana, without reference to choice of law principles. Borrower irrevocably consents and agrees to the jurisdiction and exclusive venue in Hamilton County, Indiana or the federal courts sitting in the Southern District of Indiana with respect to all matters related to this Note and the relationship created by it. The parties hereby expressly waives any right to a trial by jury in any such suit, action or proceeding. Note Holder is allowed to pursue an action in any jurisdiction where the Property or any Borrower is located to effectuate performance or enforcement of this Note or any in rem action.

**Headings.** The headings of the paragraphs contained in this Note are for convenience of reference only and do not form a part hereof and in no way modify, interpret or construe the meaning of the parties hereto.

**Payments.** Payments shall be made payable to Note Holder at the address set forth above or such other address or bank wire as Note Holder may provide to Borrower in writing.

BORROWER:

DocuSigned by:

*Joseph DuMouchelle*

Joseph DuMouchelle
1E08A67C695D431...

DocuSigned by:

*M. Melinda Adducci*

Melinda Adducci-DuMouchelle
1E08A67C695D431...

DocuSigned by:

*Joseph DuMouchelle*

Joseph DuMouchelle Fine & Estate Jewellers, LLC
1E08A67C695D431...

By: Joseph DuMouchelle

Title: President

3

# EXHIBIT A

1. Cushion cut diamond earrings, 16.00ct total weight, I color, VVS2-SI1 — Cost $250,000
2. Oval ruby and diamond earrings, 14.00ct total ruby weight, natural Burmese, no heat — Cost $400,000
3. Van Cleef & Arpels diamond bracelet set with 15 emerald cut diamonds across the top — Cost $300,000
4. Cartier Art Deco coral and onyx jabot brooch, Circa 1928 — Cost $100,000
5. Fancy Intense yellow diamond ring, Internally Flawless, 15ct, set with diamonds at sides — Cost $300,000
6. Diamond lady's earrings, pair, each 5.01ct, D color, SI1 clarity — Cost $150,000
7. Diamond lady's earrings, pair, each 6.02 and 6.17ct, E color, SI1-2 clarity — Cost $250,000
8. Harry Winston ruby and diamond necklace, earrings and ring, approx.. 45.90ct in rubies, 29.00ct in diamonds total weight — Cost 150,000
9. Oval cut diamond lady's earrings, 16.50ct total weight, F color, VS1 clarity — Cost $600,000
10. Emerald cut diamond and sapphire ring, 5.45ct emerald cut diamond surrounded by blue sapphires and diamonds — Cost $100,000
11. Pear shape diamond ring, approx. 8.42ct pear shape diamond, H color, SI2 clarity — Cost $110,000
12. Blue sapphire ring, approx. 7.01ct Burmese sapphire, unheated, set with diamonds at sides — Cost $70,000
13. Blue sapphire ring, approx. 8.20ct Burmese sapphire, unheated, set with diamonds at sides — Cost $65,000
14. Pear shape diamond lady's ring, central 8.25ct, D color, VVS2 clarity — Cost $525,000
15. Sapphire and diamond lady's ring, central sapphire at approx. 8.68ct, Burmese, no heat — Cost $90,000
16. Mauboussin diamond lady's bracelet, set with diamonds totaling approx. 52.25ct — Cost $140,000

4

**8**

1068348.v2

FILED    Received for Filing    Oakland County Clerk    4/11/2019 2:33 PM

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

TEODOR GELOV, an individual,

    Plaintiff,

                                                    Case No. 2019-172619-CK

v.

                                                    Hon. Hala Jarbou

JOSEPH DUMOUCHELLE, an individual,
MELINDA ADDUCCI-DUMOUCHELLE,
an individual, and
JOSEPH DUMOUCHELLE FINE &
ESTATE JEWLLERS, LLC,
a Michigan limited liability company,

    Defendants.

