**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**In the matter of:**
JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
         *Debtor(s)*

Bankruptcy Petition No. 19-54531-pjs
Hon. Phillip J Shefferly
Chapter 7

TEODOR GELOV,
         *Plaintiff,*
v.

JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
         *Defendant(s)*

Adv. Pro. No. 20-04172-pjs
Hon. Phillip J Shefferly

## DEFENDANT MELINDA J. ADDUCCI'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENANTS

     **NOW COMES** MELINDA J. ADDUCCI, who, in response to the Requests for Admission, Interrogatories, and Requests for the Production of Documents issued by the Plaintiff, ("Discovery Requests") hereby responds/objects as follows:

### Definitions

     Defendant MELINDA J. ADDUCCI ("Melinda") has attempted to the best of their ability to respond or object to the Plaintiff's Discovery Requests, subject to and making use of the following definitions given by the Plaintiff in issuing these discovery requests:

- "**Borrowers**" shall mean Joseph, Melinda and DuMouchelle Jewellers.
- "**Communication**" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any and all means, whether electronically or otherwise.
- "**Concerning**" shall mean relating to, referring to, describing, evidencing, or constituting.
- "**Defendants**" shall mean, collectively Joseph and Melinda.
- "**Discovery Requests**" shall mean the requests for admission, interrogatories and requests for production of documents directed herein.
- "**Document**" is intended to include all "writings and recordings" and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 7034 of the Federal Rules of Bankruptcy Procedure. The word "document" is also intended to include all that are within and defined by Fed. R. Civ. P. 34(a)(1)(A) and (B), made applicable herein by Fed. R. Bankr. P. 7026, including Comments to the Rule and case law interpreting the rule.
- "**Dumouchelle Jewellers**" means Joseph DuMouchelle Fine & Estate Jewellers, LLC.

- "**Identify**" as used in these Discovery Requests in reference to a person shall mean to identify the person's full name, last known address, phone number, email contact, and the person's present or last known employer and position.
- "**Identify**" as used in these Discovery Requests in reference to a Document shall mean to set forth the Document's date and approximate date of preparation; its title, if any; the type of Document (e.g., letter, memorandum, email, etc.); its substance; the present or last known location and custodian of the Document and any copies; and the identity of each person who was its authority and/or signatory, along with all of the information specified in the preceding paragraph concerning such person(s).
- "**Joseph**" means Joseph DuMouchelle.
- "**Melinda**" means Melinda J. Adducci.
- "**Person**" shall mean any natural person or entity, including without limitation individuals, partnerships, firms, associations, joint ventures, corporations, or other entities, whether real or fictitious.
- "**Plaintiff**" means Teodor Gelov.
- "**You**" and "**Your**" shall mean the party to whom these requests to admit, interrogatories and document requests are directed, as well as their agents, successors and assigns.

## Requests to Admit

1. Plaintiff is an individual who conducts business in Hamilton County, Indiana.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

2. Joseph is an individual who previously conducted business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.
**Response**: Denied for the reason that Joseph did not conduct business personally, but rather, the business conducted at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan was the business of DuMouchelle Jewellers.

3. Melinda is an individual who previously conducted business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.
**Response**: Denied for the reason that Melinda did not conduct business personally, but rather, the business conducted at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan was the business of DuMouchelle Jewellers.

4. DuMouchelle Jewellers is a Michigan limited liability company which previously conducted business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.
**Response**: Admitted.

5. On or about August 3, 2018, Borrowers each executed the Note, attached as Exhibit 1.
**Response**: On the advice of counsel, Melinda asserts her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda further clarifies that while DuMouchelle Jewellers, and Joseph, and Melinda, are described as "Borrowers" on the note, no funding was provided to Joseph or Melinda, and instead, this was a loan of funds to DuMouchelle Jewellers.

6. The Note states that it is governed by, construed under, and enforced pursuant to the laws of the State of Indiana, without reference to choice of laws principles.
**Response**: Admitted insofar as the document speaks for itself.

