# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Joseph G. DuMouchelle and Melinda
J. Adducci

          Debtors.

_____/

Teodor Gelov

          Plaintiff,

v.

Joseph G. DuMouchelle and Melinda
J. Adducci

          Defendants.

_____/

Chapter 7

Case No. 19-54531

Honorable Lisa Gretchko

Adversary Pro. No. 20-04172

---

## SECOND AMENDED COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF INDEBTEDNESS UNDER 11 U.S.C. § 523

Plaintiff Teodor Gelov ("Plaintiff"), by and through his attorneys, Taft Stettinius & Hollister, LLP, brings this Second Amended Complaint to Determine Nondischargeability of Indebtedness Under 11 U.S.C. § 523 (the "Complaint") against Joseph G. DuMouchelle ("Joseph") and Melinda J. Adducci ("Melinda") and in support thereof, states as follows:

**Preliminary Statement**

1.      This Complaint seeks a determination that certain debts owed to Plaintiff by Debtors are non-dischargeable in the above-captioned bankruptcy case pursuant to section 523 of title 11 of the United States Code (the "Bankruptcy Code").

**Jurisdiction**

2.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Plaintiff is an individual who conducts business in Hamilton County, Indiana.

6.      Joseph is an individual who previously conducted business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.

7.      Melinda is an individual who previously conducted business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.

8.      Joseph DuMouchelle Fine & Estate Jewellers, LLC ("DuMouchelle Jewellers") is a Michigan limited liability company which previously conducted business at 251 E. Merrill Street, Suite 236, Birmingham, Oakland County, Michigan.

9.     At all times relevant to these proceedings, Joseph and Melinda were the sole members of DuMouchelle Jewellers.

10.     At all times relevant to these proceedings, Joseph and Melinda were officers or held themselves out as being officers of DuMouchelle Jewellers.

11.     Joseph, Melinda, and DuMouchelle Jewellers shall be collectively referred to as "<u>Borrowers</u>" and Joseph and Melinda shall be referred to together as "<u>Debtors</u>."

## <u>General Allegations</u>

### The Note:  Overview, Events of Default and Defendants' Failure to Remit the "Repayment"

12.     On August 3, 2018, Plaintiff remitted to Borrowers the sum of One Million Eight Hundred Thousand and 00/100 Dollars ($1,800,000.00).

13.     Plaintiff's remittance was evidenced by a Note executed by each of the Borrowers. (**Exhibit 1**).

14.     On the same day Borrowers executed the Note, Borrowers directed that Plaintiff initiate a wire transfer, in the amount of One Million Eight Hundred Thousand and 00/100 Dollars ($1,800,000.00), to DuMouchelle Jewellers Chase Bank account.

15.     Plaintiff wired the $1,800,000.00 to the Chase Bank Account.

16.     The Note is governed by, construed under, and enforced pursuant to the laws of the State of Indiana, without reference to choice of laws principles.

17.     Pursuant to the Note, Borrowers promised to pay Plaintiff One Million Eight Hundred Thousand Dollars and Zero Cents ($1,800,000.00) (the "Funds"), along with a guaranteed rate of return of 20%, or Three Hundred Sixty Thousand Dollars and Zero Cents ($360,000.00) (the "Guaranteed Return").

18.     Pursuant to the terms of the Note, Borrowers were required to remit the Funds and the Guaranteed Return (collectively, the "Repayment") to Plaintiff, by February 28, 2019.

19.     Borrowers further agreed to pay Plaintiff "a late payment charge of 1 percent (1.0%) of the amount of any payment not paid within twenty (20) days after the date when due"—February 28, 2019 (the "Late Charge"). The Late Charge is equal to $21,600.00.

20.     The Note further states, in part, that if the "Note is not fully paid at maturity (including all additions and late payment charges . . .) . . . the Repayment shall earn interest, and shall be payable on demand, at the maximum rate allowed by law."

21.     Borrowers failed to remit the Repayment to Plaintiff.

22.     Under the Note, Borrowers "shall be responsible for all costs and expenses, including court costs and reasonable attorneys' fees (whether or not suit is filed, and if suit is filed, all those costs and expenses incurred in any primary and appellate proceedings), incurred by Note Holder as a result of any default by

4

[Borrowers] under the terms of this Note and in connection with the collection of this Note."

