# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**In the matter of:**

JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,

*Debtor(s)*

Bankruptcy Petition No. 19-54531-lsg
Hon. Lisa S. Gretchko
Chapter 7

---

TEODOR GELOV,

*Plaintiff,*

v.

JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,

*Defendant(s)*

Adv. Pro. No. 20-04172-lsg
Hon. Lisa S. Gretchko

---

### DEFENDANT'S RESPONSE & OBJECTION TO PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

**NOW COMES** the Defendants, MELINDA J. ADDUCCI ("Lindy") and

JOSEPH G. DUMOUCHELLE ("Joe") (collectively "Defendants"), by and through

their counsel, JOHN R. FOLEY, P.C., who, in response and objection to Plaintiff's

*Motion for Discovery Sanctions,* ("motion") hereby states as follows:

### INTRODUCTION

Based on the facts, Defendant(s)' counsel would say that he is at a loss for

why this motion has been filed; however, as explained below, the reason that

Plaintiff, Mr. Gelov, rushed to file this motion becomes apparent after careful

analysis of the history leading up to its filing. That is not to say the motion has any

merit. It does not. For the reasons set forth herein, the motion should be denied.

## RELEVANT HISTORY

On 2/14/2023, Plaintiff issued discovery requests to Defendants [ECF No. 126]. At issue in this motion are two (2) interrogatories and (1) request to produce, which are as follows:

- Int. No. 8 requests, "Identify the current location of all computers and servers used by Defendants or their Affiliates during the years 2016-2022 and if no longer in Defendants' or their Affiliates' possession, the disposition made of each, the date of disposition and the method of disposition."

  - In response to Int. No. 8, Lindy simply objected. However, Int. No. 8 is answered by the written response to Request to Produce No. 7, discussed below, and her Motion for Protective Order.

- Int. No. 9 requests, "Provide all valid usernames and corresponding passwords to all cloud-based systems used by Defendants or their Affiliates during the years 2016-2022, including QuickBooks, RMC, RFC, and ACT."

  - In response to Int. No. 9, Lindy provided, following her objections, a substantive response: "*I do not have the passwords for any 'cloud-based systems used by Defendants or their Affiliates during the years 2016-2019, including QuickBooks, RMC, RFC, and ACT.' No such 'cloud based systems' such as 'QuickBooks, RMC, RFC, and ACT' were used by me after Joe's arrest in 2019.*"

- Request to Produce No. 7. request, "Produce all computers and computer servers utilized or accessed by either of Defendants or their employees during the period 2016-2022, including those owned personally and those of DuMouchelle Jewellers."

  o In response to Request to Produce No. 7, following her objections, Lindy responded substantively, stating: "*Any and all computers relevant to the time period of the facts in Plaintiff's Complaint, which ends when Plaintiff sued in State Court on March 2019, are in the possession of either the government, the business case trustee, or the personal bankruptcy chapter 7 trustee.*"

On 03/16/23, Lindy filed her responses, [ECF No. 133], which are referenced in part, above.

At the same time, on 03/16/23, Lindy filed a *Motion for Protective Order* [ECF No. 132] in which she disclosed that she had possession of 2 laptops, and argued that interrogatories 8, 9, and 14, and request to produce 7, should be quashed or limited by this Court.

The parties then stipulated <u>three (3) times</u> to extend Plaintiff's deadline to respond to that motion, during which time Plaintiff filed an Amended Complaint in this case, and a *Motion for Summary Judgment* against Joe.

Finally, on 06/07/2023, Plaintiff filed their objection to the motion for a

protective order. [ECF No. 149], which caused a hearing to be schedule for 6/23/2023.

**In other words, Plaintiff was in no hurry for three (3) months from March 16 until June 23, to get these laptops or this information.**

During that 3-month delay, on May 2, 2023, in the adversary proceeding (AP) filed by Thomas Ritter ("Ritter") against the same defendants (AP#: 20-04381-lsg), Ritter (as plaintiff in that case) filed a motion for summary judgment against Joe. Also during that time, on May 15, 2023, Plaintiff in this case filed a similar motion for summary judgment against Joe.

In response to both motions in both cases, Joe argued that the case must instead be dismissed against Joe, because he had already waived his discharge under 11 USC 727, and subject matter jurisdiction was lacking, since the issue was moot.

On 06/23/2023, the parties appeared for hearing on the summary judgment motion against Joe in the Ritter AP, and the Court took the matter under advisement.

Also on 06/23/2023, the parties had hearing on the motion for a protective order in this (the Gelov) AP case.

On 06/30/2023, in this (the Gelov) case, the parties entered a stipulation to adjourn hearing on a nearly identical motion filed by Plaintiff in this case, since, as the stipulation recognizes: the Ritter adversary proceeding "involves substantially similar legal issues and procedural posture as this Adversary Proceeding" and that

the same issues are in both cases, which are, "whether [plaintiffs] claims are rendered moot following a debtor's waiver of discharge under 11 U.S.C. §727" and that, "[t]he outcome of the mootness question in Ritter case may have a similar effect on the outcome of this Adversary Proceeding."

On 07/05/23, at ECF No. 156, this Court entered its order on Defendants' motion for a protective order, which stated, in relevant part: "NOW THEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED as to Interrogatory No. 8 and 9 and Request to Produce No. 7 of Plaintiff's Discovery Request ("Discovery Request," ECF No. No. 126) and Defendants shall comply in all respects with the Parties Report of 26(f) Conference (ECF No. No. 112) in response to Plaintiff's Discovery Request."

On that same day, 07/05/2023 the stipulated order adjourning hearing on the summary disposition motion in this case (Gelov) was entered. ECF No. 157.

On 07/17/2023 the Court issued its ruling in Ritter case, on the summary judgment motion, and dismissed Joe as a defendant from the case. ECF No. Nos. 115 through 118.

Rather than head the clear and common sense ruling of this Court in the Ritter case, and simply stipulate to dismiss Joe from this (the Gelov) case, Plaintiff insisted on going to hearing before this Court on their motion.

Admittedly on 07/11/2023, Plaintiff's counsel sent an informal email asking

for laptop information to begin the e-discovery process, and that request was duly communicated to Lindy.

However, it should be noted that 2 days later, in both the Ritter AP and this (the Gelov) AP, the parties stipulated to extend all discovery, with a discovery close date of <u>November 20, 2023</u>, three (3) months away.

Further, during that same time, the parties in this case were involved in settlement discussion, to which the "laptop issue" took a secondary position.

Ultimately, those communications broke down, and on 07/24/2023, [ECF No. 163], counsel for Defendants filed a "Motion to Withdraw as Attorney", citing a breakdown of the attorney client relationship.

