**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In Re:

JOSEPH DuMOUCHELLE and
MELINDA ADDUCCI,

        Debtors.

Case No. 19-54531
Chapter 7
Hon. Lisa S. Gretchko

_____/

TEODOR GELOV,

        Plaintiff,

v.

JOSEPH DuMOUCHELLE and
MELINDA ADDUCCI,

        Defendants.

Adv. Pro. No. 20-04172-lsg
Hon. Lisa S. Gretchko

_____/

**OPINION DETERMINING THAT THIS ADVERSARY PROCEEDING IS MOOT AS TO JOSEPH DUMOUCHELLE AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO JOSEPH DUMOUCHELLE DUE TO LACK OF SUBJECT MATTER JURISDICTION**

**Background**

On October 11, 2019, the Debtors, Joseph DuMouchelle ("Joseph") and Melinda Adducci ("Melinda"), filed a bankruptcy petition that was assigned case number 19-54531 (the "Main Case").

On March 18, 2020, Teodor Gelov ("Plaintiff" or "Gelov") filed this adversary proceeding ("Adversary Proceeding") against Joseph and Melinda, seeking a determination of nondischargeability under 11 U.S.C. §§ 523(a)(2), (4), and (6) with respect to the amounts described in Gelov's proof of claim.

Gelov filed his proof of claim ("Claim") in the Main Bankruptcy Case on November 25, 2019; it was assigned Claim No. 7-1. The face amount of the Claim is $2,862,715.59, but other/additional amounts are described in the addendum to the Claim. (Exhibit 1 to the Claim is a promissory note dated August 3, 2018, pursuant to which the Debtors and Joseph DuMouchelle Fine & Estate Jewellers, LLC ("DuMouchelle LLC") promised to pay Gelov $1,800,000, plus a guaranteed rate of return of 20%, by February 28, 2019.) Other documents attached to the Claim indicate that Gelov sued the Debtors and DuMouchelle LLC in the Oakland County, Michigan, Circuit Court ("Oakland County Case") and that, on June 12, 2019, Gelov obtained a partial summary judgment against the defendants (including the Debtors), jointly and severally, in the amount of $1,800,000.00. Exhibit 4 to Gelov's Claim consists of a November 6, 2019[1] order in the Oakland County Case granting Gelov's

---

[1] This order was entered after the Debtors filed their voluntary bankruptcy petition on October 11, 2019 (thereby invoking the automatic stay under 11 U.S.C. § 362(a)), but before an involuntary bankruptcy was filed against DuMouchelle LLC on November 17, 2019.

2

motion for partial summary judgment against DuMouchelle LLC (only) in the amount of $2,862,715.59.

Meanwhile, on June 16, 2020, a Criminal Information was filed against Joseph in the U.S. District Court for the Eastern District of Michigan (Case No. 2:20-cr-20245; "Criminal Proceeding"). In the Criminal Proceeding, Joseph ultimately pled guilty to wire fraud under 18 U.S.C. § 1343 in connection with his role in the "Yellow Rose Diamond Transaction" which involved another creditor, Thomas Ritter ("Ritter"). On July 28, 2022, the U.S. District Court for the Eastern District of Michigan entered a criminal judgment against Joseph and sentenced him to 151 months in prison. The amount of restitution was determined to be more than $25 million regarding approximately 21 victims, including $1.8 million in restitution regarding Gelov. Joseph is currently incarcerated for his involvement in The Yellow Rose Diamond transaction.

On May 15, 2023, Plaintiff filed a motion for summary judgment in this Adversary Proceeding against Joseph (only) under Counts I, II, and III of Plaintiff's Second Amended Complaint ("SJ Motion"; ECF No. 144); those counts seek a judgment of nondischargeability against the Debtors under 11 U.S.C. §§ 523(a)(2), (4), and (6), respectively, regarding the "Non-Dischargeable Amounts", as that term is defined in paragraph 68 of the Second Amended Complaint. (ECF No. 130).

