## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**In the matter of:**

JOSEPH G. DUMOUCHELLE, and
MELINDA J. ADDUCCI,
                              *Debtors.*

Bankruptcy Petition No. 19-54531
Hon. Lisa S. Gretchko
Chapter 7

TEODOR GELOV,
                              *Plaintiff,*
v.
MELINDA J. ADDUCCI,
                              *Defendant.*

Adv. Pro. No. 20-04172
Hon. Lisa S. Gretchko

## DEFENDANT'S BRIEF REGARDING ELECTRONIC DISCOVERY, PRIVILEGES, AND ALLEGED WAIVERS

**NOW COMES** the Defendant MELINDA J. ADDUCCI, by and through their counsel, JOHN R. FOLEY, P.C., and for her *Brief* hereby states as follows:

## INTRODUCTION

This case involves a dispute over alleged contractual obligations and business dealings between Plaintiff and Defendants. Plaintiff initiated litigation seeking relief related to financial transactions and agreements. Despite Defendants' consistent cooperation in discovery, including agreeing to multiple extensions, Plaintiff has repeatedly delayed proceedings by requesting adjournments, citing the need for additional discovery. Defendants have complied with all obligations, producing documents and cooperating with electronic discovery protocols, yet Plaintiff's continued delays have burdened Defendants and prolonged resolution.

Defendants seek either a reasonable settlement considering Melinda Adducci's limited financial means and nearing retirement or an efficient progression to trial in compliance with court deadlines.

The key issues before the Court in this Brief, and Plaintiff's Brief, include:

1. Business Communications Exception to Spousal Privilege: Whether the Sixth Circuit recognizes a "business communications" exception and its applicability to communications between Defendant Melinda Adducci and Joseph DuMouchelle.

2. Crime-Fraud Exception to Spousal Privilege: Whether the Sixth Circuit acknowledges this exception and if Plaintiff has proven that the communications in question furthered a crime or fraud.

3. Waiver of Spousal Privilege: Whether Defendant Melinda Adducci's statements during discovery and deposition constitute a limited or total waiver of spousal privilege.

4. Waiver of Attorney-Client Privilege: Whether Defendant's references to legal advice constitute a waiver and, if so, whether it is limited or extends broadly to all attorney communications.

## **HISTORY**

## **1. Parties Involved**

Plaintiff Teodor Gelov initiated this adversary proceeding against Defendants Joseph G. DuMouchelle and his wife, Melinda J. Adducci, alleging fraudulent misrepresentations and breaches of fiduciary duty related to financial transactions, resulting in significant monetary losses. Plaintiff claims Melinda was a knowing participant and seeks to hold her liable.

Joseph voluntarily waived his discharge under 11 U.S.C. § 727, ensuring that his debts, including those owed to Plaintiff, would not be discharged. Despite this, Plaintiff continued pursuing claims against DuMouchelle under 11 U.S.C. § 523, asserting fraudulent conduct and embezzlement. On September 14, 2023, the Court ruled that the claims against DuMouchelle were moot and dismissed him from the proceeding due to lack of subject matter jurisdiction [ECF Nos. 175 & 177].

Plaintiff's insistence on pursuing claims against Joseph unnecessarily prolonged litigation and increased costs. The case now focuses solely on Defendant Melinda Adducci.

## 2. Procedural History

Plaintiff Teodor Gelov filed this adversary proceeding on March 18, 2020, against Defendants Joseph G. DuMouchelle and Melinda J. Adducci, seeking a determination of the nondischargeability of debts under 11 U.S.C. § 523(a)(4), alleging fraud, embezzlement, and fiduciary misconduct in connection with a failed jewelry investment transaction [ECF No. 1]. Defendants answered the complaint on

April 28, 2020, asserting affirmative defenses [ECF No. 13]. The case proceeded with procedural filings, including initial disclosures and a Rule 26(f) report filed on May 27, 2020 [ECF Nos. 16-17].