_____/

| | |
|---|---|
| JAFFE RAITT, HEUER & WEISS, P.C. | BUTZEL LONG PC |
| By:   Jay L. Welford (P34471) | By:   George B. Donnini (P66793) |
|       Derek D. McLeod (P66229) |       Dennis A. Lienhardt, Jr. (P81118) |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |
| 27777 Franklin Road, Suite 2500 | 41000 Woodward Avenue |
| Southfield, Michigan 48034 | Stoneridge West Bldg. |
| (248) 351-3000 | Bloomfield Hills, Michigan 48304 |
| jwelford@jaffelaw.com | (248) 258-1616 |
| dmcleod@jaffelaw.com | donnini@butzel.com |
| | lienhardt@butzel.com |

_____/

**ORDER REGARDING: (1) PLAINTIFF'S VERIFIED MOTION**
**FOR POSSESSION PENDING FINAL JUDGMENT, AND (2) THE COURT'S**
**ORDER TO APPEAR AND ANSWER VERIFIED MOTION**

At a session of said Court held in the
City of Pontiac, County of Oakland,
State of Michigan on   4/11/2019  

PRESENT: HON.    HALA JARBOU   
                        Circuit Court Judge

UPON THE FILING OF THE Complaint and Verified Motion for Possession Pending

Final Judgment ("Verified Motion") by Plaintiff Teodor Gelov ("Plaintiff"), the Court, on March

20, 2019, entered its Order to Appear and Answer Verified Motion (the "March 20 Status Quo Order").

ON APRIL 3, 2019, following a hearing on the March 20 Status Quo Order, the Court entered its Order Regarding the April 3, 2019 Hearing on the Order to Appear and Answer Verified Motion.

ON APRIL 10, 2019, the Court held a hearing on the Verified Motion and Defendants' response to same;

NOW, THEREFORE, AND FOR THE REASONS STATED ON THE RECORD,

IT IS HEREBY ORDERED that:

1. The Verified Motion is denied without prejudice.

2. Defendants shall wire all monies—approximately $600,000.00—currently on deposit in the Wells Fargo account to the Butzel Long PC Client Trust Account (the "Wire Transfer") by Friday, April 12, 2019 at 5:00 pm EDT (the "Appointed Time"). If, for any reason, the Wire Transfer is not completed by the Appointed Time, Defendants shall provide documentation to the Court and to Plaintiff detailing the reason(s) why.

3. Confirmation of the Wire Transfer shall be given to Plaintiff as soon as such information is available.

IT IS FURTHER ORDERED that the Court's March 20 Status Quo Order shall remain in full force and effect until further order of the Court, except that Defendants are no longer restricted from using the funds in the Bank of America Business Checking Account as more particularly described in Plaintiff's Complaint and Verified Motion.

2

IT IS FURTHER ORDERED that the April 17, 2019 date for Defendants to answer or otherwise respond to Plaintiff's Complaint is adjourned and reset to April 19, 2019.

IT IS SO ORDERED.

/s/ Hala Jarbou
_____
CIRCUIT COURT JUDGE          GG

APPROVED AS TO FORM ONLY:

/s/ Derek D. McLeod                              /s/ George B. Donnini (w/ consent)
Derek D. McLeod (P66229)                     George B. Donnini (P66793)
*Attorney for Plaintiff*                            *Attorney for Defendants*

Date: April 10, 2019                               Date: April 10, 2019

3

**9**

1068348.v2



## Send Money - Confirmation

| | |
|---|---|
| From Account | CHECKING XXXXXX (Avail. balance = ) |
| Send To | Butzel Long |
| Amount | $600,000.00 |
| Delivery Speed | Standard |
| Expected Delivery Date | 04/24/2019 |
| Confirmation Number | |

**10**

1068348.v2

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

TEODOR GELOV, an individual,

    Plaintiff,

v.

                                   Case No. 2019-172619-CK

                                   Hon. Hala Jarbou

JOSEPH DUMOUCHELLE, an individual,
MELINDA ADDUCCI-DUMOUCHELLE,
an individual, and
JOSEPH DUMOUCHELLE FINE &
ESTATE JEWELLERS, LLC,
a Michigan limited liability company,

    Defendants.