7. Pursuant to the Note, Borrowers promised to pay Plaintiff One Million Eight Hundred Thousand Dollars and Zero Cents ($1,800,000.00) (the "Funds"), along with a guaranteed rate of return of 20%, or Three Hundred Sixty Thousand Dollars and Zero Cents ($360,000.00) (the "Guaranteed Return").
**Response**: Admitted, subject to the clarification that while DuMouchelle Jewellers, and Joseph, and Melinda, are described as "Borrowers" on the note, no funding was provided to Joseph or Melinda, and instead, this was a loan of funds to DuMouchelle Jewellers, and the Plaintiff demanded the addition of Joseph and Melinda to the note as guarantors.

8. Pursuant to the terms of the Note, Borrowers were required to remit the Funds and the Guaranteed Return (collectively, the "Repayment") to Plaintiff, by February 28, 2019.
**Response**: Denied as untrue for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508.

9. Borrowers further agreed to pay Plaintiff "a late payment charge of 1 percent (1.0%) of the amount of any payment not paid within twenty (20) days after the date when due"—February 28, 2019 (the "Late Charge").
**Response**: Admitted, subject to the clarification that while DuMouchelle Jewellers, and Joseph, and Melinda, are described as "Borrowers" on the note, no funding was provided to Joseph or Melinda, and instead, this was a loan of funds to DuMouchelle Jewellers, and the Plaintiff demanded the addition of Joseph and Melinda to the note as guarantors.

10. The Late Charge is equal to $21,600.00.
**Response**: Admitted.

11. The Note further states, in part, that if the "Note is not fully paid at maturity (including all additions and late payment charges . . .) . . . the Repayment shall earn interest, and shall be payable on demand, at the maximum rate allowed by law."
**Response**: Admitted insofar as the document speaks for itself; however, denied that the same is enforceable, for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508.

12. To date, Borrowers have failed to remit the Repayment to Plaintiff.
**Response**: Admitted that Repayment has not submitted and denied that the amount is due or owing.

13. Under the Note, Borrowers "shall be responsible for all costs and expenses, including court costs and reasonable attorneys' fees (whether or not suit is filed, and if suit is filed, all those costs and expenses incurred in any primary and appellate proceedings), incurred by Note Holder as a

result of any default by [Borrowers] under the terms of this Note and in connection with the collection of this Note."
**Response**: Admitted insofar as the document speaks for itself; however, denied that the same is enforceable, for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508.

14. Pursuant to the Note, Borrowers agreed
> . . . that the Funds shall be used solely for the purchase of those items of jewelry specifically identified in Exhibit A attached hereto and incorporated herein, as may be amended in writing and signed by both parties (the "Property"). The Funds shall be used for no other purpose and shall not be intermingled with any other monies or funds except for the express purpose of consummating a purchase of the Property. Once purchased the Property shall be in the name of one or more of the Borrowers, and no other entity shall have any ownership right in the Property until the Property is sold by Borrowers.

**Response**: Admitted insofar as the document speaks for itself; however, denied that the same is enforceable, for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508.

15. The Property listed in Exhibit A to the Note consists of 16 items of jewelry.
**Response**: Admitted insofar as the document speaks for itself.

16. Pursuant to the Note, Borrowers were required to "update Note Holder on the progress towards purchase of the Property, the terms and documentation of purchase of the Property, location of the Property and all details of eventual sale of the Property by Borrowers."
**Response**: Admitted insofar as the document speaks for itself; however, denied that the same is enforceable, for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508.

17. Pursuant to the Note, "Borrowers shall timely respond to information requests from Note Holder who is entitled to copies of all documents, correspondence and accounting regarding the Property."
**Response**: Admitted insofar as the document speaks for itself; however, denied that the same is enforceable, for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508.

18. Pursuant to the Note, Borrowers represented that once the Property has been purchased no other entity shall have a security interest in the Property other than Note Holder. If available to Note Holder under applicable law and at Note Holder's sole discretion, Note Holder shall have the

right to file, record, perfect or otherwise secure a security interest or lien on the Property. Borrowers shall cooperate and execute any required documentation to effect a recording of the same.
**Response**: Denied as untrue, Borrowers made no "representations" in the promissory note; and (2) denied on the basis that, even if the Plaintiff's allegation above were true, the same would not be enforceable, for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508.