### The Note: Restrictions on Use and Title to the "Property"

23.     Pursuant to the Note, Borrowers agreed

. . . that the Funds shall be used solely for the purchase of those items of jewelry specifically identified in Exhibit A attached hereto and incorporated herein, as may be amended in writing and signed by both parties (the "Property"). The Funds shall be used for no other purpose and shall not be intermingled with any other monies or funds except for the express purpose of consummating a purchase of the Property. Once purchased the Property shall be in the name of one or more of the Borrowers, and no other entity shall have any ownership right in the Property until the Property is sold by Borrowers.

24.     The property listed in Exhibit A ("Exhibit A") to the Note consists of 16 items of jewelry ("the Property").

25.     All or some of the Property descriptions in Exhibit A were fabricated and/or did not describe property that actually existed in the marketplace.

### The Note: Plaintiff's Right to Information, Including an Accounting

26.     Pursuant to the Note, Borrowers were required to "update Note Holder on the progress towards purchase of the Property, the terms and documentation of purchase of the Property, location of the Property and all details of eventual sale of the Property by Borrowers."

27.     Moreover, "Borrowers shall timely respond to information requests from Note Holder who is entitled to copies of all documents, correspondence and accounting regarding the Property."

### The Note: Plaintiff's Security Interest

28.     Pursuant to the Note, Borrowers represented

> that once the Property has been purchased no other entity shall have a security interest in the Property other than Note Holder. If available to Note Holder under applicable law and at Note Holder's sole discretion, Note Holder shall have the right to file, record, perfect or otherwise secure a security interest or lien on the Property. Borrowers shall cooperate and execute any required documentation to effect a recording of the same.

29.     Consistent with the foregoing provision, Plaintiff properly recorded UCC Financing Statements concerning the Property, which state, in part, that they cover "The items of jewelry identified on Exhibit A attached hereto, together with all proceeds, products and accounts related to the same." **(Exhibit 2**).

### Borrowers' Acquisition and Subsequent Sale of the Property

30.     On or about October 30, 2018, Plaintiff and Joseph had a telephone call regarding the alleged purchase of the Property identified in Exhibit A to the Note.

31.     During the telephone call, Joseph falsely stated that he had purchased each item of Property identified in Exhibit A to the Note.

32.     Following that telephone call, in an email dated October 31, 2018, Joseph sent to Plaintiff "the first group of photos", which were represented to be

seven of the items identified in Exhibit A to the Note that had been falsely stated to have been purchased (the "October 31 Email") **(Exhibit 3)**.

33. In the October 31 Email, Joseph wrote, in part, that he "will send the balance [of the images] as they come in. I will also follow up with you early next week to go over the details of the auction."

34. In November 2018, Plaintiff and Joseph again spoke by telephone concerning the allegedly upcoming auction of the Property.

35. In an email dated November 21, 2018 (the "November 21 Email"), Joseph wrote the following to Plaintiff:

> Hi Ted,
>
> It was great speaking with you this week. Per our call I will follow up with you later next week as we get closer to the auction date. I attached the info for the larger 77ct vivid yellow diamond and flawless pink diamond that I mentioned. They're so rare and we're hoping to have them for the December auction too.
>
> Take care. I will speak with you later next week.
>
> Happy Thanksgiving.
>
> Sincerely,
>
> Joe

**(Exhibit 4)**.

36. Two "Joseph DuMouchelle November 2018 PROPOSAL[S]" were attached to the November 21 Email. Debtors are in possession of the "November 2018 PROPOSAL[S]".

37. Subsequently, Joseph falsely stated to Plaintiff, including through written correspondence dated December 21, 2018, that 15 items of the Property had sold at auction in or around December 2018, with the purchase price and sale price of each specified, totaling almost $6,000,000 in sale proceeds **(Exhibit 5)**.

38. On or about March 2, 2019, Joseph texted Plaintiff a falsified screenshot of a Bank of America account wherein the sale proceeds of the auctioned Property were purportedly deposited **(Exhibit 6)**.

39. Joseph further falsely advised Plaintiff that pending an accounting, remittance of the Repayment would be made to Plaintiff.

40. Borrowers failed to remit any portion of the Repayment to Plaintiff due under the Note.

## Plaintiff's Demand Upon and Notice to Borrowers

41. The Note states, in part, that Borrowers "waive notice of acceptance of this Note, notice of the occurrence of any default hereunder or under any instrument securing this Note and presentment, demand, protest, . . . and notices of any and all action at any time taken or omitted by the Note Holder in connection with this Note or any instrument securing this Note."