Despite the filing of that motion to withdraw, Defendants' review the reply brief in support of summary disposition motion [ECF No. 166, 07/31/2023], filed by Plaintiffs, pushing forward with their motion, and massively expanding their arguments, and still had to prepare for and appear and argue at the hearing on that motion on 08/04/2023.

Then, on Wednesday, 08/09/2023, almost immediately following that hearing on Friday 08/04/2023, with the matter of Joe's dismissal held under advisement by this Court, and Defendants' counsel awaiting hearing on his *Motion to Withdraw*, Plaintiff rushed to file this motion, now seeking a default judgment against <u>both</u> defendants.

## **OBJECTIONS**

Defendants object to this motion to the extent that Plaintiff, by this motion, continues to seek entry of a judgment against Joe, despite there being no jurisdiction to do so, as has already been briefed and argued to this Court, and already decided in the Ritter adversary case.

Defendants further object to this motion in its entirety as being premature, unjustified under the Court rules, and filed solely in an effort to drive up the costs of litigation to Defendants. In order to understand this, one must look at the procedural history leading to this motion.

First, it is clear from the foregoing timeline (articulated at length above) that this motion is an end-run on the Court's ruling in the Ritter AP (which is also applicable in this case), that Joe should be dismissed from this AP case. Plaintiff, by this motion, continues to seek entry of a judgment against Joe, despite there being no jurisdiction to do so, as has already been briefed and argued to this Court, and already decided in the Ritter adversary case.

**Second,** as cited in the "Relevant History" section, above, this motion revolves around three (3) discovery requests:

- Int. No. 8 - identify location of computers.

- Int. No. 9 - give passwords for cloud based systems.

- R.T.P. No. 7 - turn over computers.

In her initial responses, Lindy merely objected to Int. No. 8, however, she explained in response to R.T.P. No. 7 that she only has 2 laptops in her possession.

In her initial responses, Lindy made clear: "I do not have the passwords for any 'cloud-based systems used by Defendants or their Affiliates during the years 2016-2019, including QuickBooks, RMC, RFC, and ACT.' No such 'cloud based systems' such as 'QuickBooks, RMC, RFC, and ACT" were used by me after Joe's arrest in 2019."

And finally, in response to R.T.P. No. 7, Lindy made clear that she does not have the business server/computer, and that she merely has 2 laptops.

Importantly, the parties were not before the Court on a "motion to compel" filed by the Plaintiff. Rather, the Court's order [ECF 156], granted Defendants' motion for a protective order as to Interrogatory No. 14., denied as to Interrogatory No. 8 and 9 and Request to Produce No. 7., and the order went on to state, as the Court did say on the record, that, "*Defendants shall comply in all respects with the Parties Report of 26(f) Conference (ECF No. 112) in response to Plaintiff's Discovery Request.*"

There is nothing in the 26(F) Report with which Defendants have failed to comply. **Exhibit A.** This is <u>not</u> some sort of trick or game by Defendants or their counsel. Quite the reverse. Defendants understand that, as a result of the Court's ruling, Plaintiffs are now entitled to get non-privileged information from the 2

laptops held by Lindy.

Further, Defendants' counsel even theorizes/understands that, by reference to the "the 26(F) Report", Plaintiff likely means the fact that said Report states, "*Discovery of electronically stored information: ... (2) Pursuant to E.D. Mich. LBR 7026-4, the Model Order Relating to the Discovery of Electronically Stored Information approved by the District Court will apply*."

This Model Order, attached as **Exhibit B**, contains the following provisions (in relevant part) which are applicable here:

- **Principle 2.01 (Duty to Meet and Confer on Discovery and to Identify Disputes for Early Resolution)**
  - Prior to the initial status conference with the Court, counsel shall meet and discuss the application of the discovery process set forth in the Federal Rules of Civil Procedure and these Principles to their specific case.
    ...
  - Disputes regarding ESI that counsel for the parties are unable to resolve shall be presented to the Court at the initial status conference, Fed. R. Civ. P. 16(b) Scheduling Conference, or as soon as possible thereafter.
- **Principle 2.05 (Identification of Electronically Stored Information)**
  - (a) At the Rule 26(f) conference or as soon thereafter as possible, counsel or the parties shall discuss potential methodologies for identifying ESI for production.
- **Principle 2.06 (Production Format)**
  - (a) At the Rule 26(f) conference, counsel and the parties should make a good faith effort to agree on the format(s) for production of ESI (whether native or some other reasonably usable form). If counsel or the parties are unable to resolve a production format issue, then the issue should be raised promptly with the Court.

Defendants have not failed in any way to comply with these provisions. As

Plaintiff admits, Defendant's counsel met and conferred with Plaintiff's counsel on July 6, 2023. Respectfully, and without disparagement, Plaintiff's counsel misremembers[1] the results of that conference, when it is stated in the motion (Page 13) that, "*With respect to the 26(f) Report, on July 6, 2023 Plaintiff's and Defendants' respective counsel had a telephone conference to discuss e-discovery and to arrange for a third-party ESI discovery vendor. To begin that process, Plaintiff requested the year, make and model of Melinda's laptop computers. Through counsel, Defendants agreed and committed to production of the same the following week which was the week of July 10, 2023. Defendants did not produce the information on July 10, 2023.*"

In fact, the conversation contained much settlement discussion, and was left off with a nebulous agreement that Plaintiff's counsel would select an e-discovery provider, and run the name by Defendant's counsel for agreement, that Plaintiff would pay for the e-discovery, and a rough outline of the process by which the information is obtained from the computers by an e-discovery service provider, once such a provider was selected and agreed upon. In fact, it was generally agreed that there was no immediate rush on the matter of e-discovery, since the case might settle. This is supported by **Exhibit C**, in which Plaintiff's counsel states (July 6, 2023,

---

[1] What is written is what is meant. This is absolutely <u>not</u> a passive way of saying that any intentional misrepresentation was made by Plaintiff's counsel, as Defendant's counsel himself had to review his notes and the emails to remember exactly where the conversation was left off.

12:16pm, following the 11:00AM telephonic conference), "*I will be back in touch with directions for how we are going to proceed with e-discovery.*" Following that conference, on July 10, Plaintiff's counsel sent a follow-up email, not requesting computer information, but rather a response to the settlement offer. **Exhibit D.** Finally, on July 11, 2023, Plaintiff's counsel sent an informal email stating, "*We are working on designating a proposed neutral party e-discovery vendor. The intent is to try and collect data from a remote access but that will depend on the type of computer Melinda has. Can you verify the make, year, and model of her computer? A screenshot of the computer specs would be helpful. Can you also provide the e-mail domain and/or service provider for the DuMouchelle Jewellers emails as well as your clients' personal email accounts? (e.g. Google, Outlook, Network Solutions etc.)*" **Exhibit D.**

In other words, at the conference (which Defendant's counsel attended, in compliance with any interpretation of the Model Order's requirements), and in the context of pending settlement discussions, the parties agreed that Plaintiff would select and e-discovery provider, in no particular hurry, follow-up with Defendant's counsel, and hopefully the case would resolve before any of this needed to be done. Then, 5 days later, on July 11, 2023, Plaintiff requested, <u>for the first time</u>, the information about the laptops, in an email that also requested a response to the settlement offer, as well as consent to file the stipulation extending dates and

deadlines. (And a prompt response to the stipulation request was provided.)