3

20-04172-lsg    Doc 175    Filed 09/14/23    Entered 09/14/23 17:08:20    Page 3 of 18

Meanwhile, on May 12, 2023[2], three days before Plaintiff filed the SJ Motion in this adversary proceeding, a stipulation between the United States Trustee and Joseph was filed in the Debtors' Main Case for entry of an order waiving Joseph's discharge under 11 U.S.C. § 727(a)(10) ("Joseph's Denial of Discharge Stipulation"; ECF No. 454 in the Main Case). Joseph's Denial of Discharge Stipulation was signed by counsel for the United States Trustee, counsel for Joseph and Melinda, Joseph, and Melinda.[3] Paragraph 4 of that stipulation acknowledges that Joseph "will

---

[2] In the Main Case, there were several stipulated orders extending the deadline to commence an action under § 727 for denial of the Debtors' discharge(s). The first three of those orders extended that deadline "for all creditors and parties in interest, including the Chapter 7 Trustee and the Office of the United States Trustee," and the last such order set September 30, 2020 as the deadline for filing § 727 complaints. Although Gelov's complaint in this adversary proceeding was filed on March 18, 2020 (and, therefore, could have included a request for denial of discharge under § 727), Gelov did not seek § 727 relief with respect to either of the Debtors in his original complaint, or in his first or second amended complaints.

The fourth extension order applied only to the Chapter 7 Trustee and the United States Trustee. All subsequent extension orders applied only to the United States Trustee, and the last such order granted the United States Trustee an extension through May 26, 2023 to file a § 727 complaint.

[3] During the June 23, 2023 oral argument on the mootness issue in a different adversary proceeding against the Debtors, entitled Ritter v. Joseph DuMouchelle and Melinda Adducci (Adversary Proceeding No. 20-4381), Debtors' counsel explained that the steps to obtain Joseph's Denial of Discharge Stipulation had been "in the works" for a significant period of time prior to May 12, 2023, and that (due to Joseph's incarceration) the logistics of communicating with him, explaining the foregoing stipulation to him, and obtaining his signature were complicated.

4

remain liable for any and all of his debts as of the date his bankruptcy petition was filed." Paragraph 6 thereof recites that Joseph has waived all right to appeal the entry of any order waiving his bankruptcy discharge and that Joseph waived the right to review under Fed.R.Civ.P. 60.

On May 15, 2023, this Court entered the Order Denying Discharge of Debtor Joseph G. DuMouchelle Only Under 11 U.S.C. § 727 ("Joseph's Denial of Discharge Order"; ECF No. 455 in the Main Case).

On May 25, 2023, Joseph filed a brief in response to the SJ Motion in this Adversary Proceeding ("Response"; ECF No. 145) alleging that "there is no longer an 'actual case or controversy' at stake as it relates to Plaintiff's claims against Joe," and that the SJ Motion "should be denied (and, in fact, the case should be dismissed with respect to Joe)."

On July 31, 2023, Plaintiff filed a reply brief in support of the SJ Motion ("Reply"; ECF No. 166) and argued that the case is not moot as to Joseph, even though, on July 17, 2023, this Court had issued its opinion determining that, in the aftermath of Joseph's Denial of Discharge Order in the Main Case, the case of Ritter v. DuMouchelle (Adversary Proceeding No. 20-4381; "Ritter Case") was

constitutionally moot as to Joseph.[4] *See Ritter v. DuMouchelle (In re DuMouchelle),* 2023 WL 4571950 (Bankr. E.D. Mich. July 17, 2023).

On August 4, 2023, the Court held oral argument on the mootness issue in this Adversary Proceeding, as it affects the Court's subject matter jurisdiction to consider the merits of the SJ Motion. Oral argument lasted approximately three hours.

## **Discussion**

Federal courts are courts of limited jurisdiction and may decide only "cases" or "controversies". U.S. Const., Art. III, § 2. The Sixth Circuit recently explained constitutional mootness:

> '[w]e do not have the power to adjudicate disputes that are moot.' A 'case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' We ask whether it would 'make a difference to the legal interests of the parties' if we granted the relief sought. If a ruling from us would not affect the legal interests of the parties, an issue is constitutionally moot. Because constitutional mootness goes to our subject-matter jurisdiction under Article III, 'we have a continuing obligation to enquire whether there is a present controversy as to which effective relief can be granted.'