Throughout 2020 and 2021, the case saw multiple scheduling conferences and discovery disputes. Several stipulations to stay proceedings were entered to facilitate settlement discussions and bankruptcy proceedings, with stays approved on June 7, 2021, and subsequently extended during status conferences held on October 18, 2021, and January 24, 2022 [ECF Nos. 90, 97, 99]. A scheduling order issued on September 16, 2022, set a final pretrial conference for September 18, 2023, and trial dates for October 4-5, 2023 [ECF No. 114].

On September 14, 2023, the Court dismissed Defendant Joseph G. DuMouchelle from the proceeding, finding a lack of subject matter jurisdiction over claims against him [ECF Nos. 175-177]. The litigation continued against Defendant Adducci, with Plaintiff pursuing further discovery. Plaintiff filed a motion for summary judgment against Adducci on November 8, 2023, which was ultimately denied on May 10, 2024 [ECF Nos. 202, 224].

The case has involved extensive discovery disputes, particularly regarding electronically stored information (ESI). Following Plaintiff's discovery requests, the Court entered a protective order governing ESI imaging and inspection on December 21, 2023 [ECF No. 215]. Defendant Adducci filed a motion for reconsideration of

an order compelling ESI production, which was denied on December 16, 2024 [ECF Nos. 256, 260].

Trial dates in this matter were initially set for January 27-28, 2021, pursuant to the Court's scheduling order entered on September 16, 2020 [ECF No. 45]. However, at Plaintiff's request, the trial was adjourned to October 5-6, 2021, per a stipulated order entered on April 12, 2021 [ECF No. 78]. As discovery disputes persisted, Plaintiff sought further extensions, and the Court subsequently rescheduled the trial to March 22-23, 2022, through an order issued on September 20, 2021 [ECF No. 102].

Despite ongoing compliance efforts by Defendant Adducci, Plaintiff moved for additional discovery time, resulting in another adjournment, resetting trial to October 11-12, 2022, by stipulated order entered on May 15, 2022 [ECF No. 138]. As discovery disputes concerning electronically stored information (ESI) continued, the Court again granted Plaintiff's request to extend deadlines, setting new trial dates for April 18-19, 2023, by order entered on December 20, 2022 [ECF No. 175].

Plaintiff's further motions for additional discovery led to another rescheduling, moving trial to February 7-8, 2024, under an order issued on June 14, 2023 [ECF No. 202]. However, due to Plaintiff's continued pursuit of additional document production and depositions, the trial was rescheduled once more to November 15, 2024, via order entered on October 3, 2023 [ECF No. 227].

Most recently, on October 11, 2024, the Court adjourned the trial once again without a new date, citing Plaintiff's request for further discovery and pending privilege disputes [ECF No. 231]. Defendant Adducci has consistently complied with discovery obligations, while Plaintiff's repeated requests for extensions have prolonged the litigation.

Despite Defendant Adducci's compliance with discovery orders, Plaintiff continues to pursue additional document production and depositions, leading to further case delays. As of January 2025, discovery remains ongoing, and privilege disputes persist. Plaintiff has filed a response challenging Defendant's spousal privilege and attorney-client privilege assertions, which remain pending before the Court [ECF No. 261].

### 3. Discovery History

Discovery in this adversary proceeding has been extensive and ongoing for several years, with Defendant Melinda J. Adducci consistently cooperating with Plaintiff Teodor Gelov's numerous requests, particularly regarding electronically stored information (ESI). Plaintiff has repeatedly sought extensions and modifications to deadlines.

On June 3, 2020, Plaintiff served his initial discovery requests [ECF No. 23], to which Defendants responded on July 17, 2020 [ECF Nos. 40-41]. Defendants served their own discovery requests on September 16, 2020 [ECF No. 51], and

Plaintiff responded on October 6, 2020 [ECF No. 61]. Discovery deadlines were extended through stipulations filed on June 18, 2021, and October 18, 2021, with multiple status conferences held throughout 2022 to facilitate the ongoing process [ECF Nos. 93, 96].