_____/

| | |
|---|---|
| JAFFE RAITT, HEUER & WEISS, P.C. | BUTZEL LONG PC |
| By:   Jay L. Welford (P34471) | By:   George B. Donnini (P66793) |
|       Derek D. McLeod (P66229) |       Dennis A. Lienhardt, Jr. (P81118) |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |
| 27777 Franklin Road, Suite 2500 | 41000 Woodward Avenue |
| Southfield, Michigan 48034 | Stoneridge West Bldg. |
| (248) 351-3000 | Bloomfield Hills, Michigan 48304 |
| jwelford@jaffelaw.com | (248) 258-1616 |
| dmcleod@jaffelaw.com | donnini@butzel.com |
| | lienhardt@butzel.com |

_____/

**ORDER REGARDING: (1) PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR FAILING TO COMPLY WITH THE COURT'S APRIL 11 2019 ORDER, AND (2) PLAINTIFF'S MOTION TO SHORTEN TIME FOR DEFENDANTS TO RESPOND TO DISCOVERY**

At a session of said Court held in the
City of Pontiac, County of Oakland,
State of Michigan on    4/25/2019   

PRESENT: HON.    HALA JARBOU   
                  Circuit Court Judge

ON APRIL 11, 2019, the Court entered its Order Regarding: (1) Plaintiff's Verified Motion for Possession Pending Final Judgment, and (2) the Court's Order to Appear and Answer Verified Motion (the "April 11 Order").

ON APRIL 17, 2019, Plaintiff Teodor Gelov ("Plaintiff") filed his Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Failing to Comply With the Court's April 11, 2019 Order ("Motion for Order to Show Cause").

ALSO ON APRIL 17, 2019, Plaintiff filed his Motion to Shorten Time for Defendants to Respond to Discovery ("Motion to Expedite Discovery Responses", and together with the Motion for Order to Show Cause, "Plaintiff's Motions").

ON APRIL 22, 2019, Defendants filed responses in opposition to Plaintiff's Motions.

ON APRIL 24, 2019, the Court held a hearing on Plaintiff's Motions;

NOW, THEREFORE, AND FOR THE REASONS STATED ON THE RECORD,

IT IS HEREBY ORDERED that:

1.  Plaintiff's Motion for Order to Show Cause is granted.

2.  Pursuant to the April 11 Order, the wire transfer of $600,000.00 from the Wells Fargo account to the Butzel Long PC ("Butzel") Client Trust Account (the "Wire Transfer") must be received by Butzel by midnight, April 24, 2019.

3.  If the Wire Transfer is not received by Butzel by midnight, April 24, 2019, Defendants shall pay $10,000.00 a day, including weekends and holidays, into the Butzel Client Trust Account until the Wire Transfer is received by Butzel.

4.  Confirmation of Butzel's receipt of the Wire Transfer shall be given to Plaintiff and to the Court as soon as such information is available.

IT IS FURTHER ORDERED that Plaintiff's Motion to Expedite Discovery Responses is denied.

IT IS FURTHER ORDERED that the status conference scheduled to take place on Wednesday, May 1, 2019, at 10:00 am, is hereby adjourned without date.

IT IS SO ORDERED.

/s/ Hala Jarbou
_____
CIRCUIT COURT JUDGE          GG

APPROVED AS TO FORM ONLY:

/s/ Derek D. McLeod
_____
Derek D. McLeod (P66229)
*Attorney for Plaintiff*

Date: April 24, 2019

/s/ George B. Donnini (w/ consent)
_____
George B. Donnini (P66793)
*Attorney for Defendants*

Date: April 24, 2019

3

# 11

1068548.v2

# Wells Fargo Business Choice Checking

Account number: 7883228046 ■ December 19, 2018 - December 31, 2018 ■ Page 1 of 5



JOSEPH DUMOUCHELLE FINE & ESTATE
JEWELLERS, LLC.
345 COWRY CT
SANIBEL FL 33957-6403

## Questions?

Available by phone 24 hours a day, 7 days a week:
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (287)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Since August 2003, the Wells Fargo/Gallup Small Business Index has surveyed small business owners on current and future perceptions of their business financial situation. View the latest results at wellsfargoworks.com.

## Account options

A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.

Business Online Banking ☐
Online Statements ☐
Business Bill Pay ☐
Business Spending Report ☐
Overdraft Protection ☐

## Activity summary

| | |
|---|---:|
| Beginning balance on 12/19 | $0.00 |
| Deposits/Credits | 100.00 |
| Withdrawals/Debits | - 100.00 |
| Ending balance on 12/31 | $0.00 |
| Average ledger balance this period | $61.53 |

Account number: ████28046

JOSEPH DUMOUCHELLE FINE & ESTATE
JEWELLERS, LLC.

Florida account terms and conditions apply

For Direct Deposit use
Routing Number (RTN): 063107513

For Wire Transfers use
Routing Number (RTN): 121000248

## Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.