19. Plaintiff recorded UCC Financing Statements concerning the Property, which state, in part, that they cover "The items of jewelry identified on Exhibit A attached hereto, together with all proceeds, products and accounts related to the same," attached as Exhibit 2.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

20. On or about October 30, 2018, Plaintiff and Joseph had a telephone call regarding the alleged purchase of the Property identified in Exhibit A to the Note.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

21. During the telephone call, Joseph falsely stated that he had purchased each item of Property identified in Exhibit A to the Note.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

22. Following that telephone call, in an email dated October 31, 2018 attached as Exhibit 3, Joseph sent to Plaintiff "the first group of photos", which were represented to be seven of the items identified in Exhibit A to the Note that had been falsely stated to have been purchased (the "October 31 Email").
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

23. In the October 31 Email, Joseph wrote, in part, that he "will send the balance [of the images] as they come in. I will also follow up with you early next week to go over the details of the auction."
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

24. In November, 2018, Plaintiff and Joseph again spoke by telephone concerning the allegedly upcoming auction of the Property.

Response: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

25. In an email dated November 21, 2018, attached as Exhibit 4 (the "November 21 Email"), Joseph wrote the following to Plaintiff:
> Hi Ted,
> It was great speaking with you this week. Per our call I will follow
> up with you later next
> week as we get closer to the auction date. I attached the info for the
> larger 77ct vivid
> yellow diamond and flawless pink diamond that I mentioned.
> They're so rare and we're
> hoping to have them for the December auction too.
> Take care. I will speak with you later next week.
> Happy Thanksgiving.
> Sincerely,
> Joe

**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

26. Two "Joseph DuMouchelle" "November 2018 PROPOSAL[S]" were attached to the November 21 Email.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

27. Defendants are in possession of the "November 2018 PROPOSAL[S]".
**Response**: Melinda denies that she is in possession, and neither admits nor denies as to the other Defendant for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

28. Joseph falsely stated to Plaintiff, including through written correspondence dated December 21, 2018, attached hereto as Exhibit 5, that 15 items of the Property had sold at auction in or around December 2018, with the purchase price and sale price of each specified, totaling almost $6,000,000 in sale proceeds.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

29. On or about March 2, 2019, Joseph texted Plaintiff a falsified screen-shot of a Bank of America account, attached as Exhibit 6, wherein the sale proceeds of the auctioned Property were purportedly deposited.

**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

30. Joseph falsely advised Plaintiff that pending an accounting, remittance of the Repayment would be made to Plaintiff.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient so as to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

31. Defendants have failed to remit any portion of the Repayment to Plaintiff due under the Note.
**Response**: Denied as untrue, for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508.

32. The Note states, in part, that Borrowers "waive notice of acceptance of this Note, notice of the occurrence of any default hereunder or under any instrument securing this Note and presentment, demand, protest, . . . and notices of any and all action at any time taken or omitted by the Note Holder in connection with this Note or any instrument securing this Note."
**Response**: Admitted as to the language of the Note, denied to the extent that the same is unenforceable for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508

33. On or about March 15, 2019, Plaintiff, through counsel, provided Borrowers with notice of default under the Note, demand for immediate remittance of the Repayment, demand for the delivery of any unsold Property, and a demand for an accounting of the proceeds from the sale of the auctioned Property, attached as Exhibit 7 (the "Demand and Notice").
**Response**: Admitted that Exhibit 7 was sent; however, denied that the terms of the Note are enforceable, for the reason that the loan was and is void for illegality by virtue of, among other things, the interest rate limitation set forth in Indiana Code §24-4.5-3-201, and made criminal by the function of Indiana Code §24-4.5-3-508

34. Borrowers failed to respond to the Demand and Notice or otherwise comply with the demands made therein.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

35. In a phone call on March 7, 2019, between Plaintiff and Defendants, Defendants reaffirmed that all of the Property had been sold and all of the proceeds had been collected, but that banking policies precluded the transfer of funds to Plaintiff.
**Response**: On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

36. Most of this conversation was led by Melinda.
**Response**: On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

37. In fact, no Property had ever been purchased with the proceeds of the Note and no Property had otherwise been acquired, no Property had been sold at auction and no proceeds of Property sales, in fact, had been collected.
**Response**: On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

38. The "blame the banks" discussion was a complete fabrication of Defendants.
**Response**: Denied as untrue.

39. Plaintiff initiated suit against Borrowers in the Oakland County Circuit Court, Case No. 2019-172619-CK, on March 19, 2019 (the "Oakland County Action").
**Response**: Admitted.