4893-5060-3348.v1

42. Nevertheless, on or about March 15, 2019, Plaintiff, through counsel, provided Borrowers with notice of default under the Note, demand for immediate remittance of the Repayment, demand for the delivery of any unsold Property, and a demand for an accounting of the proceeds from the sale of the auctioned Property (the "Demand and Notice") **(Exhibit 7)**.

43. Borrowers failed to respond to the Demand and Notice, much less comply with the demands made therein.

### Misrepresentations Regarding the Property Sale Proceeds

44. In a remarkable phone call on March 7, 2019, between Plaintiff and Debtors, Debtors reaffirmed that all of the Property had been sold and all of the proceeds had been collected, but that banking policies precluded the transfer of funds to Plaintiff.

45. Most of this conversation was led by Melinda.

46. In fact, no Property had ever been purchased with the proceeds of the Note and no Property had otherwise been acquired, no Property had been sold at auction and no proceeds of Property sales, in fact, had been collected.

47. The "blame the banks" discussion was a complete fabrication of the Debtors.

## The Send Money-Confirmation

48.     Plaintiff initiated suit against Borrowers in the Oakland County Circuit Court, Case No. 2019-172619-CK, on March 19, 2019 (the "Oakland County Action").

49.     In the Oakland County Action, Plaintiff sought judgment against Borrowers under the Note, as well as possession of the Property.

50.     Also in the Oakland County Action, on March 19, 2019, Plaintiff filed a Verified Motion for Possession Pending Final Judgment ("Verified Motion") related to the Property and any proceeds realized from its sale.

51.     On April 10, 2019, counsel for Borrowers appeared before the Court for a hearing on the Verified Motion, wherein they defended on the basis that $600,000.00 of Property proceeds would be immediately wired to counsel for Borrowers' counsel's client trust account.

52.     Based on this representation, the Court's ruling on the Verified Motion was memorialized in its April 11, 2019 *Order Regarding: (1) Plaintiff's Verified Motion for Possession Pending Final Judgment, and (2) the Court's Order to Appear and Answer Verified Motion* (the "Wire Transfer Order") **(Exhibit 8)** which, among other things, stated:

> Defendants shall wire all monies—approximately $600,000.00—currently on deposit in the Wells Fargo account to the Butzel Long PC Client Trust Account (the "Wire Transfer") by Friday, April 12, 2019 at 5:00 pm

10

EDT (the "Appointed Time"). If, for any reason, the Wire Transfer is not completed by the Appointed time (sic), Defendants shall provide documentation to the Court and to Plaintiff detailing the reasons(s) why.

53.     When the $600,000.00 wire transfer was not made by Friday, April 12, 2019, Plaintiff filed a *Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Failing to Comply with the Court's April 11, 2019 Order* ("Show Cause Motion").

54.     On April 24, 2019, the Court held a hearing on, among other things, Plaintiff's Show Cause Motion.

55.     Just prior to going on the record, counsel for Borrowers presented counsel for Plaintiff and the Court with a document entitled "Send Money-Confirmation," which had been provided to Borrowers' counsel by Debtors (the "Send Money-Confirmation") **(Exhibit 9)**.

56.     The "Send Money-Confirmation" was a fraudulent document on its face.

57.     Pursuant to the Send Money-Confirmation, April 24, 2019 was the "Expected Delivery Date" for the wire. This date was inconsistent with the wire transfer confirmation date of "4/19/19," five days prior.

58.     The "Checking Account" number on the face of the "Send Money-Confirmation" consisted of six Xs, the available balance was completely absent, the "Delivery Speed" was inexplicably identified as "Standard" (and not something like

11

"Expedited," even though the Wire Transfer was due by April 12), the "Confirmation Number" was inexplicably blacked out, and there was a separate, redacted item, which was wholly unidentified.

59.    Based on the fraudulent "Send Money-Confirmation", the Court entered an order dated April 25, 2019, entitled *Order Regarding: (1) Plaintiff's Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Failing to Comply With the Court's April 11 2019 Order, and (2) Plaintiff's Motion to Shorten Time for Defendants to Respond to Discovery* (the "Sanctions Order") **(Exhibit 10)**.