On July 17, 2023, just 6 days later, Plaintiff sent a follow-up email requesting the information about the laptops, and threatening that a "motion to compel" would be filed. **Exhibit F**.

Three (3) weeks later, on August 9, 2023, without warning, without issuing formal discovery for the laptop information, without filing a motion to compel, and without obtaining and order for production, Plaintiff filed the instant *Motion for Sanctions.*

It took Defendant until August 18, 2023, to provide the requested laptop information. While that length of time is not desirable, it is not a violation of any order of this Court, and it is not a violation of the 26(F) Report, nor of the Model Order. There was no formal discovery request issued to Lindy for the year make and model of the laptops in her possession. There was no deadline to respond. Had Plaintiff issued such a request on July 11, (the first day the information was requested), or 6 days later on July 17, (when the first threat of a motion to compel was made), the responses would not have even been due as of the date this motion was filed, August 9, 2023.

Further, there was no motion to compel filed, and no order compelling Lindy to produce the information, and therefore, no violation of any Court order to do so. Rather, what amounts to Plaintiff's dissatisfaction with Lindy's timeline to obtain

information, resulted in not a motion to compel, but rather, a motion seeking default judgment against Lindy.

Fed.R.Civ.Pro 37(b)(2)(A)(vi) that a remedy for "For Not Obeying a Discovery Order" is, among other much less harsh options, "rendering a default judgment against the disobedient party[.]" This simply is not the case here.

For the foregoing reasons, the motion is premature and unjustified under the Court rules.

## SUBSTANTIVE RESPONSE

### Preliminary Statement

Plaintiff's motion relies entirely upon the brief, in which Plaintiff articulates the rules, laws, facts, and arguments, upon which Plaintiff relies. Therefore, while his is a response to the motion generally (including the brief), the focus of this response is actually upon the content contained in Plaintiff's brief.

### Response to Introduction

Plaintiff was not defrauded by Lindy. Lindy made no misrepresentations to Plaintiff.

Ironically, Plaintiff states that "Defendants' fraud is well documented in [two other cases]." This Court should take Plaintiff at his word, and thus, there is no need for further invasive discovery from Lindy, which Plaintiff knows will is a fishing expedition into her personal life, and done merely to disrupt her life, as she tried to

support herself, with her husband in jail.

Further, the Court should note that Plaintiff states that he was "the victim of the fraudulent misrepresentations made by … [Lindy.]" If this is the case, shouldn't Plaintiff already have those alleged statements? If he relied upon them, he must have them.

With respect to Plaintiff's statement (Page 11) that, "Defendants have also admitted that they conducted the business of DuMouchelle Jewellers with the use of computers and servers." This statement is misleading. Plaintiff knows full well, and it has been repeatedly discussed, and addressed in the pleadings in this case, that Lindy denies that she conducted the business of Joseph DuMouchelle Fine and Estate Jewellers, LLC, and/or that she did so on the company computers/servers.

## No Request for ESI Made

Plaintiff states in his motion (Page 11, near bottom), that, "Plaintiff also requested relevant ESI that may be contained on the Defendants' personal and business computers." This is not true. Rather, Plaintiff himself failed to abide the terms of the Model Rule, specific Principles 2.01, 2.05, and 2.06, by:

- Failing to, prior to the initial status conference, identify ESI issues in a preliminary meet and confer, so that such disputes could be resolved at the scheduling conference, or as soon thereafter as possible.

- Failing to meet and confer on the "potential methodologies for

identifying ESI for production."

- Failing to, in advance of filing their discovery requests, "make a good faith effort to agree on the format(s) for production of ESI"

Instead, Plaintiff simply unilaterally issued discovery requests, not engaging in the ESI process, and demanding that Defendants unilaterally turn over unfettered access to usernames and passwords that could contain privileged and protected information, AND, physically turn over the computers themselves.

In hindsight, Plaintiff's response to Defendant's Motion for Protective Order, which essentially amounted to an argument that Defendant had 'failed to properly engage in the ESI process', was extremely unfair. This issue was caused by Plaintiff's decision *not* to engage in that process, and in particular, *not* to request "ESI" (electronically stored information), but instead, to request physical turnover of Defendants' computers, and the usernames and passwords for any 'cloud accounts.'

Simply stated, no, Plaintiff has not requested "ESI", they instead requested physical production of computers, and disclosure of usernames and passwords, and now seek to blame Defendants for the problems that approach has caused.

### Defendants HAVE Responded to the Discovery Requests

At page 13 of the motion, Plaintiff claims, "Notwithstanding this Court's Discovery Order, Defendants have not responded to the Discovery Requests." This

is not true." The parties were not before ethe Court on a motion to compel. In fact, it was made clear at the hearing, and in the Court's order, that the Court expected the parties to engage in the ESI process from the Model Order. That, in fact, happened. Both attorneys met and conferred and agreed on the general terms by which information could be obtained from the 2 laptops in Lindy's possession. (The details are outlined further below.)

Then, Plaintiff decided that he needed information *about* the laptops. That was/is a new request. None of the discovery requests ask for that information. No formal discovery request was issued. Ultimately, despite that fact, Defendants were able to obtain the information and produce in about 4 weeks after the request was made. This motion was filed at the 3-week mark, before a formal response would even have been due.

## Defendants HAVE "complied with the 26(f) Report"

Plaintiff asserts that, "Despite the Discovery Order, Defendants have not complied with the 26(f) Report or responded to the Discovery Requests in any other manner." This is not true. For the reasons explained herein, Defendants have complied, and it is Plaintiffs that did not comply to begin with, and then sought, and seek from this Court, relief against Defendants.

## Court Rules Not Circumvented

Plaintiff is mistaken where he contents in his motion (Page 15) that, "In an

albeit unusual way, Defendants' Protective Order Motion short-circuited Plaintiff's need to file a motion to compel discovery and now, as a result of their Protective Order Motion and the resulting Discovery Order, Defendants have been ordered by the court to respond to Plaintiff's Discovery Requests and to comply with the Rule 26(f) Report." This is simply not the case.

As stated in the Relevant History section of this response, Lindy provided what information she had, disclosing the 2 laptops in her possession, and explaining that she does not have the cloud-based passwords from 2016-2019, and that she never used them after 2019, and that she does not have the business server/computer(s).