*In re Kramer,* 71 F.4th 428, 438 (6th Cir. 2023) (internal citations omitted). "Constitutional mootness goes to the granting of effective relief." *Id.* at 439.

The "case or controversy" requirement of Article III applies to adversary proceedings brought in bankruptcy courts, even though bankruptcy courts are not

---

[4] Ritter filed motions for reconsideration of this Court's mootness opinion (and the resulting orders) in that case. On September 14, 2023, this Court denied Ritter's motions for reconsideration.

Article III courts themselves. *See, e.g., In re Rosenfeld,* 698 F. App'x. 300, 303 (6th Cir. 2017). In order to satisfy the "case or controversy" requirement in this Adversary Proceeding, the dispute between Plaintiff and Joseph must be "actual" and "ongoing". *Day v. Klingler (In re Klingler),* 301 B.R. 519 (Bankr. N.D. Ill. 2003).

Joseph's Denial of Discharge Order renders this Adversary Proceeding moot as to him. Due to Joseph's Denial of Discharge Order, any and all debts that Joseph owed as of October 11, 2019—the date the Debtors' bankruptcy petition was filed—are nondischargeable, including Joseph's debt to Plaintiff. Joseph's debts—all of them—cannot be made any more nondischargeable than they currently are. Simply stated, with respect to Joseph there is no further relief that this Court can grant to Plaintiff. *Klingler,* 301 B.R. at 524.

### The Procedural Posture Of This Adversary Proceeding Vis-à-Vis Joseph's Denial Of Discharge Order Triggered Constitutional Mootness

In Argument No. 1 of his Reply, Plaintiff asserts that there are a number of cases in which bankruptcy courts have addressed § 523 claims after finding the debtor should be denied a discharge under § 727 and that it is nonsensical that constitutional mootness prevents this Court from considering his § 523 claims against Joseph after entry of Joseph's Denial of Discharge Order in the Main Case. Plaintiff relies on *In re Cole*, 378 B.R. 215 (Bankr. N.D. Ill. 2007); *Borock v.*

*Bidlofsky (In re Bidlofsky),* 57 B.R. 883 (Bankr. E.D. Mich. 1985); and *General Motors Co., v. Heraud (In re Heraud),* 410 B.R. 569 (Bankr. E.D. Mich. 2009).

Plaintiff fails, however, to perceive the critical difference between the procedural posture of the instant case and each of *Cole, Bidlofsky,* and *Heraud.* In *Cole* and *Heraud,* the plaintiff filed a complaint seeking both a § 727 denial of discharge and a determination of § 523 claims. In *Bidlofsky,* two cases were consolidated for trial, and the court concurrently considered the creditors' § 523 claims and the trustee's § 727 claims. The procedural posture of *Cole, Bidlofsky,* and *Heraud* required those courts to concurrently consider claims under § 727 and § 523 because relief under both sections of the bankruptcy code was requested.

The procedural posture of this Adversary Proceeding is different from the cases relied upon by Plaintiff. First, unlike *Cole, Bidlofsky,* and *Heraud,* Plaintiff seeks relief against Joseph under only § 523 and does not also seek relief against him under § 727. Second, Joseph's Denial of Discharge Order predates any hearing on the merits of Plaintiff's SJ Motion. Thus, unlike *Cole, Heraud,* and *Bidlofsky,* in which those courts concurrently considered § 727 and § 523, the instant case presents the issue of whether this Court can grant Plaintiff further relief against Joseph in the aftermath of Joseph's Denial of Discharge Order.

Plaintiff also argues that courts routinely consider and rule on alternative theories of recovery. Plaintiff cites *Chase Manhattan Bank v. Iridium Africa Corp.,*

8

20-04172-lsg    Doc 175    Filed 09/14/23    Entered 09/14/23 17:08:20    Page 8 of 18

474 F. Supp. 2d 613 (D. Del. 2007), however that case does not support Plaintiff's argument. In *Chase,* the court held that once it granted summary judgment in favor of the bank on its breach of contract claim, it was not required to address the bank's alternative theories of recovery. *Id*. at 616.