Plaintiff filed a motion for summary judgment on May 15, 2023 [ECF No. 144], to which Defendant Adducci responded on May 25, 2023 [ECF No. 145]. Further discovery extensions were granted through stipulations filed on July 13, 2023, and April 27, 2023, with a final pre-trial conference initially set for January 29, 2024, and trial dates for February 7-8, 2024 [ECF Nos. 158, 143]. On October 11, 2023, Defendant Adducci supplemented her initial disclosures [ECF No. 118]. A stipulated order governing ESI inspection and protecting confidential information was entered on December 21, 2023 [ECF No. 215].

Negotiations over ESI discovery continued into 2024, with a stipulated order on May 7, 2024, providing additional review time [ECF No. 222]. Plaintiff filed a Motion to Strike certain documents and a related motion to compel further ESI production, leading to an expedited hearing on November 15, 2024 [ECF Nos. 237, 247]. An order overruling Defendant's relevancy objections to ESI production was entered on November 22, 2024 [ECF No. 254], prompting Defendant Adducci to file a Motion for Reconsideration on December 6, 2024, which was denied on December 16, 2024 [ECF Nos. 256, 260].

Trial dates were initially set for February 2024 but were repeatedly adjourned at Plaintiff's request. A final pre-trial conference was scheduled for November 5, 2024, with trial set for November 15, 2024 [ECF No. 227]. However, in late 2024, the trial was once again adjourned without a new date pursuant to a stipulated order entered on October 11, 2024 [ECF No. 231]. Defendant Adducci filed a privilege log on November 4, 2024, and continues to comply with discovery obligations despite Plaintiff's ongoing disputes [ECF No. 242].

Despite Plaintiff's repeated requests for extensions and additional document production, Defendant Adducci has consistently cooperated with discovery requests, participated in multiple stipulations, and provided requested materials in a timely manner. Plaintiff's repeated delays and ongoing privilege disputes continue to prolong the litigation timeline, and as of January 24, 2025, the trial date remains unset.

## **LEGAL ARGUMENT**

### Standard of Review

In evaluating discovery-related motions, including the matters raised here, the Court exercises broad discretion to oversee the discovery process and ensure compliance with the Federal Rules of Civil Procedure. Under Federal Rule of Civil Procedure 26(b)(1), discovery is limited to nonprivileged matters that are relevant to any party's claim or defense and proportional to the needs of the case. The rule

requires careful consideration of factors such as the importance of the issues at stake, the parties' relative access to information, and whether the burden or expense of the requested discovery outweighs its likely benefit. Plaintiff's expansive discovery requests are unlikely to produce relevant information, as they largely seek materials that do not pertain to the core issues of this case. Plaintiffs assertion that their 'search terms' are somehow *de facto* controlling of 'relevancy' is fundamentally flawed and inconsistent with established legal standards.

Furthermore, Plaintiff's requests are highly invasive and uncalled for in an action under 11 U.S.C. § 523(a)(2), which is narrowly focused on communications made by Defendant to Plaintiff with the intent to deceive him into providing money—an allegation that did not occur. The indiscriminate and speculative nature of these discovery demands imposes an undue burden on Defendant and seeks irrelevant materials far beyond the scope of what is necessary to resolve the issues in this case.

## I. ARGUMENTS REGARDING SPOUSAL PRIVILEGE

## A. NEITHER THE SIXTH CIRCUIT OR THIS COURT HAVE ADOPTED A CATEGORICAL RULE AS IT RELATES TO THE "BUSINESS COMMUNICATIONS" EXCEPTION

The Plaintiff's argument that a "business communications" exception to the marital communications privilege exists under federal common law is flawed and unsupported by binding precedent in the Sixth Circuit. Specifically, the Plaintiff

does not (and cannot) cite any binding precedent from either this Court or the Sixth Circuit that establishes that such an exception exists.

Specifically, the controlling case in the Sixth Circuit and this Court is *United States v. Sims,* 755 F.2d 1239 (6th Cir. 1985). In *Sims*, the defendant and his wife jointly "…participated in a scheme to defraud insurance companies through the use of the mails. The couple submitted insurance claims for deliberately set fires that damaged their home and place of business, for staged burglaries, for staged automobile accidents, and for non-existent personal injuries." *Id*. at 1240.