40. In the Oakland County Action, Plaintiff sought judgment against Borrowers under the Note, as well as possession of the Property.
**Response**: Admitted.

41. Also in the Oakland County Action, on March 19, 2019, Plaintiff filed a Verified Motion for Possession Pending Final Judgment ("Verified Motion") related to the Property and any proceeds realized from its sale.
**Response**: Neither admitted nor denied as to the filing of a Verified Motion; therefore, the same is deemed denied, and Plaintiff is left to his proofs to produce said Verified Motion.

42. On April 10, 2019, counsel for Defendants appeared before the Court for a hearing on the Verified Motion, wherein Defendants defended on the basis that $600,000 of Property proceeds would be immediately wired to counsel for Defendants' client trust account.
**Response**: Neither admitted nor denied for the reason that Melinda lacks any recollection of attending this hearing or being aware of the specific arguments made in court.

43. Based on this representation, the Court's ruling on the Verified Motion was memorialized in its April 11, 2019 Order Regarding: (1) Plaintiff's Verified Motion for Possession Pending Final Judgment, and (2) the Court's Order to Appear and Answer Verified Motion, attached as Exhibit 8 (the "Wire Transfer Order").
**Response**: Admitted that the Order is titled as stated.

44. The Wire Transfer Order stated:
> Defendants shall wire all monies—approximately $600,000.00—currently on deposit in the Wells Fargo account to the Butzel Long PC Client Trust Account (the "Wire Transfer") by Friday, April 12, 2019 at 5:00 pm EDT (the "Appointed Time"). If, for any reason, the Wire Transfer is not completed by the Appointed time (sic), Defendants shall provide documentation to the Court and to Plaintiff detailing the reasons(s) why.

**Response**: Admitted.

45. The $600,000 wire transfer was not made by Friday, April 12, 2019.

**Response**: Admitted.

46. Plaintiff filed a Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Failing to Comply with the Court's April 11, 2019 Order ("Show Cause Motion").
**Response**: Admitted.

47. On April 24, 2019, the Court held a hearing on, among other things, Plaintiff's Show Cause Motion.
**Response**: Neither admitted nor denied for the reason that Melinda lacks any recollection of attending this hearing or being aware of the specific arguments made in court or the specific subject of any such hearing.

48. Just prior to going on the record, counsel for Defendants presented counsel for Plaintiff and the Court with a document entitled "Send Money-Confirmation," which had been provided to Defendants' counsel by Defendants, attached as Exhibit 9 (the "Send Money-Confirmation").
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

49. The "Send Money-Confirmation" was a fraudulent document on its face.
**Response**: Neither admitted nor denied for the reason that Melinda lacks personal firsthand information sufficient to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied.

50. Pursuant to the Send Money-Confirmation, April 24, 2019 was the "Expected Delivery Date" for the wire. This date was inconsistent with the wire transfer confirmation date of "4/19/19," five days prior.
**Response**: Neither admitted nor denied for the reason that Melinda is unaware as to what Plaintiff means by "inconsistent"; however, Melinda states that a confirmation date of April 19, 2020 is not on its face inconsistent with an expected delivery date of April 24, 2020.

51. The "Checking Account" number on the face of the "Send Money-Confirmation" consisted of six Xs, the available balance was completely absent, the "Delivery Speed" was inexplicably identified as "Standard" (and not something like "Expedited," even though the Wire Transfer was due by April 12), the "Confirmation Number" was inexplicably blacked out, and there was a separate, redacted item, which was wholly unidentified.
**Response**: Denied as untrue for the reason that: (1) the document speaks for itself; and (2) nothing on the document was "inexplicabl[e]."