60.    In relevant part, the Sanctions Order states: "2. Pursuant to the [Wire Transfer Order], the wire transfer of $600,000.00 from the Wells Fargo account to the Butzel Long PC ('Butzel') Client Trust Account (the 'Wire Transfer') must be received by Butzel by midnight, April 24, 2019", and "3. If the Wire Transfer is not received by Butzel by midnight, April 24, 2019, Defendants shall pay $10,000.00 a day, including weekends and holidays, into the Butzel Client Trust Account until the Wire Transfer is received by Butzel."

61.    Debtors never complied with the Sanctions Order including completing the Wire Transfer or making payment of the $10,000 per day sanction (the "$10,000 Per Day Sanction").

4893-5060-3348.v1

62. The Wells Fargo account to which the Send Money-Confirmation related, was opened with $100.00 of cash on December 19, 2018 **(Exhibit 11).**

63. During the month of April 2019, the month of the alleged Send Money-Confirmation, the account ranged from a zero balance to a balance of negative one cent, with no deposits and no withdrawals during that month:

| Activity summary | |
|---|---|
| Beginning balance on 4/1 | $0.00 |
| Deposits/Credits | 0.01 |
| Withdrawals/Debits | - 0.01 |
| **Ending balance on 4/30** | **$0.00** |

Account number: REDA▮046

**JOSEPH DUMOUCHELLE FINE & ESTATE JEWELLERS, LLC.**

*Florida account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 063107513

For Wire Transfers use
Routing Number (RTN): 121000248

64. The "Send Money-Confirmation" was fraudulent.

65. Borrowers' on-the-record agreement to wire the $600,000.00 was a fraud.

66. Borrowers' presentation of the Send Money-Confirmation to the Court was a fraud on the Court.

## Judgment and Plaintiff's Proof of Claim

67. Plaintiff obtained a judgment against Debtors pursuant to Plaintiff's *Motion for Partial Summary Judgment* on November 6, 2019. The Judgment was for $2,862,715.54, which included the Funds of $1,800,000.00, the Guaranteed Return of $360,000.00, the Late Charge of $21,600.00, contractual interest through

September 15, 2019 of $409,584.53 and costs and attorneys' fees through August 31, 2019 of $271,961.06 (the "Judgment Amount").

68.     Plaintiff filed a Proof of Claim, Claim Number 7-1 in Debtors' bankruptcy case on November 25, 2019, in the Judgment Amount, which amount was exclusive of interest from and after September 15, 2019, costs and attorneys' fees after August 31, 2019 and the $10,000 Per Day Sanction (collectively the "Non-Dischargeable Amounts").

69.     By this action, Plaintiff is seeking a judgment determining all of the Non-Dischargeable Amounts to be non-dischargeable.

### The Criminal Action

70.     On June 16, 2020, a Criminal Information was filed against Joseph (the "Information") in the United States District Court for the Eastern District of Michigan, Case No. 2:20-cr-20245 (the "Criminal Proceeding") **(Exhibit 12)**.

71.     The Information described fraudulent transactions involving third parties who the Debtors defrauded by means substantially similar to the means by which the Debtors defrauded Plaintiff.

72.     On September 14, 2020 pursuant to a Rule 11 Plea Agreement, Plaintiff entered a plea of guilty as to the Count I of the Information **(Exhibit 13)**.

73.     At the June 22, 2022 Sentencing Evidentiary Hearing, Joseph admitted that Plaintiff was a victim and agreed to restitution damages as to Plaintiff in the

amount of $1,800,000.00. **(Exhibit 14, Page 6**, by Defendant's counsel, Mr. Gleeson: "Ted Gelov, 1.8 million dollars should be calculated as loss.")

74.     Thereafter, the Opinion and Order Regarding the Amount of Loss and Restitution dated for July 27, 2022 (the "<u>Restitution Order</u>") entered in the Criminal Proceeding, the court held that Joseph "cheated investors and consignors out of a staggering sum of money and jewelry." **(Exhibit 15, Page 2)**.

75.     The Restitution Order awarded the stipulated loss amount of $1,800,000.00 attributed to Plaintiff's injuries **(Exhibit 15, Page 2** and **17)**.

76.     On July 28, 2020 the court issued its Judgment in the Criminal Proceeding consistent with the Restitution Order and Joseph was sentenced to 151 months of incarceration **(Exhibit 16)**.