Rather, Plaintiff requested *new* information *about* the laptops, and was simply dissatisfied with how long it took Defendants to obtain the information.

Further, Plaintiff cites to no authority for the proposition that Plaintiff's new request for additional information did not have to be made via formal request (although Defendants ulimatley produced the information anyways), or that somehow this Court's order that the parties comply with the ESI requirements of the Model Rule, negates the requirement that Plaintiff first obtain an order compelling production of some information, *after* a formal request has been unanswered, before asking that the Court default the Defendants.

## Issue With Passwords Request

As Plaintiff states, Int. No. 9 requested that Defendants "Provide all valid usernames and corresponding passwords to all cloud based systems used by Defendants or their Affiliates during the years 2016-2022, including QuickBooks, RMC, RFC, and ACT."

As Lindy responded, she doesn't have this information. However, assuming that the scope is meant to be beyond 'QuickBooks, RMC, RFC, and ACT', and truly to extend to Lindy's or Joe's personal email, there are 2 issues with this request:

First, and importantly, it is not what the question calls for.

Second, Defendant's cannot possibly be sanctioned for failing to provide Plaintiff, directly, with any of the Username and Passwords for, as the very substance of the Model Rule, and the conference conducted by the attorneys, was:

1. That an e-discovery provider would be selected, who could then inventory the computers.

2. That Defendant's counsel would then receive a list (titles, but no substance) of the "stuff" thereon (presumably, files, documents, emails, etc.), and would have an opportunity to flag those that he believed to privileged;

3. That Plaintiff's counsel could then review and agree or disagree with that list, and Defendant's counsel's flags;

4. That any dispute about the same would go to this Court to be resolved;

5. That the information, while in the possession of the e-discovery provider is NOT produced to Plaintiff's counsel, until the list is settled, by agreement, or by this Court's order;

6. And finally, that the data will then be produced to Plaintiff's counsel (and Defendant's counsel).

## Conclusion

So, in summary, Defendants, through counsel, complied with the "26(F) Report" (ie: the Model Rule), and met and conferred with opposing counsel. Plaintiff then made an informal request for new/additional information about the laptops. It took a while to get a response. Four (4) weeks later, during which time the parties were having settlement discussions, extending the discovery dates out to late November, dealing with other motions and hearings, etc., and right after a hearing which could result in dismissal of Joe from this case, Plaintiff skipped the process of issuing a formal discovery request, skipped moving to compel disclosure of the information, and filed a motion seeking to default the defendants for "non compliance" with a an order that they complied with. And, making matters worse, this situation was created by Plaintiff's initial non-compliance with the very Model Rule that Plaintiff claims, incorrectly, that Defendant is violating.

**WHEREFORE**, Defendants respectfully requests this Honorable Court deny

the Plaintiff's motion.

<div style="margin-left: 40%;">

Respectfully Submitted,
**JOHN R. FOLEY, P.C.**
*Counsel for Defendants*

</div>

Date: August 23, 2023          By: /s/ Patrick A. Foley
                               Patrick A. Foley (P74323)
                               18572 W. Outer Drive
                               Dearborn, MI 48128
                               Phone: (313) 274-7377
                               Email: pafoley@jrfpc.net

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**In the matter of:**

JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
     *Debtor(s)*

Bankruptcy Petition No. 19-54531-lsg
Hon. Lisa S. Gretchko
Chapter 7

TEODOR GELOV,
     *Plaintiff,*
v.
JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
     *Defendant(s)*

Adv. Pro. No. 20-04172-lsg
Hon. Lisa S. Gretchko

## PROOF OF SERVICE

Patrick A. Foley hereby certifies that on August 23, 2023 he did serve a copy of the foregoing <u>Response and Objection</u> including all attachments and exhibits thereto, upon the following parties via the Court's CM/ECF No. e-Filing system:

- **Jay L. Welford**  jwelford@jaffelaw.com, tneddermeyer@jaffelaw.com
- **Kimberly Ross Clayson**  kclayson@taftlaw.com, ttorni@taftlaw.com

Respectfully Submitted,
**JOHN R. FOLEY, P.C.**
*Counsel for Defendants*

Date: August 23, 2023    By: <u>/s/ Patrick A. Foley</u>
           Patrick A. Foley (P74323)
           18572 W. Outer Drive
           Dearborn, MI 48128
           Phone: (313) 274-7377
           Email: pafoley@jrfpc.net

# Exhibit A

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

**IN THE MATTER OF:**

JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
*Debtor(s)*

TEODOR GELOV,
*Plaintiff,*

v.

JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
*Defendant(s)*

Bankruptcy Petition No. 19-54531
Hon. Lisa S. Gretchko
Chapter 7

Adv. Pro. No. 20-04172
Hon. Lisa S. Gretchko

### REPORT OF PARTIES' RULE 26(f) CONFERENCE

Pursuant to Fed. R. Bankr. P. 7026 and Fed. R. Civ. P. 26(f), a conference was held on August 31, 2022 and was participated in by:

Jay L. Welford (P34471) on behalf of Plaintiff
Patrick A. Foley (P74323) on behalf of Defendants

This is submitted as the required report of that conference.

(1)  Initial Disclosures required by Fed. R. Civ. P. 26(a)(1).

[X]  The parties will provide such by October 10, 2022; or

[  ]  The parties agree to provide the following at the times indicated:

(2)  Discovery Plan.  The parties jointly propose to the Court the following discovery plan:

(a)  Discovery will be needed on the following subjects: The allegations contained in Plaintiff's complaint and defenses asserted in the Defendants' answer and affirmative defenses.

(b)     All discovery commenced in time to be completed by May 22, 2023.

(c)     Interrogatories:

**The parties agree:**
Maximum of 25 interrogatories by Plaintiff and 25 interrogatories from the Defendants. Responses due 30 days after service, plus 3 days pursuant to Fed. R. Bankr. P. 9006(f) if service by U.S. Mail.

**Plaintiff Proposes:**
*Additional wording:* "This limitation does not apply to subparts."
**Defendants Propose:**
*Defendants disagree with Plaintiff, and believe the limitation should apply to subparts.*

(d)     Depositions:

**Plaintiff proposes:**
"There is no limitation on the number of depositions."

**Defendant proposes:**
"Maximum of 4 depositions by Plaintiff and 4 by Defendants."

(e)     Each deposition limited to maximum of 3 hours unless extended by agreement of parties.