Indeed, Plaintiff's argument misses the mark entirely. The issue for a constitutional mootness analysis is not whether Plaintiff has the right to concurrently seek a determination that certain debts are excepted from discharge under the various subsections of § 523(a). The issue is whether the Court can grant effective relief under § 523(a) after that same relief—the debt not being dischargeable—has already been granted.

In *Surgical Capital Sols., Inc. v. Muhammad S. Awaisi (In re Awaisi),* 627 B.R. 886 (Bankr. E.D. Mich. 2021), Judge Thomas J. Tucker addressed constitutional mootness in the same procedural posture as the instant case. In *Awaisi,* the plaintiff filed an adversary proceeding against the debtor, Mr. Awaisi, only under §§ 523(a)(2), (4), and (6). While the adversary proceeding against Mr. Awaisi was pending, the bankruptcy court entered a stipulated order in the main case that denied his discharge based upon § 727(a)(10). Judge Tucker held that the no-discharge order with respect to the debtor rendered moot the plaintiff's § 523 nondischargeability claims against him in the adversary proceeding because the plaintiff had received the dischargeability-related relief it was seeking in the

adversary proceeding—namely, that any debt that the debtor owed to the plaintiff would not be discharged in the debtor's chapter 7 bankruptcy case. Thus, Judge Tucker held that the court was no longer able to grant the plaintiff "any meaningful relief in addition to what it has already received," and the adversary proceeding was dismissed. *Awaisi,* 627 B.R. at 887. This Court agrees with Judge Tucker's analysis in *Awaisi*, and the same result is warranted in the instant Adversary Proceeding.

Plaintiff argues that "there is no rule that prevents Plaintiff from seeking a determination of its claim due to Joseph's prepetition conduct despite his waiver of discharge" and that "courts routinely consider and rule on alternative theories of recovery." These arguments miss the mark.

First, the U.S. Constitution, Article III, § 2 is the "rule" that prevents Plaintiff from seeking a determination that his claims against Joseph are nondischargeable under § 523 after entry of Joseph's Denial of Discharge Order. Section 523 deals with exceptions to discharge. Once Joseph's Denial of Discharge Order was entered on May 15, 2023, all of his debts became nondischargeable. Because Joseph will not receive a discharge, any ruling on whether his debt to Plaintiff could have been excepted from discharge (under various and alternative subsections of § 523(a)) due to Joseph's prepetition conduct would be merely an advisory ruling on a hypothetical situation that does not exist. *See Rasmussen v. Unruh (In re Unruh),* 278 B.R. 796, 807 (Bankr. D. Minn. 2002). Simply stated, with respect to Joseph there is no further

10

relief that this Court can grant to Plaintiff; Joseph's debts to Plaintiff cannot be made any more nondischargeable than they currently are. *Day v. Klingler (In re Klingler)*, 301 B.R. 519 (Bankr. N.D. Ill. 2003).

Plaintiff also argues that he is entitled to his day in this Court to address his particular § 523 claims, which were filed more than two years before Joseph's Denial of Discharge Stipulation and Joseph's Denial of Discharge Order were filed in the Main Case on May 12, 2023, and May 15, 2023, respectively. According to Plaintiffi in his Reply, the timing of a § 523 determination vis-à-vis a § 727 denial of discharge should not matter; "[e]ither the court has jurisdiction or it does not." The Court disagrees.

Inherent in Plaintiff's argument is the notion that this Court's jurisdiction becomes "frozen" when a complaint is filed. That is incorrect. This Court has an ongoing obligation to assess its jurisdiction throughout a case. *See, e.g., In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023); *Jarrett v. United States,* ___ F. 4th ___ , 2023 WL 5319745, at *2 (6th Cir. August 18, 2023).

Moreover, as Plaintiff acknowledges, he chose to pursue only § 523 claims against the Debtors and left it to the United States Trustee to pursue § 727 claims against the Debtors. Having chosen not to pursue § 727 claims against the Debtors, Plaintiff must "live with" the results of that choice. Plaintiff cannot now complain about the United States. Trustee's decision to accept Joseph's Waiver of Discharge

11

20-04172-lsg    Doc 175    Filed 09/14/23    Entered 09/14/23 17:08:20    Page 11 of 18

Stipulation and obtain entry of Joseph's Denial of Discharge Order or claim that a "significant injustice" will occur if Joseph's Denial of Discharge Order is found to render his § 523 claims against Joseph constitutionally moot.