The defendant's wife testified against him under the Federal Witness Protection Plan, and defendant objected to that testimony. *Ibid*. Specifically, the defendant challenged the admission of "…[his spouses testimony of] the content of verbal statements made by appellant solely in [her] presence about the crimes in question." *Ibid*.

The Sixth Circuit ruled that there are two types of marital privilege – the privilege against adverse spousal testimony [*Ibid*] and the privilege that protects confidential marriage communications [*Id.* at 1241]. The first privilege does not apply to the instant case, and so any business communications must be analyzed under the confidential marriage communications branch.

The Sixth Circuit then adopted the "joint participants" exception to these marital privileges. "Under this exception, confidential marital communications are

not protected if they pertain to joint criminal activity of the spouses." *Ibid*. The Sixth

Circuit recognized that "[t]he government in the instant case argues that this

exception should be applied… because the testimony in question concerned only

those confidential marital communications regarding joint criminal activity." *Ibid*.

However, the Sixth Circuits adoption of the "joint participants" exception was

explicitly construed narrowly. To wit:

> "Any exception to the marital communications privilege 'results in intrusion upon an individual's privacy greater than that occurring in any of the other protected relationships. Out of concern for this unique intimacy . . . the future crime or tort exception should not be applied to the marital privilege so as to withdraw protection from communications concerning activity which is not *on its face* unlawful. It follows that a mere statement of a spouse's criminal plans should not be outside the privilege. On the other hand, conduct sought by one spouse that is unambiguously illegal would seem outside the area of desired husband-wife intimacy, so that the admission of related communications would be unlikely to hinder favored discussion. For example, open solicitation of a wife's assistance in forging an instrument, in contrast to asking her help in transporting her husband, should be held outside the marital privilege.'"
>
> *Id.* at 1243, *citing The Future Crime or Tort Exception to Communications Privileges,* 77 Harv.L.Rev. 730, 734 (1964)

In this adoption, the Sixth Circuit expressly "…limit[ed] the exception to

permit admission of only those conversations that pertain to patently illegal

activity… Only where spouses engage in conversations regarding joint ongoing or

future patently illegal activity does the public's interest in discovering the truth about

criminal activity outweigh the publics interest in protecting the privacy of marriage."
*Id.* at 1243.

As applied to the instant case, *there has been no evidence presented whatsoever* that Defendant was anything but a "Manchurian candidate" to Joe DuMouchelle's scheme. Absent showing that Defendant was *jointly participating* in Joe DuMouchelle's scheme, the marital privilege cannot be overturned under Sixth Circuit precedent. The Plaintiff's reliance on a purported "business communications" exception is legally unsupported and inconsistent with the principles underlying the privilege. Accordingly, the Court should reject the Plaintiff's argument and uphold the Defendant's assertion of the marital communications privilege.

## B. CRIME-FRAUD EXCEPTION NOT APPLICABLE

Plaintiff's reliance on the crime-fraud exception to overcome the assertion of spousal privilege is both incomplete and misleading. The Plaintiff selectively quotes case law, specifically from *United States v. Sims*, 755 F.2d 1239 (6th Cir. 1985), to argue that spousal privilege does not apply to communications between the Defendant and her spouse, Joseph DuMouchelle, regarding *The Yellow Rose Transaction*. However, the Plaintiff's omission of crucial language from the *Sims* decision and the broader context in which the Sixth Circuit interprets the crime-fraud exception requires a more thorough examination.

**1. Selective Quotation and Misrepresentation of the Holding in Sims**

Plaintiff's brief quotes *Sims* starting with the phrase "where spouses engage in conversations regarding joint ongoing or future patently illegal activity …" without including the preceding language, which provides critical context.

The full passage reads:

> Consequently, we limit the exception to permit admission of only those conversations that pertain to patently illegal activity. By narrowly construing the exception, we are attempting to protect the privacy of marriage and encourage open and frank marital communications. Only *where spouses engage in conversations regarding joint ongoing or future patently illegal activity does the public's interest in discovering the truth about criminal activity outweigh the public's interest in protecting the privacy of marriage.*

*Sims, 755 F.2d at 1243.*

The *italics* portion is what Plaintiff quoted to this Court.