52. Based on the fraudulent "Send Money-Confirmation", the Court entered an order dated April 25, 2019, entitled Order Regarding: (1) Plaintiff's Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Failing to Comply With the Court's April 11 2019 Order, and (2) Plaintiff's Motion to Shorten Time for Defendants to Respond to Discovery, attached as Exhibit 10 (the "Sanctions Order").
**Response**: Denied as untrue for the reason that: (1) as to the allegedly fraudulent Send Money Confirmation, neither admitted nor denied for the reason that Melinda lacks personal firsthand

information sufficient to form a belief as to the truth of the matter asserted; therefore, the same is deemed denied; and (2) the Order speaks for itself.

53. In relevant part, the Sanctions Order states: "2. Pursuant to the [Wire Transfer Order], the wire transfer of $600,000.00 from the Wells Fargo account to the Butzel Long PC ('Butzel') Client Trust Account (the 'Wire Transfer') must be received by Butzel by midnight, April 24, 2019", and "3. If the Wire Transfer is not received by Butzel by midnight, April 24, 2019, Defendants shall pay $10,000.00 a day, including weekends and holidays, into the Butzel Client Trust Account until the Wire Transfer is received by Butzel."
**Response:** Admitted.

54. Defendants never complied with the Sanctions Order including completing the Wire Transfer or making payment of the $10,000 per day sanction (the "$10,000 Per Day Sanction").
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

55. The Wells Fargo account to which the Send Money-Confirmation related, was opened with $100.00 of cash on December 19, 2018, per Exhibit 11 attached.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

56. During the month of April, 2019, the month of the alleged Send Money-Confirmation, the account ranged from a zero balance to a balance of negative one cent, with no deposits and no withdrawals during that month:
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

57. The Send Money-Confirmation was fraudulent.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

58. Defendants' on-the-record agreement to wire the $600,000 was a fraud.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

59. Defendant's presentation of the Send Money-Confirmation to the Court was a fraud on the Court.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

60. Plaintiff obtained a judgment against Defendants pursuant to Plaintiff's Motion for Partial Summary Judgment on November 6, 2019 (the "Judgment").
**Response:** Admitted.

61. The Judgment was for $2,862,715.54, which included the Funds of $1,800,000.00, the Guaranteed Return of $360,000.00, the Late Charge of $21,600.00, contractual interest through 9/15/19 of $409,584.53 and costs and attorneys' fees through 8/31/19 of $271,961.06 (the "Judgment Amount").
**Response:** Admitted.

62. Plaintiff filed a Proof of Claim, Claim Number 7-1 in Defendants' bankruptcy case on November 25, 2019, in the Judgment Amount, which amount was exclusive of interest from and

after 9/15/19, costs and attorneys' fees after 8/31/19 and the $10,000 Per Day Sanction (collectively the "Non-Dischargeable Amounts").
**Response**: No response required. Plaintiff's proof of claim speaks for itself.

63. Defendants induced Plaintiff to enter into the Note under false pretenses.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

64. Defendants had no present or future intent, at the time of entering into the Note, of performing their obligations thereunder.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

65. Defendants induced Plaintiff to advance the Funds under false pretenses.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

66. Defendants had no present or future intent, at the time of entering into the Note, of making repayment of the Funds.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

67. Defendants falsely represented in the Note that the Funds would be utilized to purchase the Property.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

68. Defendants had no present or future intent, at the time of entering into the Note, of purchasing the Property.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

69. Defendants falsely represented that the Property had been purchased with the Funds, including sending purported photos of items of Property purchased.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

70. Defendants falsely represented that additional photos of items of Property purchased would be forwarded.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

71. Defendants falsely represented that the Property had been scheduled for auction.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

72. Defendants falsely represented that an auction of the Property had, in fact, been held.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

73. Defendants falsely represented that all of the Property had been sold at the auction.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

74. Defendants falsely represented that proceeds from the sale of the Property had been received.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

75. Defendants falsely represented that the remaining proceeds from the sale of the Property were in the process of being collected from the purchasers.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