## Count I
## <u>False Pretenses, False Representations and Actual Fraud</u>

77.     Plaintiff incorporates the provisions of paragraphs 1 through 76 above as if specifically set forth herein.

78.     Debtors induced Plaintiff to enter into the Note under false pretenses.

79.     Debtors had no present or future intent, at the time of entering into the Note, of performing their obligations thereunder.

80.     Debtors induced Plaintiff to advance the Funds under false pretenses.

81.     Debtors had no present or future intent, at the time of entering into the Note, of making repayment of the Funds.

82.     Debtors falsely represented in the Note that the Funds would be utilized to purchase the Property.

83.     The property descriptions were either fabricated and/or did not describe any actual assets that existed in the marketplace.

84.     Debtors had no present or future intent, at the time of entering into the Note, of purchasing the Property.

85.     Debtors falsely represented that the Property had been purchased with the Funds, including sending purported photos of items of Property purchased.

86.     Debtors falsely represented that additional photos of items of Property purchased would be forwarded.

87.     Debtors falsely represented that the Property had been scheduled for auction.

88.     Debtors falsely represented that an auction of the Property had, in fact, been held.

89.     Debtors falsely represented that all of the Property had been sold at the auction.

90.     Debtors falsely represented that proceeds from the sale of the Property had been received.

91.     Debtors falsely represented that the remaining proceeds from the sale

of the Property were in the process of being collected from the purchasers.

92.     Debtors falsely set forth, in an email, a listing of the items sold at auction and the actual dollar amounts received for each item at auction.

93.     Debtors falsely represented that pending an accounting, remittance of the Repayment would be made to Plaintiff.

94.     Debtors falsely represented that the Repayment had been sent by wire transfer.

95.     Debtors falsely represented to Plaintiff and the Oakland County Circuit Court Judge that $600,000.00 of the Repayment would be wired to Borrowers' counsel's client trust account.

96.     Debtors falsely represented to Plaintiff and the Oakland County Circuit Court Judge that a wire transfer had been initiated in the amount of $600,000.00 to Borrowers' counsel's client trust account.

97.     Debtors fabricated a false Send Wire-Confirmation which falsely represented that a $600,000.00 wire transfer to Borrower's counsel had been initiated.

98.     Debtors falsely represented that there was $600,000.00 in their bank account to support the $600,000.00 Send Wire-Transfer when, in fact, the account had a zero balance at the time.

99.     The foregoing actions preclude a discharge of the Non-Dischargeable

Amounts pursuant to 11 U.S.C. §523(a)(2)(A) on the basis that per the above described facts, the funds advanced were money, property, services, or an extension, renewal or refinancing of credit obtained by false pretenses, false representations, and actual fraud, other than statements regarding Debtors' financial position.

100.   The foregoing actions preclude a discharge of the Non-Dischargeable Amounts pursuant to 11 U.S.C. §523(a)(2)(B) on the basis that the underlying Note was executed and the Funds advanced were money, property, services, or an extension, renewal or refinancing of credit obtained by use of a statements in writing that were materially false, respecting Debtors' financial condition, on which Plaintiff reasonably relied and that Debtors caused to be made and/or published with the intent to deceive Plaintiff and the Oakland County Circuit Court Judge.

## Count II
### Fraud or Defalcation While Acting in a
### <u>Fiduciary Capacity, Embezzlement and Larceny</u>

101.   Plaintiff incorporates the provisions of paragraphs 1 through 100 above as if specifically set forth herein.

102.   Under the terms of the Note, Debtors agreed to undertake certain fiduciary duties to Plaintiff, including using the Funds solely to purchase the Property, to sell the Property, to account for and return to Plaintiff the Repayment and to otherwise abide by the duties imposed upon them as fiduciaries under the terms of the Note.

4893-5060-3348.v1

103. Debtors breached each and every one of the fiduciary duties imposed on them under the terms of the Note, including, but not limited to, in failing to use the Funds to purchase any of the Property, in diverting the Funds for their own personal benefit and purpose, in failing to sell the Property, in commingling the Funds, in failing to account for and return to Plaintiff the Repayment and to otherwise abide by the duties imposed upon them as fiduciaries under the terms of the Note.

104. Debtors engaged in embezzlement and larceny, in taking the Funds and using them for purposes other than as specified under the terms of the Note and commingling the Funds, with a present and continuing intent to do so, in order to convert the same for their own personal benefit and purpose.