(f)     Reports from retained experts under Rule 26(a)(2) due:
from Plaintiff by March 27, 2023
from Defendants by March 27, 2023

(g)     Supplementations under Rule 26(e) shall be timely submitted within 14 days of discovery of the additional materials or information being the cause of the need to supplement. In the event that a disclosure is made after the close of discovery, or without adequate time remaining in the discovery period for the non-supplementing party to adequately investigate the claim, the parties shall stipulate to a suitable adjournment/extension of dates and deadlines, not less than 30 days, in order to provide said non-supplementing adequate time to investigate the disclosure. The non-

supplementing party may file a motion if an agreement as to the extension/adjournment cannot be reached.

(h)  Each of these limitations may be extended by written stipulation of the parties or by Order of the Court.

(i)  Discovery of electronically stored information:

   (1)  This adversary proceeding **does** involve the discovery of electronically stored information.

   (2)  Pursuant to E.D. Mich. LBR 7026-4, the Model Order Relating to the Discovery of Electronically Stored Information approved by the District Court **will** apply.

(3)  <u>Other Agreed Upon Items</u>.

(a)  Plaintiff is granted leave through, and the deadline is January 22, 2023 to join additional parties and/or to amend the pleadings.

(b)  Defendants are granted leave through, and the deadline is January 22, 2023 to join additional parties and/or to amend the pleadings.

(c)  All potentially dispositive motions should be filed by June 23, 2023.

(d)  The proceeding should be ready for trial by August 18, 2023. The trial is expected to take approximately 2 trial days.

(e)  Jury Trial Matters.

   (i)  [ X ]  a jury trial was <u>not</u> timely demanded and <u>is</u> waived; or

       [   ]  a jury trial was timely demanded, but is waived; or

       [   ]  a jury trial was timely demanded but not waived.

   (ii)  [   ]  the parties consent to the Bankruptcy Court conducting the jury trial; or

[  ]   the parties do not at this time consent to the Bankruptcy Court conducting the jury trial.

(f)   The parties agree that:

[ X ]  This is a core proceeding; or

[  ]  This is a non-core proceeding otherwise related to the bankruptcy case.

(g)   [ X ]  The parties consent to the Bankruptcy Court entering a final order or judgment in this proceeding; or

[  ]  The parties do not consent to the Bankruptcy Court entering a final order or judgment in this proceeding.

(4)   <u>Other matters</u>.
     None.

(5)   <u>Matters not agreed upon or insufficiently addressed by the foregoing</u>.
     None.

Respectfully submitted,

**JAFFE, RAITT, HEUER & WEISS, P.C.**
*Counsel for Plaintiff*

By: /s/ Jay L. Welford
Jay L. Welford (P34471)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Phone: (248) 351-3000
Email: jwelford@jeaffelaw.com

Date: September 7, 2022

**JOHN R. FOLEY, P.C.**
*Counsel for Defendants*

By: /s/ Patrick A. Foley
Patrick A. Foley (P74323)
18572 W. Outer Drive
Dearborn, MI 48128
Phone: (313) 274-7377
Email: pafoley@jrfpc.net

Date: September 7, 2022

Exhibit B

# UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF MICHIGAN

### 505 THEODORE LEVIN UNITED STATES COURTHOUSE

231 W. LAFAYETTE BOULEVARD
DETROIT, MICHIGAN 48226
www.mied.uscourts.gov

**DAVID J. WEAVER**
COURT ADMINISTRATOR
313-234-5051
Fax 313-234-5399

DIVISIONAL OFFICES
ANN ARBOR
BAY CITY
FLINT
PORT HURON

September 20, 2013

Re:     Model Order Relating to the Discovery of Electronically Stored Information (ESI)
        Checklist for Rule 26(f) Meet and Confer Regarding ESI

        The Judges of the United States District Court for the Eastern District of Michigan
have approved, on a pilot period basis, the use of the attached model ESI discovery order
and Rule 26(f) checklist in appropriate cases.  It is within the judicial officer's discretion
whether these materials may be used.  At a future date, the Bench may consider whether
to adopt these materials as a uniform practice for the Court.

# MODEL ORDER RELATING TO THE
# DISCOVERY OF ELECTRONICALLY STORED INFORMATION

## *General Principles*

### Principle 1.01 (Purpose)

The purpose of these Principles is to assist courts in the administration of Federal Rule of Civil Procedure 1, to secure the just, speedy, and inexpensive determination of every civil case, and to promote, whenever possible, the early resolution of disputes regarding the discovery of electronically stored information ("ESI") without Court intervention. Understanding of the feasibility, reasonableness, costs, and benefits of various aspects of electronic discovery will inevitably evolve as judges, attorneys, and parties to litigation gain more experience with ESI and as technology advances.

### Principle 1.02 (Cooperation)

An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

### Principle 1.03 (Discovery Proportionality)

The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be

1

applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable. Where the discovery request is potentially burdensome to the responding party, the parties should consider options such as staging discovery and sampling, in an attempt to reduce the costs of production. If the discovery request seeks marginally relevant information, the requesting party should expect some cost shifting to be imposed by the Court in the absence of an agreement between the parties.

*Early Case Assessment Principles*

**Principle 2.01 (Duty to Meet and Confer on Discovery and to Identify Disputes for Early Resolution**)

(a)     Prior to the initial status conference with the Court, counsel shall meet and discuss the application of the discovery process set forth in the Federal Rules of Civil Procedure and these Principles to their specific case. Among the issues to be discussed are:

(1)     the identification of relevant and discoverable ESI and documents, including methods for identifying an initial subset of sources of ESI and documents that are most likely to contain the relevant and discoverable information as well as methodologies

2

for culling the relevant and discoverable ESI and documents from that initial subset (see Principle 2.05);

(2)     the scope of discoverable ESI and documents to be preserved by the parties;

(3)     the formats for preservation and production of ESI and documents;

(4)     the potential for conducting discovery in phases or stages as a method for reducing costs and burden; and

(5)     the potential need for a protective order and any procedures to which the parties might agree for handling inadvertent production of privileged information and other privilege waiver issues pursuant to Rule 502(d) or (e) of the Federal Rules of Evidence.

(b)     Disputes regarding ESI that counsel for the parties are unable to resolve shall be presented to the Court at the initial status conference, Fed. R. Civ. P. 16(b) Scheduling Conference, or as soon as possible thereafter.

(c)     The attorneys for each party shall review and understand how their respective client's data is stored and retrieved before the meet and confer discussions in order to determine what issues must be addressed during the meet and confer discussions.

3

(d)    If the Court determines that any counsel or party in a case has failed to cooperate and participate in good faith in the meet and confer process or is impeding the purpose of these Principles, the Court may require additional discussions prior to the commencement of discovery, and may impose sanctions, if appropriate.