Plaintiff already has the $1,800,000 judgment from the Oakland County Circuit Court against Joseph (and Melinda), and the U.S. District Court has already convicted Joseph, sentenced him to 151 months in prison for his role in The Yellow Rose Diamond transaction, and determined that the amount of restitution regarding Plaintiff is $1.8 million. Thus, Plaintiff has already received an acknowledgement of Joseph's wrongdoing. In the aftermath of Joseph's Denial of Discharge Order all of Joseph's debts owing as of the petition date are nondischargeable. Plaintiff is not "entitled" to a ruling from this Court on the issue of whether Joseph's debt to Gelov would be nondischargeable under § 523 if Joseph's Denial of Discharge Order had not been entered.

### The Collateral Legal Consequences Doctrine Does Not Entitle Plaintiff To Pursue His § 523 Claims In The Aftermath Of Joseph's Denial Of Discharge Order

In Argument No. 2 of his Reply, Plaintiff asserts the "collateral legal consequences doctrine" as an exception to constitutional mootness that should apply to this Adversary Proceeding to help Plaintiff prove his "vicarious liability" count against Melinda (which is Count IV of the Second Amended Complaint)—and thus

this Court is still "capable of granting some relief"—so the case is not moot. This argument is unpersuasive.

Plaintiff cites to *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.,* 983 F.2d 485 (3d Cir. 1992) and *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201 (3d Cir. 2016), both of which involved decisions on the merits of those cases that were later appealed. Those cases are inapposite because this Court has not made a decision on the merits of the SJ Motion.

*Nat'l Iranian* and *United Steel Paper* are also distinguishable from this Adversary Proceeding because in both of those cases there were concrete legal consequences that prevented the appeals of those existing judgments from being moot. In *Nat'l Iranian*, the appellant argued that the appeal became moot because the appellee did not have assets sufficient to pay the amount sought in the lawsuit. The Third Circuit held that the appeal was not moot, among other reasons, because of the collateral legal consequences doctrine. The collateral legal consequence of the district court judgment was the likely dismissal, on collateral estoppel grounds, of two other pending lawsuits filed by the plaintiff because of the district court's prior determination in the appealed judgment of the applicable statute of limitations. *Nat'l Iranian*, 983 F.2d at 490.

13

In *United Steel Paper*, the United States government argued that the appeal of a district court judgment, which held (in part) that the Virgin Islands Economic Stability Act of 2011 (VIESA) did not violate the Contract Clause of the United States Constitution, became moot when the statute at issue expired. However, the district court decision that was appealed to the Third Circuit would have collateral estoppel legal consequences in a pending arbitration between the unions (appellants) and the government, because the validity of the VIESA could not be adjudicated in the arbitration. The Third Circuit held that the appeal was therefore not moot. *United Steel Paper*, 842 F.3d at 209-10.

In the instant case, however, Plaintiff does not have a decision on the merits of the SJ Motion. And, in both *Nat'l Iranian* and *United Steel Paper*, there was no dispute that the trial courts had subject matter jurisdiction at the time they entered the respective judgments. The issue in those cases was whether subsequent events rendered the ongoing appeals of those judgments moot. That issue is not present here as the Court never reached a judgment on Plaintiff's § 523 claims against Joseph before Joseph waived his right to a discharge.

Moreover, *Nat'l Iranian* and *United Steel Paper* both were decided by the Third Circuit Court of Appeals. Plaintiff does not cite any Sixth Circuit case (nor could this Court find any) that superimposes the "collateral legal consequences"

doctrine upon the Bankruptcy Court's ongoing obligation to check its limited jurisdiction for constitutional mootness.