This omitted portion is critical because it establishes that the exception is **narrowly construed** and applies *only* to conversations that "pertain to patently illegal activity." The Sixth Circuit, in balancing the competing interests of marital privacy and crime detection, made clear that the exception should not extend to communications that do not unambiguously concern unlawful activity.

Plaintiff's omission of this critical limitation misrepresents the holding of *Sims* and attempts to broaden the scope of the crime-fraud exception beyond what the court intended. The Sixth Circuit explicitly seeks to safeguard marital

communications from unnecessary intrusion and does not permit a broad application of the exception absent clear and direct evidence of illegal conduct.

## 2. Context of the Crime-Fraud Exception in *Sims*

The paragraph preceding the quoted passage in *Sims* further emphasizes the Sixth Circuit's cautious approach to applying the crime-fraud exception, stating:

"Any exception to the marital communications privilege results in intrusion upon an individual's privacy greater than that occurring in any of the other protected relationships. Out of concern for this unique intimacy . . . the future crime or tort exception should not be applied to the marital privilege so as to withdraw protection from communications concerning activity which is not on its face unlawful. It follows that a mere statement of a spouse's criminal plans should not be outside the privilege." *Sims* at 1243.

This passage establishes an important legal threshold: communications must **clearly and unambiguously** pertain to illegal activity. Mere discussions or speculative statements about business transactions—even those that may ultimately have legal implications—do not suffice to strip the communication of privilege. Plaintiff's argument fails to acknowledge that the Defendant's communications in question may have involved financial dealings that were not, *on their face,* unlawful and therefore remain within the protected bounds of spousal privilege.

### 3. Plaintiff Fails to Demonstrate "Unambiguous Illegality" Required Under Sims

The Sixth Circuit, in *Sims*, draws a distinction between discussions that *indirectly* relate to potential wrongdoing and those that *explicitly* seek a spouse's assistance in committing a crime. As the court clarifies:

"Conduct sought by one spouse that is unambiguously illegal would seem outside the area of desired husband-wife intimacy, so that the admission of related communications would be unlikely to hinder favored discussion. For example, open solicitation of a wife's assistance in forging an instrument, in contrast to asking her help in transporting her husband, should be held outside the marital privilege." *Sims* at 1243.

Plaintiff fails to establish that the Defendant's communications with her spouse meet this stringent standard of "unambiguous illegality." If the communications at issue were merely related to business dealings or financial transactions without direct solicitation of criminal assistance, the marital privilege should remain intact.

### 4. Policy Considerations Supporting Privilege Protection

Federal courts, including the Sixth Circuit, recognize that the marital communications privilege serves an essential function in preserving the sanctity of marriage and encouraging open communication. The court in *Sims* emphasized that

applying the crime-fraud exception too broadly could have unintended negative consequences, such as discouraging spouses from discussing critical matters openly for fear of later disclosure in litigation. Plaintiff's argument, if accepted, would undermine this fundamental purpose and set a dangerous precedent for weakening spousal privilege protections in commercial disputes.

### 5. Application to the Present Case

In this case, Plaintiff attempts to argue that any communication between Plaintiff and Defendant that "hit" on their search terms must necessarily fall within the crime-fraud exception. However, Plaintiff fails to:

- Demonstrate that the communications in question specifically and explicitly involve joint participation in criminal conduct, rather than general discussions of financial affairs.

- Show that Defendant's involvement in the business dealings was inherently illegal, rather than merely incidental or uninformed.

- Consider the protective scope of the privilege as outlined in *Sims*, which guards against undue intrusion into marital discussions unless there is clear evidence of wrongdoing.