76. Defendants falsely set forth, in an email, a listing of the items sold at auction and the actual dollar amounts received for each item at auction.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

77. Defendants falsely represented that pending an accounting, remittance of the Repayment would be made to Plaintiff.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

78. Defendants falsely represented that the Repayment had been sent by wire transfer.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

79. Defendants falsely represented to Plaintiff and the Oakland County Circuit Court Judge that $600,000 of the Repayment would be wired to Defendants' counsel's client trust account.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

80. Defendants falsely represented to Plaintiff and the Oakland County Circuit Court Judge that a wire transfer had been initiated in the amount of $600,000 to Defendants' counsel's client trust account.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

81. Defendants fabricated a false Send Wire-Confirm which falsely represented that a $600,000 wire transfer to Defendant's counsel had been initiated.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

82. Defendants falsely represented that there was $600,000 in their bank account to support the $600,000 Send Wire-Transfer when, in fact, the account had a zero balance at the time.
**Response:** On the advice of counsel, Melinda asserts her Fifth Amendment privilege.

83. The foregoing actions preclude a discharge of the Repayment and other amounts due to Plaintiff, on the basis that the underlying Note was executed and the Funds advanced were money, property, services, or an extension, renewal or refinancing of credit obtained by false pretenses, false representations, and actual fraud.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

84. The foregoing actions preclude a discharge of the Non-Dischargeable Amounts, on the basis that the underlying Note was executed and the Funds advanced were money, property, services, or an extension, renewal or refinancing of credit obtained by use of a statements in writing that were materially false, respecting Defendants' financial condition, on which Plaintiff reasonably relied and that Defendants caused to be made and/or published with the intent to deceive Plaintiff and the Oakland County Circuit Court Judge.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

85. Under the terms of the Note, Defendants agreed to undertake certain fiduciary duties to Plaintiff, including using the Funds solely to purchase the Property, to sell the Property, to account for and return to Plaintiff the Repayment and to otherwise abide by the duties imposed upon them as fiduciaries under the terms of the Note.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

86. Defendants breached each and every one of the fiduciary duties imposed on them under the terms of the Note, including, but not limited to, in failing to use the Funds to purchase any of the Property, in diverting the Funds for their own personal benefit and purpose, in failing to sell the Property, in failing to account for and return to Plaintiff the Repayment and to otherwise abide by the duties imposed upon them as fiduciaries under the terms of the Note.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

87. Defendants engaged in embezzlement and larceny, in taking the Funds and using them for purposes other than as specified under the terms of the Note, with a present and continuing intent to do so, in order to convert the same for their own personal benefit and purpose.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

88. The foregoing actions preclude a discharge of the Non-Dischargeable Amounts, on the basis of fraud and defalcation while acting in a fiduciary capacity, embezzlement and larceny.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

89. Defendants' above described acts constitute willful acts.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

90. Defendants' above described acts constitute malicious acts.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

91. Defendants' above described acts caused willful injury to Plaintiff.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

92. Defendants' above described acts caused malicious injury to Plaintiff.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

93. Defendants' above described acts constituted willful injury to Plaintiff's property.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

94. Defendants' above described acts caused malicious injury to Plaintiff's property.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

95. The foregoing actions preclude a discharge of the Non-Dischargeable Amounts on the basis of willful and malicious injury to Plaintiff and to Plaintiff's property.
**Response:** Denied for the reason that this is a legal conclusion which defendant disputes.

# Interrogatories

1. Identify all Persons who assisted in preparing and compiling responses to these Discovery Requests.
**Response**: Subject to and without waiving attorney client privilege, Defendants responds: Me (Melinda), and my attorneys of record.