105. The foregoing actions preclude a discharge of the Non-Dischargeable Amounts pursuant to 11 U.S.C. §523(a)(2)(4) on the basis of fraud and defalcation while acting in a fiduciary capacity,

106. The foregoing actions preclude a discharge of the Non-Dischargeable Amounts pursuant to 11 U.S.C. §523(a)(2)(4) on the basis of embezzlement and larceny.

**Count III**
**Willful and Malicious Injury to Plaintiff and**
**to Plaintiff's Property**

107. Plaintiff incorporates the provisions of paragraphs 1 through 106 above

4893-5060-3348.v1

as if specifically set forth herein.

108. The Debtors willfully and maliciously falsified the Property descriptions included in the Security Agreement.

109. The Debtors willfully and maliciously diverted the Funds to their own benefit and purpose and willfully and maliciously failed to use the Funds as promised and agreed upon in the Note and Security Agreement.

110. The Debtors willfully and maliciously commingled the Funds and failed to account for and return the Repayment to Plaintiff.

111. The Debtors' foregoing actions caused willful and malicious injury to Plaintiff and Plaintiff's property.

112. The foregoing actions preclude a discharge of the Non-Dischargeable Amounts, on the basis of willful and malicious injury to Plaintiff and to Plaintiff's property.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: (i) determining that the Non-Dischargeable Amounts, be deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(6) of the Bankruptcy Code, and (ii) grant Plaintiff all other relief that it deems appropriate.

## Count IV
## Melinda's Vicarious Liability under 11 §§523(a)(2), (4), (6) and (13)

113. Plaintiff incorporates the provisions of paragraphs 1 through 112 above, as if specifically set forth herein.

4893-5060-3348.v1

114.    Melinda knew or should have known or acted with reckless disregard for the fact that the above-described acts of Joseph and/or DuMouchelle Jewellers were fraudulent and criminal.

115.    Melinda deliberately participated in defrauding Plaintiff, knew or should have known or acted with reckless disregard for the truth when she signed the Note containing the descriptions of jewelry items that were fabricated and/or did not exist in the marketplace.

116.    Melinda deliberately participated in defrauding Plaintiff, knew or should have known or acted with reckless disregard for the truth when she colluded with Joseph to borrow the Funds, executed the Note and promised to use the Funds to purchase the Property that neither she nor Joseph ever purchased.

117.    Melinda deliberately participated in defrauding Plaintiff, knew or should have known or acted with reckless disregard for the truth when she led and participated in the March 7, 2019 phone call where she and Joseph each reaffirmed to Plaintiff that all of the Property, which neither she nor Joseph ever purchased, had been sold and all of the proceeds had been collected, and she and Joseph falsely represented that banking policies precluded the transfer of funds to Plaintiff.

118.    Melinda deliberately defrauded Plaintiff, knew or should have known or acted with reckless disregard for the truth when during the March 7, 2019 phone

call with Plaintiff, she participated in falsely blaming the banks for the missing funds for the Property that neither she nor Joseph ever purchased with the Funds.

119. Melinda deliberately defrauded the Plaintiff, acted with reckless disregard for the truth or knew or should have known that she falsely represented to Plaintiff and the Oakland County Circuit Court Judge that $600,000.00 of the Repayment would be wired to Borrowers' counsel's client trust account.

120. Melinda deliberately defrauded the Plaintiff, acted with reckless disregard for the truth or knew or should have known that she falsely represented to Plaintiff and the Oakland County Circuit Court Judge that a wire transfer had been initiated in the amount of $600,000.00 to Borrowers' counsel's client trust account.

121. Melinda deliberately defrauded the Plaintiff, acted with reckless disregard for the truth or knew or should have known that she and/or Joseph fabricated a false Send Wire-Confirmation which falsely represented that a $600,000.00 wire transfer to Borrower's counsel had been initiated.

122. Melinda deliberately defrauded the Plaintiff, acted with reckless disregard for the truth or knew or should have known that she and/or Joseph falsely represented that there was $600,000.00 in their bank account to support the $600,000.00 Send Wire-Transfer from an account that had a zero balance at the time that misrepresentation was made to the Plaintiff and Oakland County Circuit Court.

123. Melinda deliberately defrauded the Plaintiff, acted with reckless disregard for the truth or knew or should have known that she and Joseph both provided their counsel a forged Send Money-Confirmation just prior to the Oakland County Circuit Court hearing on the Show Cause Motion.