**Principle 2.02 (E-Discovery Liaison(s))**

In most cases, the meet and confer process will be aided by participation of an e-discovery liaison(s) as defined in this Principle.  In the event of a dispute concerning the preservation or production of ESI, each party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject.  Regardless of whether the e-discovery liaison(s) is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, the e-discovery liaison(s) must:

(a)    be prepared to participate in e-discovery dispute resolution;

(b)    be knowledgeable about the party's e-discovery efforts;

(c)    be, or have reasonable access to those who are, familiar with the party's electronic information storage systems and capabilities in order to explain those systems and capabilities and answer relevant questions; and

(d)    be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization,

4

and format issues, and relevant information retrieval technology, including search methodology.

**Principle 2.03 (Preservation Requests and Orders)**

(a)     Appropriate preservation requests and preservation orders further the goals of these Principles.  Vague and overly broad preservation requests do not further the goals of these Principles and are therefore disfavored.  Vague and overly broad preservation orders should not be sought or entered.  The information sought to be preserved through the use of a preservation letter request or order should be reasonable in scope and mindful of the factors set forth in Rule 26(b)(2)(C).

(b)     To the extent counsel or a party requests preservation of ESI through the use of a preservation letter, such requests should attempt to ensure the preservation of relevant and discoverable information and to facilitate cooperation between requesting and receiving counsel and parties by transmitting specific and useful information.  Examples of such specific and useful information include, but are not limited to:

(1)     names of the parties;

(2)     factual background of the potential legal claim(s) and identification of potential cause(s) of action;

(3)     names of potential witnesses and other people reasonably

5

anticipated to have relevant evidence;

(4)     relevant time period; and

(5)     other information that may assist the responding party in assessing what information to preserve.

(c)     If the recipient of a preservation request chooses to respond, that response should provide the requesting counsel or party with useful and specific information regarding the preservation efforts undertaken by the responding party. Examples of such useful and specific information include, but are not limited to, information that:

(1)     identifies what information the responding party is willing to preserve and the steps being taken in response to the preservation letter;

(2)     identifies any disagreement(s) with the request to preserve; and

(3)     identifies any further preservation issues that were not raised.

(d)     Nothing in these Principles shall be construed as requiring the sending of a preservation request or requiring the sending of a response to such a request.

**Principle 2.04 (Scope of Preservation)**

(a)     Every party to litigation and its counsel are responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within

6

its possession, custody, or control. Determining which steps are reasonable and proportionate in particular litigation is a fact specific inquiry that will vary from case to case. The parties and counsel should address preservation issues at the outset of a case, and should continue to address them as the case progresses and their understanding of the issues and the facts improves.

(b)     Discovery concerning the preservation and collection efforts of another party may be appropriate but, if used unadvisedly, can also contribute to the unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter. Accordingly, prior to initiating such discovery a party shall confer with the party from whom the information is sought concerning: (i) the specific need for such discovery, including its relevance to issues likely to arise in the litigation; and (ii) the suitability of alternative means for obtaining the information. Nothing herein exempts deponents on merits issues from answering questions concerning the preservation and collection of their documents, ESI, and tangible things.

(c)     The parties and counsel should come to the meet and confer conference prepared to discuss the claims and defenses in the case including specific issues, time frame, potential damages, and targeted discovery that each anticipates requesting. In addition, the parties and counsel should be prepared to discuss reasonably foreseeable

preservation issues that relate directly to the information that the other party is seeking. The parties and counsel need not raise every conceivable issue that may arise concerning their preservation efforts; however, the identification of any such preservation issues should be specific.

(d)    The following categories of ESI generally are not discoverable in most cases, and if any party intends to request the preservation or production of these categories, then that intention should be discussed at the meet and confer or as soon thereafter as practicable:

(1)    "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

(2)    random access memory (RAM) or other ephemeral data;

(3)    on-line access data such as temporary internet files, history, cache, cookies, etc;

(4)    data in metadata fields that are frequently updated automatically, such as last-opened dates;

(5)    backup data that is substantially duplicative of data that is more accessible elsewhere; and

(6)    other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course

8

of business.

(e) If there is a dispute concerning the scope of a party's preservation efforts, the parties or their counsel must meet and confer and fully explain their reasons for believing that additional efforts are, or are not, reasonable and proportionate, pursuant to Rule 26(b)(2)(C). If the parties are unable to resolve a preservation issue, then the issue should be raised promptly with the Court.

(f) Absent an order of the Court upon a showing of good cause or stipulation by the parties, a party from whom ESI has been requested shall not be required to search for responsive ESI:

    (1) from more than ten (10) key custodians;

    (2) that was created more than five (5) years before the filing of the lawsuit;

    (3) from sources that are not reasonably accessible without undue burden or cost; or

    (4) for more than 160 hours, exclusive of time spent reviewing the ESI determined to be responsive for privilege or work product protection, provided that the producing party can demonstrate that the search was effectively designed and efficiently conducted. A party from whom ESI has been requested must maintain detailed

9

time records to demonstrate what was done and the time spent doing it, for review by an adversary and the Court, if requested.

**Principle 2.05 (Identification of Electronically Stored Information)**

(a)    At the Rule 26(f) conference or as soon thereafter as possible, counsel or the parties shall discuss potential methodologies for identifying ESI for production.

(b)    Topics for discussion may include, but are not limited to, any plans to:

(1)    eliminate duplicative ESI and whether such elimination will occur only within each particular custodian's data set or whether it will occur across all custodians;

(2)    filter data based on file type, date ranges, sender, receiver, custodian, search terms, or other similar parameters; and

(3)    use keyword searching, mathematical, or thesaurus-based topic or concept clustering, or other advanced culling technologies.

**Principle 2.06 (Production Format)**

(a)    At the Rule 26(f) conference, counsel and the parties should make a good faith effort to agree on the format(s) for production of ESI (whether native or some other reasonably usable form).  If counsel or the parties are unable to resolve a production format issue, then the issue should be raised promptly with the Court.

(b)    The parties should confer on whether ESI stored in a database or a

database management system can be produced by querying the database for discoverable information, resulting in a report or a reasonably usable and exportable electronic file for review by the requesting counsel or party.

(c) ESI and other tangible or hard copy documents that are not text-searchable need not be made text-searchable.

(d) Generally, the requesting party is responsible for the incremental cost of creating its copy of requested information. Counsel or the parties are encouraged to discuss cost sharing for optical character recognition (OCR) or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each party.

### *Education Provisions*

### Principle 3.01 (Judicial Expectations of Counsel)

Because discovery of ESI is being sought more frequently in civil litigation and the production and review of ESI can involve greater expense than discovery of paper documents, it is in the interest of justice that all judges, counsel, and parties to litigation become familiar with the fundamentals of discovery of ESI. It is expected by the judges adopting these Principles that all counsel will have done the following in connection with each litigation matter in which they file an appearance:

(1) Familiarize themselves with the electronic discovery provisions

11

of Federal Rules of Civil Procedure, including Rules 26, 33, 34, 37, and 45, as well as any applicable State Rules of Procedure;

(2)    Familiarize themselves with the Advisory Committee Report on the 2006 Amendments to the Federal Rules of Civil Procedure, available at:

http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/EDiscovery_w_Notes.pdf; and

(3)    Familiarize themselves with these Principles.