Plaintiff also argues that because a decision on the merits regarding Joseph's culpability under § 523 would assist Plaintiff in proving that Melinda is vicariously liable for Joseph's wrongful acts or might impact claims involving subsequent (unspecified) transferees, the "collateral legal consequences" doctrine should apply to the instant case. The Court disagrees.

Plaintiff fails to articulate how the lack of a § 523 judgment against Joseph prejudices Plaintiff's vicarious liability claim against Melinda. Plaintiff is still free to pursue his § 523 claims against Melinda and argue that she is vicariously liable for Joseph's wrongdoing, which is a matter of public record in the criminal case against him. Plaintiff has not provided any authority for his argument that a party is prospectively entitled to a decision on the merits of a cause of action that is otherwise moot simply because that decision may have preclusive effect against another party in the case.

Plaintiff also argues that he is prejudiced by not receiving a decision on his § 523 claims because that decision would affect claims against third parties. However, he fails to specify the claims or the subsequent transferees that he references in this argument, much less the impact that the lack of a § 523 judgment against Joseph would have thereon. And again, Plaintiff has not provided any

15

20-04172-lsg    Doc 175    Filed 09/14/23    Entered 09/14/23 17:08:20    Page 15 of 18

authority stating that a party is prospectively entitled to a decision on the merits of a cause of action that is otherwise moot simply because that decision may have preclusive effect against a third party in another proceeding.

Indeed, Plaintiff's argument indicates that he seeks findings as to Joseph that Plaintiff can use in his case against Melinda (or third parties), rather than relief from Joseph. However, the analysis of constitutional mootness focuses on whether the Court can grant additional *relief*. *Kramer*, 71 F.4th at 438-39. The findings that Plaintiff seems to be seeking regarding Joseph's wrongdoing do not constitute *relief against Joseph*.

### **Plaintiff's Fear That Joseph's Denial Of Discharge Order Might Be Set Aside Does Not Obviate Constitutional Mootness, And Plaintiff Could Seek Relief Under Fed.R.Civ.P. Rule 60(b) If That Were To Occur**

In Argument 3 of his Reply, Plaintiff asserts that this Adversary Proceeding is not moot as to Joseph because, based upon his behavior in his criminal case, there exists a reasonable likelihood that Joseph will seek to set aside his § 727(a)(10) waiver and Joseph's Denial of Discharge Order—in which case Plaintiff would have no opportunity to pursue § 523 claims against Joseph. This argument is unpersuasive.

Plaintiff's fear regarding Joseph's future behavior is a hypothetical based on the fact that Debtors'/Defendants' counsel has filed motions to withdraw. However,

16

20-04172-lsg    Doc 175    Filed 09/14/23    Entered 09/14/23 17:08:20    Page 16 of 18

Plaintiff ignores paragraph 6 of Joseph's Denial of Discharge Stipulation, which states:

> 6. Mr. DuMouchelle further waives all right to appeal the entry of any order approving this stipulation, and the waiver of his bankruptcy discharge. Mr. DuMouchelle further waives the right to review of this stipulation, or the resulting order denying discharge, under Fed.R.Civ.P. 60.

(*See* Joseph's Denial of Discharge Stipulation, ECF No. 454 in the Main Case). In other words, Joseph has already waived the procedural mechanisms to set aside his § 727(a)(10) waiver and Joseph's Denial of Discharge Order.

Any attempt to set aside Joseph's Denial of Discharge Stipulation and Joseph's Denial of Discharge Order would require the approval of this Court. And, even if that occurred, Plaintiff could then seek appropriate relief under Fed.R.Civ.P. 60(b).

For all of these reasons, the Court finds that there is no longer an actual "case or controversy" as it relates to Plaintiff's claims against Joseph. Consequently, this Court cannot reach the merits of the SJ Motion. Joseph's Denial of Discharge Order renders this adversary proceeding moot as to him, and this Court now lacks subject matter jurisdiction over this Adversary Proceeding as it relates to Joseph. Thus, the SJ Motion must be denied, and Joseph must be dismissed from this Adversary Proceeding.

The Court will enter separate orders consistent with this opinion.

**Signed on September 14, 2023**



/s/ Lisa S. Gretchko

Lisa S. Gretchko
United States Bankruptcy Judge