Absent clear and convincing evidence that Defendant's communications meet the threshold of unambiguous illegality, the privilege must stand. In fact, in this case, Defendant was accustomed to her husband engaging in legitimate business activities for many years without any prior allegations of criminal conduct or prosecutions. Given this longstanding history of lawful enterprise, it is reasonable that Defendant would not have perceived their communications as pertaining to any illegal activity.

Furthermore, a review of the emails sought by Plaintiff reveals that the vast majority clearly relate to matters unrelated to The Yellow Rose Transaction, as evidenced by the subject lines and recipient lists. These factors strongly suggest that the communications in question were not intended to further any unlawful scheme. Accordingly, the Court should exercise caution and require Plaintiff to identify specific emails and provide concrete evidence demonstrating how each communication is directly linked to "patently illegal" activity, rather than allowing a broad and speculative assertion of the crime-fraud exception that would unnecessarily erode the well-established protections of spousal privilege.

## C. NO GENERAL WAIVER OF SPOUSAL PRIVILEGE

The Plaintiff's argument that Defendant waived the marital communications privilege during her adversary proceeding deposition is flawed and unsupported by the legal principles governing waiver of privilege. The marital communications privilege, like the attorney-client privilege, is a well-established doctrine that protects confidential communications between spouses made during the course of their marriage. The United States Supreme Court has consistently held that waiver requires an intentional relinquishment of a known right. *See Hamer v. Neighborhood Hous. Servs. Of Chi.,* 138 S. Ct. 13, 17 (2017), fn. 1:

> The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. "[F]orfeiture is the failure to make the timely assertion of a right [;] waiver is the 'intentional

> relinquishment or abandonment of a known right.' " *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst[1],* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)

The Plaintiff's reliance on Defendant's deposition testimony does not meet this standard.

In the present case, Defendant's deposition testimony does not constitute a voluntary and intentional disclosure of the substance of privileged marital communications. Defendant's statements merely referenced general information relayed by her husband, Joseph, and did not reveal the specific content of confidential marital communications. For example, Defendant testified that "Joe told me" certain facts about the Yellow Rose transaction, but these statements lack the detail and specificity required to constitute a waiver of privilege.

---

[1] Defendant notes that *Johnson v. Zerbst* is repeatedly cited, at least a dozen times by various Supreme Court opinions, concurrences, and dissents, specifically for the proposition that waiver is the 'intentional relinquishment or abandonment of a known right.', including *Hamer* in 2017. Defendant only brings this to the attention of this Court, as when Defendant shepherdized *Johnson*, it resulted in a negative treatment (that *Johnson v. Zerbst* was overturned by *Edwards v. Arizona,* 451 U.S. 477, 482 (1981). However, *Edwards* seems to only cite *Johnson* in a positive manner, and whose full paragraph where *Johnson* was referenced follows:

> First, the Arizona Supreme Court applied an erroneous standard for determining waiver where the accused has specifically invoked his right to counsel. It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). See *Faretta v. California,* 422 U.S. 806, 835 (1975); *North Carolina v. Butler,* 441 U.S. 369, 374-375 (1979); *Brewer v. Williams,* 430 U.S. 387, 404 (1977); *Fare v. Michael C.,* 442 U.S. 707, 724-725 (1979).

Furthermore, the Plaintiff's reliance on *Bila v. RadioShack Corp.* and *Lien v. Wilson & McIlvaine* is misplaced. These cases involved situations where the party asserting the privilege voluntarily disclosed the substance of privileged communications in a manner that clearly demonstrated an intent to waive the privilege. In contrast, Defendant's deposition testimony does not reflect such an intent. The Plaintiff has failed to provide evidence that Defendant's statements were anything other than inadvertent or incidental references to her husband's actions, which do not rise to the level of a waiver.

The Plaintiff's argument that Defendant's testimony waived the privilege with respect to all communications related to the Yellow Rose transaction is also inconsistent with the principle that waiver is limited to the specific communications disclosed.

In conclusion, the Plaintiff has failed to meet the evidentiary burden required to establish that Defendant waived the marital communications privilege during her deposition. The privilege remains intact, and the Court should reject the Plaintiff's argument that Defendant's testimony constitutes a waiver of privilege with respect to all communications related to the Yellow Rose transaction. The marital communications privilege is a cornerstone of the legal system's protection of the sanctity of the marital relationship, and it should not be lightly set aside based on speculative or unsupported assertions.