2. To the extent any complete or partial denial of any of the Requests to Admit were stated, provide a complete explanation for the reasons for each complete or partial denial and Identify each Document related to or touching upon such denial.
**Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents and written responses to this interrogatory; however, Melinda needs more time, and will provide answers and/or produce documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

3. Identify all Communications and Documents related to the transactions between Borrowers and Plaintiff.
**Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents and written responses to this interrogatory; however, Melinda needs more time, and will provide answers and/or produce documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

4. Identify all Persons who may testify at the time of trial.
**Response**: Defendants have not yet determined who will be called to testify at time of trial; however, Defendants currently believe that the following people may be called to testify:
   1. Defendant Joseph
   2. Defendant Melinda
   3. An Indiana attorney or other expert on Indiana law
   4. A jewelry appraiser
   5. Any and all persons with knowledge of facts relevant to the instant proceeding.

5. Identify all expert witnesses you intend to call at the time of trial.
**Response**: Defendants have not yet determined what experts will be called to testify at time of trial; however, Defendants currently believe that the following experts may be called to testify:
   1. An Indiana attorney or other expert on Indiana law
   2. A jewelry appraiser

### Requests for Production of Documents

1. Produce all Documents referenced in or referred to, in developing Your responses to the Requests to For Admissions and Interrogatories.
   **Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents; however, Melinda needs more time, and will produce those documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

2. Produce all Documents sent by any of Borrowers to Plaintiff.
   **Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents; however, Melinda needs more time, and will produce those documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

3. Produce all Documents related to the uses of the Funds.
   **Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents; however, Melinda needs more time, and will produce those documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

4. Produce all of the Property identified in Exhibit A to the Note.
   **Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents; however, Melinda needs more time, and will produce those documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

5. Produce all Documents not covered by the foregoing Requests for Production of
   **Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents; however, Melinda needs more time, and will produce those documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

6. Documents upon which You intend to rely or introduce at the time of trial.
   **Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents; however, Melinda needs more time, and will produce those documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

7. Produce all Documents between any of Borrowers and Susan Lynch related to the transactions discussed in the Complaint in this action.
   **Response:** Melinda, on advice of counsel, assert her Fifth Amendment privilege. Subject to and without waiving that privilege, Melinda states affirmatively that she is working to compile responsive documents; however, Melinda needs more time, and will produce those documents that she deems not subject to the Fifth Amendment, attorney/client, or work-produce privilege, as soon as possible.

END OF RESPONSES

## Verification of Responses

I, Melinda J. Adducci, first being duly sworn, depose and state as follows: I have answered the foregoing Requests for Admission and Interrogatories truthfully and accurately to the best of my knowledge, information, and belief, and I have responded to the requests for the Production of Documents, to the best of my ability.

Signed: /s/ Melinda J. Adducci
Melinda J. Adducci

Date: July 17, 2020

END OF VERIFICATION

Respectfully submitted,
**JOHN R. FOLEY, P.C.**
*Counsel for Defendants*

Date: July 17, 2020

By: /s/ Patrick A. Foley
Patrick A. Foley, Esq. (P74323)
18572 W. Outer Drive
Dearborn, MI 48128
Phone: (313) 274-7377
Fax: (313) 274-5946
Email: pafoley@jrfpc.net

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION - DETROIT

**In the matter of:**
JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
    *Debtor(s)*

TEODOR GELOV,
    *Plaintiff,*
v.
JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
    *Defendant(s)*

Bankruptcy Petition No. 19-54531-pjs
Hon. Phillip J Shefferly
Chapter 7

Adv. Pro. No. 20-04172-pjs
Hon. Phillip J Shefferly

## PROOF OF SERVICE

Patrick A. Foley hereby certifies that on July 17, 2020 he did serve a copy of the foregoing <u>DEFENDANT MELINDA J. ADDUCCI'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS</u> upon the following parties via the Court's CM/ECF e-Filing system:

- Robert N. Bassel     bbassel@gmail.com, robertbassel@hotmail.com, ecfbassel@gmail.com
- Jay L. Welford     jwelford@jaffelaw.com

    Respectfully submitted,
    **JOHN R. FOLEY, P.C.**
    *Counsel for Defendants*

Date: July 17, 2020

By: /s/ Patrick A. Foley
Patrick A. Foley, Esq. (P74323)
18572 W. Outer Drive
Dearborn, MI 48128
Phone: (313) 274-7377
Fax: (313) 274-5946
Email: pafoley@jrfpc.net