124. Melinda deliberately defrauded the Plaintiff, acted with reckless disregard for the truth or knew or should have known that her conduct was fraudulent and deceptive when she never complied with the Sanctions Order which included the Wire Transfer requirement and failed to make payment of the $10,000 Per Day Sanction.

125. As to Melinda, the foregoing actions vicariously preclude a discharge of the Non-Dischargeable Amounts pursuant to 11 U.S.C. §§523(a)(2), (4), (6) and (13).

126. As to Melinda, the foregoing actions vicariously preclude a discharge of the Non-Dischargeable Amounts pursuant to 11 U.S.C. §523(a)(2)(A), on the basis that per the above described facts, Melinda acted with reckless disregard for the truth or knew or should have known that the funds advanced and the extensions granted were money, property, services, or an extension, renewal or refinancing of credit obtained by false pretenses, false representations, and actual fraud, other than statements regarding Debtors' financial position.

127. As to Melinda, the foregoing actions vicariously preclude a discharge of the Non-Dischargeable Amounts pursuant to 11 U.S.C. §523(a)(2)(B), on the basis that per the above described facts, Melinda acted with reckless disregard for the truth or knew or should have known the funds advanced were money, property, services, or an extension, renewal or refinancing of credit obtained by use of a writing respecting Debtors' financial condition, that was materially false, upon which Plaintiff relied and that she and/or Joseph caused to be made and/or published with the intent to deceive Plaintiff.

128. As to Melinda, the foregoing actions vicariously preclude a discharge of the Non-Dischargeable Amounts pursuant to 11 U.S.C. §523(a)(4), where Melinda acted with reckless disregard for the truth or knew or should have known that she and/or Joseph were engaging and had engaged in fraud and defalcation while acting in a fiduciary capacity.

129. As to Melinda, the foregoing actions vicariously preclude a discharge of the Non-Dischargeable Amounts pursuant to 11 U.S.C. §523(a)(4), where Melinda acted with reckless disregard for the truth or knew or should have known that she and/or Joseph were engaging and had engaged in embezzlement and larceny.

130. As to Melinda, the foregoing actions vicariously preclude a discharge of the Non-Dischargeable Amounts 11 U.S.C. §523(a)(6) where Melinda acted with reckless disregard for the truth or knew or should have known that she and/or Joseph

were engaging in and had engaged in willful and malicious injury to Plaintiff and to Plaintiff's property.

131. As to Melinda, the foregoing actions vicariously preclude a discharge of $1,800,000.00 as a matter of law pursuant to 11 U.S.C. §523(a)(13) where Melinda acted with reckless disregard for the truth or knew or should have known that she and Joseph engaged in criminally fraudulent conduct which has become subject to a criminal conviction of Joseph and a restitution liability determination in favor of Plaintiff, in the amount of $1,800,000.00.

WHEREFORE Plaintiff respectfully requests that the Court enter an Order: (i) finding the Non-Dischargeable Amounts are nondischargeable as to each of Debtors and vicariously nondischargeable as to Melinda, under section 523 of the Code and (ii) grant Plaintiff all other relief that it deems appropriate.

Respectfully submitted by:

**TAFT STETTINIUS & HOLLISTER, LLP**

By: /s/ Jay L. Welford
Jay L. Welford (P34471)
Kimberly Ross Clayson (P69804)
Counsel to Plaintiff
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
Phone: (248) 351-3000
jwelford@taftlaw.com
Dated: March 6, 2023          kclayson@taftlaw.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

Joseph G. DuMouchelle and Melinda
J. Adducci

          Debtors.

_____/

Teodor Gelov

          Plaintiff,

v.

Joseph G. DuMouchelle and Melinda
J. Adducci

          Defendants.

_____/

Chapter 7

Case No. 19-54531

Honorable Lisa Gretchko

Adversary Pro. No. 20-04172

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2023, my office caused to be served a copy
of the *Second Amended Complaint To Determine Nondischargeability Of
Indebtedness Under 11 U.S.C. § 523* by ECF notification to all parties who have
filed an appearance in the above-captioned adversary proceeding.

Respectfully submitted by:

**TAFT STETTINIUS & HOLLISTER, LLP**

By: /s/ Jay L. Welford
Jay L. Welford (P34471)
Kimberly Ross Clayson (P69804)
Counsel to Plaintiff
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
Phone: (248) 351-3000
jwelford@taftlaw.com
Dated: March 6, 2023        kclayson@taftlaw.com