**Principle 3.02 (Duty of Continuing Education)**

Judges, attorneys, and parties to litigation should continue to educate themselves on electronic discovery by consulting applicable case law, pertinent statutes, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, The Sedona Conference® publications relating to electronic discovery,[1] additional materials available on web sites of the courts,[2] and of other organizations[3] providing education information regarding the discovery of ESI.[4]

---

[1] www.thesedonaconference.org/

[2] E.g., www.ilnd.uscourts.gov/home/

[3] E.g., www.discoverypilot.com, www.fjc.gov (Under Educational Programs and Materials)

[4] E.g., www.du.edu/legalinstitute

12

## Principle 3.03 (Non-Waiver of Attorney-Client Privilege or Work Product Protection)

As part of their duty to cooperate during discovery, the parties are expected to discuss whether the costs and burdens of discovery, especially ESI, may be reduced by entering into a non-waiver agreement pursuant to Fed. R. Evid. 502(e).  The parties also should discuss whether to use computer-assisted search methodology to facilitate pre-production review of ESI to identify information that is beyond the scope of discovery because it is attorney-client privileged or work product-protected.

## Principle 3.04 (Discovery From Nonparties)

Parties issuing requests for ESI from nonparties should attempt to informally meet and confer with the nonparty (or counsel, if represented).  During this meeting, counsel should discuss the same issues with regard to requests for ESI that they would with opposing counsel as set forth above.  If an agreement cannot be reached with the nonparty, the standards outlined above will apply generally to the discovery of ESI sought pursuant to Rule 45.

ENTER:

Dated: _____          _____
                              [Name]
                              United States [District/Bankruptcy/Magistrate Judge]

13

<div align="center">

**United States District Court**

**Eastern District of Michigan**

CHECKLIST FOR RULE 26(f) MEET AND CONFER
REGARDING ELECTRONICALLY STORED INFORMATION

</div>

In cases where the discovery of electronically stored information ("ESI") is likely to be a significant cost or burden, the Court encourages the parties to engage in on-going meet and confer discussions and use the following Checklist to guide those discussions. These discussions should be framed in the context of the specific claims and defenses involved. The usefulness of particular topics on the checklist, and the timing of discussion about these topics, may depend on the nature and complexity of the matter.

## I.   Preservation

☐   The ranges of creation or receipt dates for any ESI to be preserved.

☐   The description of data from sources that are not reasonably accessible and that will not be reviewed for responsiveness or produced, but that will be preserved pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

☐   The description of data from sources that (a) the party believes could contain relevant information but (b) has determined, under the proportionality factors, should not be preserved.

☐   Whether or not to continue any interdiction of any document destruction program, such as ongoing erasures of e-mails, voicemails, and other electronically-recorded material.

☐   The names and/or general job titles or descriptions of custodians for whom ESI will be preserved (e.g., "HR head," "scientist," "marketing manager," etc.).

☐   The number of custodians for whom ESI will be preserved.

☐   The list of systems, if any, that contain ESI not associated with individual custodians and that will be preserved, such as enterprise databases.

☐   Any disputes related to scope or manner of preservation.

## II.   Liaison

☐   The identity of each party's e-discovery liaison.

## III.   Informal Discovery About Location and Types of Systems

☐   Identification of systems from which discovery will be prioritized (e.g., email, finance, HR systems).

☐ Description of systems in which potentially discoverable information is stored.

☐ Location of systems in which potentially discoverable information is stored.

☐ How potentially discoverable information is stored.

☐ How discoverable information can be collected from systems and media in which it is stored.

**IV. Proportionality and Costs**

☐ The amount and nature of the claims being made by either party.

☐ The nature and scope of burdens associated with the proposed preservation and discovery of ESI.

☐ The likely benefit of the proposed discovery.

☐ Costs that the parties will share to reduce overall discovery expenses, such as the use of a common electronic discovery vendor or a shared document repository, or other cost-saving measures.

☐ Limits on the scope of preservation or other cost-saving measures.

☐ Whether there is potentially discoverable ESI that will not be preserved consistent with this Court's Principle 1.03 (Discovery Proportionality).

**V. Search**

☐ The search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable ESI and filter out ESI that is not subject to discovery.

☐ The quality control method(s) the producing party will use to evaluate whether a production is missing relevant ESI or contains substantial amounts of irrelevant ESI.

**VI. Phasing**

☐ Whether it is appropriate to conduct discovery of ESI in phases.

☐ Sources of ESI most likely to contain discoverable information and that will be included in the first phases of Fed. R. Civ. P. 34 document discovery.

☐ Sources of ESI less likely to contain discoverable information from which discovery will be postponed or avoided.

☐ Custodians (by name or role) most likely to have discoverable information and whose ESI will

be included in the first phases of document discovery.

☐ Custodians (by name or role) less likely to have discoverable information and from whom discovery of ESI will be postponed or avoided.

☐ The time period during which discoverable information was most likely to have been created or received.

## VII.    Production

☐ The formats in which structured ESI (database, collaboration sites, etc.) will be produced.

☐ The formats in which unstructured ESI (email, presentations, word processing, etc.) will be produced.

☐ The extent, if any, to which metadata will be produced and the fields of metadata to be produced.

☐ The production format(s) that ensure(s) that any inherent searchablility of ESI is not degraded when produced.

## VIII.   Privilege

☐ How any production of privileged or work product protected information will be handled.

☐ Whether the parties can agree upon alternative ways to identify documents withheld on the grounds of privilege or work product to reduce the burdens of such identification.

☐ Whether the parties will enter into a Fed. R. Evid. 502(d) Stipulation and Order that addresses inadvertent or agreed production.

Exhibit C

| | |
|---|---|
| **From:** | Clayson, Kim Ross <kclayson@taftlaw.com> |
| **Sent:** | Thursday, July 6, 2023 12:15 PM |
| **To:** | Patrick Foley |
| **Subject:** | RE: Proposed Order Re Motion for Protective Order |

Thanks Patrick –

With regard to the deposition, what we want to know is whether Melinda will be asserting her 5th amendment privilege and for which topics it will apply? Meantime, I will be back in touch with directions for how we are going to proceed with e-discovery.