## D. CONCLUSION REGARDING SPOUSAL PRIVILEGE

Throughout these proceedings, Defendant Melinda Adducci has consistently maintained a clear and principled stance regarding her assertion of spousal privilege. She has invoked the privilege strictly to the extent necessary to protect against being compelled to testify or turn over documents against her husband, Joseph DuMouchelle, in connection with his criminal proceedings, which were ongoing through much if this case. In doing so, Defendant has appropriately objected to Plaintiff's attempts to obtain privileged communications between her and Joseph, including emails and other forms of correspondence.

However, Defendant has also been <u>unwavering</u> in her position that she fully intends to testify voluntarily in this matter regarding her lack of involvement in the financial transactions at issue. Specifically, as demonstrated in her discovery responses dated **January 25, 2023**, **September 20, 2023**, and **November 9, 2023**, Defendant has consistently stated that her role in the disputed withdrawals was limited to following Joseph's instructions without further explanation or suspicion. For example, in her **November 9, 2023 Supplement to Response to Ritter Discovery**, Defendant reaffirmed that her primary defense rests on her personal testimony, wherein she intends to explain that she acted solely at Joseph's request without independent knowledge or awareness of his dealings. Similarly, in her **September 20, 2023 responses**, Defendant asserted spousal privilege in response to

questions regarding communications with Joseph, while simultaneously providing substantive responses clarifying that she had no active participation or understanding of the broader transactions at issue. Defendant's position remains that she is entitled to voluntarily testify regarding what Joseph did and did not tell her, without such testimony constituting a blanket waiver of spousal privilege.

However, should the Court determine that her intended testimony constitutes, or necessitates a full waiver of spousal-privilege, Defendant acknowledges and accepts that consequence.

## II. ARGUMENTS REGARDING ATTORNEY-CLIENT PRIVILEDGE

Defendant respectfully submits this brief in opposition to Plaintiff's arguments regarding the alleged waiver of attorney-client privilege. Plaintiff's claims of implied waiver and subject matter waiver are unsupported by the facts and applicable law. Defendant's deposition testimony does not constitute a clear, intentional waiver of privilege, and any disclosure should be narrowly construed to preserve the fundamental purpose of the attorney-client privilege.

Courts have consistently held that a waiver of attorney-client privilege must be intentional, clear, and unequivocal. Defendant's deposition testimony, which referenced advice from her former counsel, was incidental and does not rise to the level of a deliberate waiver. The Sixth Circuit has emphasized that mere references to legal advice, without a deliberate attempt to use it as a defense, do not constitute

a waiver (*In re Grand Jury Proceedings Oct. 12*, 78 F.3d 251 (6th Cir. 1996)). Defendant's testimony did not involve a detailed disclosure of privileged communications or an attempt to use the advice of counsel as a defense. Instead, the statements were limited and incidental, falling short of the standard for waiver.

Federal Rule of Evidence 502(b) protects against waiver in cases of inadvertent disclosure, provided the holder of the privilege took reasonable steps to prevent disclosure and promptly rectified the error (Fed. R. Evid. 502). Defendant's deposition testimony, even if construed as a disclosure, was not intentional and does not meet the criteria for waiver under Rule 502(b).

Even if the Court finds that a limited waiver occurred, the scope of the waiver should be narrowly construed to apply only to the specific information disclosed. Courts have repeatedly held that waivers should not be interpreted broadly to encompass all communications related to the same subject matter. In Fort James Corp. v. Solo Cup Co., the Federal Circuit emphasized that the scope of waiver is limited to the specific subject matter of the disclosed communication (*SPX Corp. v. Bartec USA, LLC*, 247 F.R.D. 516 (E.D. Mich. 2008)). Defendant's deposition testimony referenced a single piece of advice regarding "The Yellow Rose" transaction. This limited disclosure does not justify a broad waiver of privilege for all communications related to the transaction.