All the best,

Kim

**Kim Ross Clayson**
Senior Counsel
she/her/hers
kclayson@taftlaw.com
Dir: 248.727.1635
Tel: 248.351.3000
27777 Franklin Rd
Suite 2500
Southfield, Michigan 48034

**Taft Bio**
**Download vCard**
**taftlaw.com**

Jaffe has joined Taft. Now over 800 attorneys strong.
Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# Exhibit D

| From: | Clayson, Kim Ross <kclayson@taftlaw.com> |
|---|---|
| Sent: | Monday, July 10, 2023 10:38 AM |
| To: | Patrick Foley |
| Cc: | Welford, Jay |
| Subject: | Ritter/Gelov Discovery Extensions |

Hi Patrick,

I hope we hear back from you and your client top of this week about Mr. Gelov's settlement proposal. Meantime given the status of the cases right now, will you consent to an extension of discovery and dispositive motion deadlines for 90 days to allow for determination of the current MSJs before the court. Let me know if you are in agreement and I will prepare a stipulation.

All the best,

Kim



**Kim Ross Clayson**
Senior Counsel
she/her/hers
kclayson@taftlaw.com
Dir: 248.727.1635
Tel: 248.351.3000
27777 Franklin Rd
Suite 2500
Southfield, Michigan 48034

**Taft Bio**
**Download vCard**
**taftlaw.com**



Jaffe has joined Taft. Now over 800 attorneys strong.
Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

Exhibit E

**Patrick Foley**

---

| | |
|---|---|
| **From:** | Clayson, Kim Ross <kclayson@taftlaw.com> |
| **Sent:** | Tuesday, July 11, 2023 4:34 PM |
| **To:** | Patrick Foley |
| **Cc:** | Welford, Jay |
| **Subject:** | DuMouchelle E-Discovery Housekeeping |
| **Attachments:** | Stipulation to Extend Discovery Cut Off-Revised.docx-127966798-v1.docx; Stip to Extend Discovery Cut Off.docx-127967975-v1.docx |

Hi Patrick,

We are working on designating a proposed neutral party e-discovery vendor. The intent is to try and collect data from a remote access but that will depend on the type of computer Melinda has. Can you verify the make, year, and model of her computer? A screenshot of the computer specs would be helpful. Can you also provide the e-mail domain and/or service provider for the DuMouchelle Jewellers emails as well as your clients' personal email accounts? (e.g. Google, Outlook, Network Solutions etc.)

Attached are proposed stipulations for extension of discovery deadlines, please confirm your consent to file with your e-signature.

Finally, does your client have a response to Mr. Gelov's settlement proposal?

All the best,

Kim



**Kim Ross Clayson**
Senior Counsel
she/her/hers
kclayson@taftlaw.com
Dir: 248.727.1635
Tel: 248.351.3000
27777 Franklin Rd
Suite 2500
Southfield, Michigan 48034

**Taft Bio**
**Download vCard**
**taftlaw.com**



Jaffe has joined Taft. Now over 800 attorneys strong.
Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise

confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

Exhibit F

| | |
|---|---|
| **From:** | Clayson, Kim Ross <kclayson@taftlaw.com> |
| **Sent:** | Monday, July 17, 2023 3:42 PM |
| **To:** | Patrick Foley |
| **Cc:** | Welford, Jay |
| **Subject:** | Discovery and Motion to Compel |

Hi Patrick,

We asked for some pretty simple information last week to get our e-discovery underway with no response. I am preparing to file a motion to compel discovery. Does your client have a response to these questions?

All the best,

Kim Clayson



**Kim Ross Clayson**
Senior Counsel
she/her/hers
kclayson@taftlaw.com
Dir: 248.727.1635
Tel: 248.351.3000
27777 Franklin Rd
Suite 2500
Southfield, Michigan 48034

**Taft Bio**
**Download vCard**
**taftlaw.com**



Jaffe has joined Taft. Now over 800 attorneys strong.
Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

---

**From:** Clayson, Kim Ross
**Sent:** Thursday, July 13, 2023 12:10 PM
**To:** 'Patrick Foley' <pafoley@jrfpc.net>
**Cc:** Welford, Jay <jwelford@taftlaw.com>
**Subject:** RE: DuMouchelle E-Discovery Housekeeping

Hi Patrick,

Following up:

Can you verify the make, year, and model of her computer? A screenshot of the computer specs would be helpful. Can you also provide the e-mail domain and/or service provider for the DuMouchelle Jewellers emails as well as your clients' personal email accounts? (e.g. Google, Outlook, Network Solutions etc.)

Finally, does your client have a response to Mr. Gelov's settlement proposal?

All the best,

Kim Clayson



**Kim Ross Clayson**
Senior Counsel
she/her/hers
kclayson@taftlaw.com
Dir: 248.727.1635
Tel: 248.351.3000
27777 Franklin Rd
Suite 2500
Southfield, Michigan 48034

**Taft Bio**
**Download vCard**
**taftlaw.com**



Jaffe has joined Taft. Now over 800 attorneys strong.
Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Patrick Foley <pafoley@jrfpc.net>
**Sent:** Tuesday, July 11, 2023 5:04 PM
**To:** Clayson, Kim Ross <kclayson@taftlaw.com>
**Cc:** Welford, Jay <jwelford@taftlaw.com>
**Subject:** RE: DuMouchelle E-Discovery Housekeeping

Kim,

Thank you, you have my consent to file the attached stipulations in the Gelov and Ritter cases.

Sincerely,
Patrick A. Foley
*Attorney*
JOHN R. FOLEY, P.C.
18572 W. Outer Dr.
Dearborn, MI 48128
Phone: (313) 274-7377

Fax: (313) 274-5946
Email: pafoley@jrfpc.net

**From:** Clayson, Kim Ross <kclayson@taftlaw.com>
**Sent:** Tuesday, July 11, 2023 4:34 PM
**To:** Patrick Foley <pafoley@jrfpc.net>
**Cc:** Welford, Jay <jwelford@taftlaw.com>
**Subject:** DuMouchelle E-Discovery Housekeeping

Hi Patrick,

We are working on designating a proposed neutral party e-discovery vendor. The intent is to try and collect data from a remote access but that will depend on the type of computer Melinda has. Can you verify the make, year, and model of her computer? A screenshot of the computer specs would be helpful. Can you also provide the e-mail domain and/or service provider for the DuMouchelle Jewellers emails as well as your clients' personal email accounts? (e.g. Google, Outlook, Network Solutions etc.)

Attached are proposed stipulations for extension of discovery deadlines, please confirm your consent to file with your e-signature.

Finally, does your client have a response to Mr. Gelov's settlement proposal?

All the best,

Kim



**Kim Ross Clayson**
Senior Counsel
she/her/hers
kclayson@taftlaw.com
Dir: 248.727.1635
Tel: 248.351.3000
27777 Franklin Rd
Suite 2500
Southfield, Michigan 48034


**Taft Bio**
**Download vCard**
**taftlaw.com**



Jaffe has joined Taft. Now over 800 attorneys strong.
Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

4