The fairness doctrine, as articulated in *In re Grand Jury Proceedings* Oct. 12, 1995, requires that waivers be tailored to prevent selective and misleading disclosures. Courts have consistently limited waivers to the specific subject matter disclosed, ensuring that fairness concerns are balanced against the need to preserve privilege (*Prudential Def. Sols. v. Graham*, 517 F. Supp. 3d 696 (E.D. Mich. 2021)). Plaintiff's request to depose Defendant's former attorneys is premature and unsupported by sufficient evidence of broad waiver.

The attorney-client privilege is a cornerstone of the legal system, designed to encourage candid communication between clients and their attorneys. Overbroad findings of waiver would deter clients from seeking legal advice and undermine the privilege's fundamental purpose. Defendant's deposition testimony does not constitute a clear, intentional waiver of attorney-client privilege. Even if a limited waiver is found, it should be narrowly construed to apply only to the specific information disclosed. Plaintiff's attempt to depose Defendant's former attorneys and obtain broad discovery is unsupported by the facts and applicable law. Defendant respectfully requests that the Court deny Plaintiff's motion and uphold the protections of the attorney-client privilege.

## <u>CONCLUSION</u>

Defendant Melinda Adducci has consistently complied with the Court's orders and discovery obligations in good faith, providing comprehensive responses

and participating in electronic discovery agreements. Despite this, Plaintiff has pursued excessive discovery requests, causing undue delay and prejudice to Defendant.

Defendant's assertion of spousal privilege has been appropriately limited to protect confidential marital communications while offering substantive responses clarifying her lack of involvement in the disputed financial transactions. Plaintiff's continued efforts to compel privileged communications are legally unfounded, as Defendant's voluntary intent to testify does not constitute a waiver of privilege.

Regarding attorney-client privilege, Defendant's deposition statements were incidental and did not amount to an intentional, voluntary waiver. Plaintiff has failed to establish a broad waiver, and the privilege remains intact to safeguard confidential legal communications.

**WHEREFORE**, Defendant respectfully requests that this Court deny Plaintiff's Motion to Compel and reject Plaintiff's attempts to erode the well-established privileges afforded to Defendant under both spousal and attorney-client protections. Defendant further requests that this Court recognize the extensive and good faith efforts made to comply with discovery obligations and prevent further unnecessary invasions into her personal communications.

Respectfully submitted,
**JOHN R. FOLEY, P.C.**
*Counsel for Melinda Adducci*

Date: January 24, 2025

By: /s/ Patrick A. Foley
Patrick A. Foley, Esq. (P74323)
18572 W. Outer Drive
Dearborn, MI 48128
Phone: (313) 274-7377
Email: pafoley@jrfpc.net

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**In the matter of:**

| | |
|---|---|
| JOSEPH G. DUMOUCHELLE, and MELINDA J. ADDUCCI, *Debtors.* | Bankruptcy Petition No. 19-54531 Hon. Lisa S. Gretchko Chapter 7 |
| TEODOR GELOV, *Plaintiff,* v. MELINDA J. ADDUCCI, *Defendant.* | Adv. Pro. No. 20-04172 Hon. Lisa S. Gretchko |

## PROOF OF SERVICE

Patrick A. Foley hereby certifies that on January 24, 2025 he did serve a copy of the foregoing *Defendant's Brief Regarding Electronic Discovery, Privileges, and Alleged Waivers,* including all attachments and exhibits thereto, upon the following parties via the Court's CM/ECF e-Filing system:

- Kimberly Ross Clayson     kclayson@taftlaw.com, ttorni@taftlaw.com
- Jay L. Welford     jwelford@taftlaw.com, ttorni@taftlaw.com

Respectfully Submitted,
**JOHN R. FOLEY, P.C.**
*Counsel for Defendant*

Dated: January 24, 2025

By: /s/ Patrick A. Foley
Patrick A. Foley (P74323)
18572 W. Outer Drive
Dearborn, MI 48128
Phone: (313) 274-7377
Email: pafoley@jrfpc.net